**BERNSTEIN LITOWITZ BERGER**
  **& GROSSMANN LLP**
JONATHAN D. USLANER (Bar No. 256898)
(jonathanu@blbglaw.com)
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Tel:    (310) 819-3470

*Counsel for Proposed Lead Plaintiff*
*Ohio Public Employees Retirement System and*
*PFA Pension, Forsikringsaktieselskab and*
*Proposed Lead Counsel for the Class*

[Additional counsel appear on signature page]

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| OHIO PUBLIC EMPLOYEES RETIREMENT SYSTEM, on behalf of itself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> META PLATFORMS, INC. f/k/a FACEBOOK, INC., MARK ZUCKERBERG, DAVID M. WEHNER, and NICK CLEGG, <br><br> Defendants. | Case No. 4:21-cv-08812-JST <br><br> CLASS ACTION <br><br> **REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THE MOTION OF OHIO PUBLIC EMPLOYEES RETIREMENT SYSTEM AND PFA PENSION, FORSIKRINGSAKTIESELSKAB FOR APPOINTMENT AS LEAD PLAINTIFF, APPROVAL OF THEIR SELECTION OF LEAD COUNSEL, AND CONSOLIDATION OF RELATED ACTIONS, AND IN OPPOSITION TO COMPETING MOTION** <br><br> Date: March 10, 2022 <br> Time: 2:00 p.m. <br> Dept.: Courtroom 6, 2nd Floor <br> Judge: Hon. Jon S. Tigar |

*Caption continued on next page.*

REPLY MEM. IN FURTHER SUPPORT OF MOTION FOR APPOINTMENT AS LEAD PLAINTIFF
CASE NO. 4:21-cv-08812-JST

| | |
|---|---|
| BARRY G. DEPOT, Individually and on Behalf of All Others Similarly Situated, | Case No. 4:21-cv-08873-JST |
| Plaintiff, | <u>CLASS ACTION</u> |
| v. | |
| META PLATFORMS, INC. f/k/a FACEBOOK, INC., MARK ZUCKERBERG, DAVID M. WEHNER, SUSAN J.S. TAYLOR, and NICK CLEGG, | |
| Defendants. | |
| JUAN PEREZ, individually and on behalf of all others similarly situated, | Case No. 4:21-cv-09041-JST |
| Plaintiff, | <u>CLASS ACTION</u> |
| vs. | |
| META PLATFORMS, INC., MARK ZUCKERBERG, and DAVID M. WEHNER, | |
| Defendants. | |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

I.      ARGUMENT .......................................................................................................... 3

        A.      Ohio PERS and PFA Pension Are the Presumptive Lead Plaintiff ......................... 3

        B.      CalPERS Fails To Provide "Proof" To Rebut The Presumption ............................. 3

                1.      PFA Pension's Certification and Loss Chart Are Accurate and
                        Complete and Its Trading Pattern Is Not Atypical ....................................... 4

                2.      PFA Pension Has Standing And Is Not Subject To Unique
                        Defenses ........................................................................................................ 7

                3.      Ohio PERS and PFA Pension Are An Ideal Lead Plaintiff Group,
                        And The Competing Movant Has Not Provided Any Evidence To
                        Rebut Their Showing Of Adequacy and Typicality ..................................... 9

II.     CONCLUSION ..................................................................................................... 15

# TABLE OF AUTHORITIES

CASES                                                                                    PAGE(S)

*Aronson v. McKesson HBOC, Inc.*,
   79 F. Supp. 2d 1146 (N.D. Cal. 1999) ...................................................................13

*In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*,
   2013 WL 1558686 (S.D.N.Y. Apr. 11, 2013)..........................................................10

*Baydale v. Am. Exp. Co.*,
   2009 WL 2603140 (S.D.N.Y. Aug. 14, 2009).......................................................5, 8

*Bodri v. GoPro, Inc.*,
   2016 WL 1718217 (N.D. Cal. Apr. 28, 2016) .........................................................10

*Boynton Beach Firefighters' Pension Fund v. HCP, Inc.*,
   2017 WL 5759361 (N.D. Ohio Nov. 28, 2017).......................................................14

*Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*,
   No. 3:00-cv-04285, ECF No. 37 (D.N.J.)..........................................................14, 15

*Cambridge Ret. Sys. v. Mednax, Inc.*,
   2018 WL 8804814 (S.D. Fla. Dec. 6, 2018) .............................................................5

*In re Cardinal Health Inc. Sec. Litig.*,
   226 F.R.D. 298 (S.D. Ohio 2005)...........................................................................14

*In re Cavanaugh*,
   306 F.3d 726 (9th Cir. 2002) ....................................................................................3

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001).............................................................................10, 13

*Cohen v. Luckin Coffee Inc.*,
   2020 WL 3127808 (S.D.N.Y. June 12, 2020) ........................................................12

*Doherty v. Pivotal Software, Inc.*,
   2019 WL 5864581 (N.D. Cal. Nov. 8, 2019) ..........................................................10

*Eichenholtz v. Verifone Holdings, Inc.*,
   2008 WL 3925289 (N.D. Cal. Aug. 22, 2008) ........................................................12

*In re Enron Corp. Sec. Litig.*,
   206 F.R.D. 427 (S.D. Tex. 2002).............................................................................13

*Frias v. Dendreon Corp.*,
   835 F. Supp. 2d 1067 (W.D. Wash. 2011)...............................................................13

*In re Gentiva Sec. Litig.*,
    281 F.R.D. 108 (E.D.NY. 2012) ........................................................................................................15

*Gross v. AT & T Inc.*,
    2019 WL 3500496 (S.D.N.Y. July 31, 2019) ....................................................................................9

*Hill v. Silver Lake Grp., L.L.C.*,
    No. 4:20-cv-03766, ECF No. 36 (N.D. Cal. Dec. 1, 2020) ..............................................................8

*Hodges v. Akeena Solar, Inc.*,
    263 F.R.D. 528 (N.D. Cal. 2009) ..............................................................................................5, 11

*Huang v. Depomed, Inc.*,
    289 F. Supp. 3d 1050 (N.D. Cal. 2017) ...........................................................................1, 3, 10

*Isaacs v. Musk*,
    2018 WL 6182753 (N.D. Cal. Nov. 17, 2018) ................................................................................13

*In re Kit Digital, Inc. Sec. Litig.*,
    293 F.R.D. 441 (S.D.N.Y. 2013) ......................................................................................................7

*Knott v. McDonald's Corp.*,
    147 F.3d 1065 (9th Cir. 1998) .........................................................................................................6

*Lundy v. Selene Fin., LP*,
    2017 WL 2652048 (N.D. Cal. June 20, 2017) ..................................................................................8

*Mariat v. QuantumScape Corp.*,
    2021 WL 1550454 (N.D. Cal. Apr. 20, 2021) ..................................................................................6

*In re Mersho*,
    6 F.4th 891 (9th Cir. 2021) ...............................................................................................1, 3, 9, 11

*In re Molycorp, Inc. Sec. Litig.*,
    2012 WL 13013602 (D. Colo. May 29, 2012) ................................................................................15

*In re Network Assocs., Inc., Sec. Litig.*,
    76 F. Supp. 2d 1017 (N.D. Cal. 1999) .............................................................................................5

*Okla. L. Enf't Ret. Sys. v. Adeptus Health Inc.*,
    2017 WL 3780164 (E.D. Tex. Aug. 31, 2017) ..........................................................................12, 13

*In re Petrobras Sec. Litig.*,
    104 F. Supp. 3d 618 (S.D.N.Y. 2015) ............................................................................................13

*Plymouth Cty. Ret. Ass'n v. Array Techs., Inc.*,
    2021 WL 5051649 (S.D.N.Y. Nov. 1, 2021) ....................................................................................9

*Smajlaj v. Brocade Commc'n Sys., Inc.*,
    2006 WL 7348107 (N.D. Cal. Jan. 12, 2006) ..................................................................................8

*Steamfitters Loc. 449 Pension Fund v. Cent. Eur. Distrib. Corp.*,
    2012 WL 3638629 (D.N.J. Aug. 22, 2012) ...............................................................................9

*In re Stitch Fix, Inc. Sec. Litig.*,
    393 F. Supp. 3d 833 (N.D. Cal. 2019) .....................................................................................13

*In re Telxon Corp. Sec. Litig.*,
    67 F. Supp. 2d 803 (N.D. Ohio 1999).....................................................................................13

*Theodore v. Purecycle Techs., Inc.*,
    2021 WL 5259840 (M.D. Fla. Aug. 5, 2021) ...........................................................................9

*In re Tronox, Inc. Sec. Litig.*,
    262 F.R.D. 338 (S.D.N.Y. Oct. 13, 2009) ...............................................................................14

*In re Twitter Inc. Sec. Litig.*,
    No. 16-cv-05314 (N.D. Cal.) ...................................................................................................14

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
    535 F. Supp. 2d 249 (D.N.H. Dec. 19, 2007) .........................................................................10

*In re Versata, Inc., Sec. Litig.*,
    2001 WL 34012374 (N.D. Cal. Aug. 20, 2001) ......................................................................15

*W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*,
    549 F.3d 100 (2d. Cir. 2006).............................................................................................6, 7, 8

*Williams v. Block.One*,
    2020 WL 4505569 (S.D.N.Y. Aug. 4, 2020) ............................................................................6

**STATUTES**

15 U.S.C. § 78u-4(a)(3)(B).................................................................................................................9

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)......................................................................................................3

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).....................................................................................................3

**OTHER AUTHORITIES**

7 WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTIONS (5th ed. 2016)...................................15

Wu, Yanbin, *Closing Auction, Passive Investing, and Stock Prices* (August 15, 2019),
    available at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3440239 ............................4

https://www.calpers.ca.gov/page/investments/asset-classes/private-equity/pep-fund-
    performance ...............................................................................................................................6

**PRELIMINARY STATEMENT**

The PSLRA provides a straightforward and sequential process establishing a presumption that the Lead Plaintiff is the movant or movant group with the "largest financial interest" that has made a preliminary showing that it satisfies the typicality and adequacy requirements of Rule 23.[1] *See In re Mersho*, 6 F.4th 891, 899 (9th Cir. 2021) (determination of which movant receives the presumption is sequential and "should be based on only the movant's pleadings and declarations"). This presumption was designed to prevent the Lead Plaintiff process from devolving into a beauty contest or force the Court into a subjective determination of who should represent the Class. *See id*. Only after the presumption attaches does the process "turn adversarial" and, even at that stage, the presumption may only be rebutted "upon proof" of inadequacy or atypicality. *Id*.

Ohio PERS and PFA Pension are the presumptive Lead Plaintiff by virtue of having incurred losses of over $19 million—by far, the largest of any movant—and have provided detailed evidence regarding their ability to independently oversee counsel and this litigation. Indeed, PFA Pension ***alone*** has a LIFO loss that is more than double the loss claimed by CalPERS, the movant with the next largest reported loss. This Court and many others have found that fact to be determinative in appointing groups of investors to serve as lead plaintiff. *See Huang v. Depomed, Inc.*, 289 F. Supp. 3d 1050, 1053 (N.D. Cal. 2017) (Tigar, J.) (collecting cases). CalPERS, the only remaining competing movant, acknowledges that Ohio PERS and PFA Pension have the largest financial interest. *See* ECF No. 61 at 19. Ohio PERS and PFA Pension are, therefore, the presumptive Lead Plaintiff.

To rebut that presumption, CalPERS must submit "proof" that Ohio PERS and PFA Pension are inadequate to represent the Class, or atypical. *Mersho*, 6 F.4th at 899. CalPERS does neither, instead raising a series of questions and specious contentions to wrongly suggest that Ohio PERS and PFA Pension are not a proper Lead Plaintiff or that PFA Pension withheld information from the Court. Those arguments ignore and distort the evidence before the Court, and are not based upon any "proof" of inadequacy or atypicality.

---

[1] All capitalized terms are defined in Ohio PERS's and PFA Pension's moving or opposition briefs, unless indicated. ECF Nos. 22, 60. All citations are omitted and emphasis added, unless noted.

While CalPERS fails to provide evidence of inadequacy or atypicality, Ohio PERS and PFA Pension nonetheless provide detailed facts and evidence responding to all of the questions raised by CalPERS. *See* Uslaner Reply Decl., Ex. A (chart detailing Ohio PERS's and PFA Pension's responses to questions raised by CalPERS). Ohio PERS and PFA Pension have submitted two declarations, supported by documentary evidence, that go well beyond what is required under the PSLRA and is far more than most lead plaintiff applicants would provide at this stage of a litigation.[2] That evidence irrefutably confirms that:

- Ohio PERS and PFA Pension are a partnership of two institutions that collectively oversee approximately $200 billion in assets and suffered substantial losses due to Defendants' misconduct. They formed a partnership on their own volition, have spoken repeatedly about this litigation, and are in no way controlled by counsel (*see* ECF No. 22-4 ¶¶ 2, 4, 9-12; Uslaner Reply Decl., Ex. B ¶¶ 5, 11);

- Ohio PERS (with the Ohio Attorney General) and PFA Pension thoroughly considered the merits of this case and made an informed judgment to seek appointment as Lead Plaintiff. They each followed their own detailed and deliberative processes in deciding whether to take an active role in this case and seek appointment as Lead Plaintiff and whether to partner with one another in that endeavor, including discussions within the OAG and discussions among board members and executives at both Ohio PERS and PFA Pension (*see* ECF No. 22-4 ¶ 11; Uslaner Reply Decl., Ex. B ¶ 11);

- Ohio PERS and PFA Pension already have taken significant steps to protect the Class, including the filing by Ohio PERS of the first complaint in this District (which asserted the correct Class period, after a complaint filed in New York asserted an overbroad period), and Ohio PERS's and PFA Pension's successful effort to transfer that New York case to this District (*see* ECF No. 22-4 ¶ 9; Uslaner Reply Decl., Ex. B ¶¶ 5-6);

- PFA Pension "has legal title to" the Facebook shares listed in its Certification and, therefore, has standing to assert these claims (*see* ECF No. 22-4 ¶ 4; Uslaner Reply Decl., Ex. B ¶¶ 14-15). All transactions listed in PFA Pension's Certification were open-market transactions conducted through third-party brokers and are accurately reflected in the Certification. No purchases or sales of Facebook stock by PFA Pension were excluded from that Certification (*see* Uslaner Reply Decl., Ex. B ¶ 13); and

- PFA Pension's Certification was properly executed pursuant to PFA Pension's Articles of Association (*see* Uslaner Reply Decl., Ex. B ¶ 12).

Accordingly, the speculative arguments raised by CalPERS not only fail to provide "proof" of inadequacy or atypicality, but lack any factual basis and are fully rebutted by the evidence Ohio PERS and PFA Pension submit herewith. Had CalPERS's counsel conferred in good faith with

---

[2] *See* Supplemental Joint Declaration of Eric C. Harrell, Anders Damgaard, and Kasper Ahrndt Lorenzen in Further Support of the Motion of Ohio Public Employees Retirement System and PFA Pension, Forsikringsaktieselskab for Appointment as Lead Plaintiff, Approval of Their Selection of Lead Counsel, and Consolidation of Related Actions, Uslaner Reply Decl., Ex. B.

counsel to Ohio PERS and PFA Pension, the "questions" posed in CalPERS's brief could have been quickly resolved. *See* ECF No. 61-2.

I.    **ARGUMENT**

    A.    **Ohio PERS and PFA Pension Are the Presumptive Lead Plaintiff**

Ohio PERS and PFA Pension have the "largest financial interest" and have made a *prima facie* showing of their adequacy and typicality, and are thus entitled to the PSLRA's presumption. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002). There is no question that Ohio PERS and PFA Pension have, by far, the largest financial interest in the relief sought by the Class. CalPERS concedes as much. *See* ECF No. 61 at 19. Ohio PERS's and PFA Pension's loss is more than $11 million larger than CalPERS's loss, as calculated on a LIFO basis. Moreover, PFA Pension's loss, alone, is ***more than double*** CalPERS's reported LIFO loss. *Depomed*, 289 F. Supp. 3d at 1053 (appointing group of investors because one member of the group alone "has the largest financial interest of any movant"). CalPERS claims that Ohio PERS's and PFA Pension's partnership "does not pass muster at step two of the PSLRA's three-step process and is not entitled to the presumption." ECF No. 61 at 2. CalPERS is wrong. Ohio PERS and PFA Pension have the largest financial interest and, based on their "pleadings and declarations," have made the requisite *prima facie* showing that they are an adequate and typical Class representative. *Mersho*, 6 F.4th at 899. Accordingly, Ohio PERS and PFA Pension are the presumptive Lead Plaintiff under step two of the PSLRA's three-step process. To rebut that presumption at step three, it is incumbent upon CalPERS to proffer "proof" that Ohio PERS and PFA Pension will not adequately represent the Class. *Id*. CalPERS fails to do so.

    B.    **CalPERS Fails To Provide "Proof" To Rebut The Presumption**

Once the presumption attaches, "[t]he next step in the process is for the district court to give the other plaintiffs an opportunity to present evidence rebutting the presumption. . . ." *Cavanaugh*, 306 F.3d at 739. To overcome the strong presumption in favor of appointing Ohio PERS and PFA Pension as Lead Plaintiff, CalPERS must offer "proof," not mere speculation, that Ohio PERS and PFA Pension "will not fairly and adequately protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see also Mersho*, 6 F.4th at 899 ("The statute requires proof that

the presumptive lead plaintiff is not adequate."). CalPERS's arguments fail because the mere speculation it offers falls well short of the proof necessary to rebut the presumption. Moreover, all of CalPERS's arguments are refuted by the evidence provided by Ohio PERS and PFA Pension.

**1.      PFA Pension's Certification and Loss Chart Are Accurate and Complete and Its Trading Pattern Is Not Atypical**

In compliance with the PSLRA, Ohio PERS and PFA Pension submitted Certifications providing their transactions in Facebook stock. *See* ECF Nos. 1 at 23-24; 22-2. CalPERS questions certain of PFA Pension's transactions that were executed at the open or close prices and speculates that, based on the prices at which those transactions occurred, they could have been transfers, wash accounting entries, or private transactions.[3] *See* ECF No. 61 at 4. CalPERS then speculates that such "transfers" imply that other PFA entities that traded in Facebook were not legally distinct from PFA Pension, and their trading should have been included on PFA Pension's Certification.[4] CalPERS is incorrect and has offered no proof to support its speculation.

To put this matter to rest, PFA Pension has submitted excerpts of a report from its custodial bank, J.P. Morgan, which demonstrates that those were open-market purchases conducted through third-party brokers. *See* Uslaner Reply Decl., Ex. B ¶ 13 & Exhibit 2 thereto.[5] Specifically, those

---

[3] The NASDAQ—the exchange on which Facebook shares trade—expressly allows for orders to be placed at the market open or at the close. *See* Uslaner Reply Decl., Ex. C (describing market-on-open and market-on-close orders and NASDAQ's opening and closing auction process). Such orders have grown in popularity over the past decade, with average trading volume for market-on-close orders, in particular, accounting for nearly 10% of daily trading for S&P 500 stocks. *See* Wu, Yanbin, *Closing Auction, Passive Investing, and Stock Prices* (August 15, 2019), at 1, available at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3440239. Given the proliferation of such trading, the fact that an investor like PFA Pension would have traded Facebook shares at closing or opening prices is unremarkable and cannot be "proof" of atypicality.

[4] In its opening motion, PFA Pension voluntarily disclosed that other PFA entities, which are legally distinct from PFA Pension, held Facebook shares but were not members of the Class and were not seeking appointment as Lead Plaintiff. *See* ECF No. 22-3 at 5. CalPERS took this voluntary disclosure and flipped it to question whether those "other PFA entities" were in fact legally distinct from PFA Pension. The evidence submitted herewith fully resolves that question, and leaves no doubt that PFA Pension has been fully transparent.

[5] The full report is nearly 4,000 pages long and includes all transactions in all securities (not just Facebook stock) by PFA Pension from July 1, 2021 through November 1, 2021. *See* Uslaner Reply Decl., Ex. B ¶ 13 & Exhibit 2 thereto. The report has been excerpted and redacted to include trading details for each of the transactions questioned by CalPERS. *See* ECF No. 61 at 4-5.

---

records show that each of those purchases was made through a U.S. dollar-denominated cash account with J.P. Morgan in New York, with a commission charged on each transaction and the executing broker plainly identified. *See id.* The trade dates, share quantities, and prices on the transaction reports also match PFA Pension's Certification. *See id.*; ECF No. 22-2. Before PFA Pension executed its Certification, an employee of PFA Pension reviewed each of the transactions listed on the Certification and confirmed that they were all conducted on the market at prices that are correctly reflected on the Certification. *See* Uslaner Reply Decl., Ex. B ¶ 13. Accordingly, CalPERS's reliance on *In re Network Assocs., Inc., Sec. Litig.*, 76 F. Supp. 2d 1017 (N.D. Cal. 1999), is misplaced. In *Network Assocs.*, a movant comprised of several investment funds had acquired most of its securities via a merger rather than through open-market transactions. *Id.* at 1029. Here, PFA Pension has submitted evidence that all of its Facebook shares were acquired through open-market transactions. *See* Uslaner Reply Decl., Ex. B ¶ 13 & Exhibit 2 thereto.[6]

Having established that PFA Pension's purchases were open-market transactions and not transfers or any of the numerous other types of transactions CalPERS posits, CalPERS's other theories quickly fall apart. CalPERS makes much of a single footnote in PFA Pension's loss chart, where PFA Pension disclosed that other PFA entities owned Facebook stock during the Class Period. *See* ECF No. 61 at 3. That footnote made clear that those other PFA entities are legally distinct from PFA Pension, and are not even members of the Class. *See* ECF No. 22-3 at 5. Ignoring the substance of PFA Pension's disclosure, CalPERS wrongly contends that PFA Pension "with[e]ld select transactions" from its Certification, speculating that "[o]ther PFA entities" could

---

[6] *Baydale v. Am. Exp. Co.*, 2009 WL 2603140 (S.D.N.Y. Aug. 14, 2009), is distinguishable. In that case, the court found that a foreign asset management company was subject to unique defenses based on its purported third-party standing and that the movant's parent company created a conflict because it conducted business that overlapped with the corporate defendant's business. *See id.* at *3. In contrast to the movant in *Baydale* that "[did] not attempt to show that it has 'legal title to . . . the claim,'" PFA Pension has legal title to the shares listed on its Certification. *Cambridge Ret. Sys. v. Mednax, Inc.*, 2018 WL 8804814 (S.D. Fla. Dec. 6, 2018), also cited by CalPERS, supports Ohio PERS and PFA Pension. There, the court used metrics other than loss to assess financial interest. Here, Ohio PERS and PFA Pension have a larger financial interest than CalPERS under every metric considered by the court in *Mednax*. *Compare* ECF No. 22-2 *with* ECF No. 27-4; *see also* Uslaner Reply Decl., Ex. D. Indeed, Ohio PERS and PFA Pension each purchased more net shares than CalPERS. *See Hodges v. Akeena Solar, Inc.*, 263 F.R.D. 528, 532 (N.D. Cal. 2009) (appointing group where single group member had more net shares than the competing movant).

have engaged in transactions required to be disclosed under the PSLRA. ECF No. 61 at 3, 6.

For the avoidance of any doubt, PFA Pension confirms that, while other PFA entities owned Facebook stock during the Class Period, those entities are legally separate from PFA Pension and PFA Pension does not have legal title to the Facebook shares they own. *See* Uslaner Reply Decl., Ex. B ¶ 16. As such, PFA Pension lacks the legal authority to sue on behalf of those entities. In addition, because those other PFA entities did not purchase any Facebook stock during the Class Period, they are not members of the Class, and, as a result, could not have incurred any losses or gains on Class Period-investments in Facebook stock. *Id*. Accordingly, those other PFA entities could not seek Lead Plaintiff appointment in this case, and their holdings of Facebook stock could not be included with the transactions listed on PFA Pension's Certification. *See W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*, 549 F.3d 100, 106-07 (2d. Cir. 2006). PFA Pension disclosed all Class Period purchases and sales of Facebook stock to which it had legal title. That is all the PSLRA requires.[7] *See Mariat v. QuantumScape Corp.*, 2021 WL 1550454, at *4 (N.D. Cal. Apr. 20, 2021) ("nothing in the plain text of the PSLRA renders [movant]'s certification improper"). Accordingly, PFA Pension's Certification is accurate and complete.[8]

CalPERS's out-of-circuit authority in *Williams v. Block.One*, 2020 WL 4505569 (S.D.N.Y. Aug. 4, 2020), is distinguishable. In that case, a group of three investors "failed to submit all of the trading data evidencing the two and perhaps three largest claimed losses;" one group member asserted an estimated loss because it did not have access to the relevant trading activity; another member included incomplete or inaccurate data. *Id*. at *1. In contrast to the "demonstrably inaccurate or incomplete" transaction data submitted by the movants in *Block.One*, PFA Pension

---

[7] CalPERS cites *Knott v. McDonald's Corp.*, 147 F.3d 1065 (9th Cir. 1998), a case about whether franchisees had standing following a sale assigning "all [their] right, title, and interest" in the franchises. PFA Pension did not transfer claims or receive claims transferred by others, and so *McDonald's* provides absolutely no guidance on the pending motions.

[8] CalPERS itself invests in dozens of investment funds, whose asset managers held and traded Facebook stock during the Class Period. *See* Uslaner Reply Decl., Ex. E; *see also* https://www.calpers.ca.gov/page/investments/asset-classes/private-equity/pep-fund-performance. Because CalPERS does not appear to have legal title or beneficial ownership over the Facebook shares traded by those investment funds, CalPERS is not required to disclose those transactions in its Certification.

submitted a sworn Certification, has attested to the accuracy of that Certification, and has provided documentary evidence to support the Facebook transactions CalPERS questioned.[9]

### 2.    PFA Pension Has Standing And Is Not Subject To Unique Defenses

In the Joint Declaration, PFA Pension stated unequivocally that it is the beneficial owner of the shares listed in its Certification. *See* ECF No. 22-4 ¶ 4. Ignoring this evidence, CalPERS speculates that PFA Pension lacks Article III standing to assert claims arising from losses incurred on those shares. *See* ECF No. 61 at 7. In order to have standing, a plaintiff must establish an "injury-in-fact." *Huff*, 549 F.3d at 106. In the context of securities claims, the parties with standing are the entities that have legal title to the securities at issue. *See id*. at 108.

As PFA Pension clearly stated in the Joint Declaration, and reaffirmed in the Supplemental Joint Declaration, PFA Pension "has legal title to the securities listed in its certification" and "suffered substantial losses as a result of its investments in Facebook common stock during the Class Period." ECF No. 22-4 ¶ 4; Uslaner Reply Decl., Ex. B ¶¶ 14-15. As such, PFA Pension was harmed by Facebook's alleged misconduct and has standing to assert these claims. *See In re Kit Digital, Inc. Sec. Litig.*, 293 F.R.D. 441, 447 (S.D.N.Y. 2013) ("sworn declaration of ownership trumps speculation as to a party's property interest in relevant shares").

CalPERS questions whether "PFA Pension is legally entitled under applicable Danish law to claim as its own losses suffered by Høj Risiko PFAPlus, PFA Klima Aktier, PFA Indeks Global Aktier, and PFA Indeks USA Aktier." ECF No. 61 at 7. Once again, CalPERS ignores the evidence submitted by PFA Pension and distorts PFA Pension's structure. As reflected in the Joint Declaration, PFA Pension has legal title to the Facebook stock listed in its Certification and, as such, was the entity that incurred the harm when Facebook's fraud was revealed. *Huff*, 549 F.3d at 108. Accordingly, CalPERS's insinuation that PFA Pension would be seeking to assert claims

---

[9] CalPERS wrongly claims that PFA Pension "declined CalPERS' request to provide the missing information." This assertion mischaracterizes the correspondence between counsel. *See* ECF No. 61-2. After CalPERS threatened to subpoena representatives of Ohio PERS and PFA Pension to testify about their Lead Plaintiff motion, Ohio PERS and PFA Pension, "in the interests of transparency and avoiding a litigation sideshow," requested a call to discuss whatever issues CalPERS had with their motion. *See id*. at 4. That request was summarily rejected, and CalPERS's counsel simply ignored the requests in two detailed letters that CalPERS articulate the information it was requesting and the legal and factual bases supporting that request.

for harm incurred by other entities is baseless and incorrect.

Further, as CalPERS recognizes, Høj Risiko PFAPlus, PFA Klima Aktier, PFA Indeks Global Aktier, and PFA Indeks USA Aktier, are not independent legal entities. *See* ECF No. 61 at 8 n.6. (noting that these entities are not individual legal entities because they are not registered as such with the Danish Company Register); *see also* Uslaner Reply Decl., Ex. B ¶¶ 15-16. Instead, they are structured as economic entities within PFA Pension, meaning they are component parts of PFA Pension, and do not have the legal capacity to bring suit independent of PFA Pension. *See* Uslaner Reply Decl., Ex. B ¶ 15. As such, PFA Pension has the authority to sue in its own name for damages suffered on investments made through those four economic entities. *Id*. ¶ 14.

Because PFA Pension has legal title to the Facebook shares listed on its Certification, PFA Pension has "personally suffered an injury" and satisfies the "injury-in-fact" requirement. *Huff*, 549 F.3d at 107. Therefore, unlike an investment manager or other third party, PFA Pension has standing to assert these claims. *See id*. at 109.[10] The cases CalPERS cites are therefore inapposite. In *Hill v. Silver Lake Group, L.L.C.*, No. 4:20-cv-03766, ECF No. 36 (N.D. Cal. Dec. 1, 2020), the court declined to appoint as lead plaintiff a broker who represented six unnamed clients, because he was not the beneficial owner of the securities and, as such, did not suffer any injury-in-fact. *See* ECF No. 61-4 at 5. In contrast, PFA Pension incurred a direct injury on its investments in Facebook stock and has standing to assert these claims.

In *Smajlaj v. Brocade Commc'n Sys., Inc.*, 2006 WL 7348107 (N.D. Cal. Jan. 12, 2006), the court declined to appoint an asset manager because of concerns about whether it held legal title to the securities at issue. *See id*. at *2. In contrast, PFA Pension is not an asset manager for legally distinct investment funds and has submitted a declaration clearly stating that it has legal title to the Facebook stock listed on its Certification, which gives PFA Pension standing to litigate this matter. CalPERS cites to *Baydale* to support its purely speculative claim that "it is a virtual certainty that

---

[10] *Lundy v. Selene Fin., LP*, 2017 WL 2652048 (N.D. Cal. June 20, 2017) (Tigar, J.), is inapposite. In *Selene Fin.*, this Court found that the plaintiff could not demonstrate standing because he lost ownership interest when he transferred title. *See id*. at *3-4. In contrast, PFA Pension has legal title to the Facebook stock listed on its Certification, and therefore suffered an injury resulting from Facebook's alleged misconduct. Accordingly, PFA Pension has Article III standing.

. . . defendants would attempt to exploit PFA's standing defects, which will devolve into a 'needless litigation sideshow.'" No such defects exist, there is nothing for Defendants to "exploit," and the only "litigation sideshow" results from CalPERS ignoring the evidence PFA Pension submitted, threatening subpoenas, and rejecting offers to confer with PFA Pension's counsel.[11]

CalPERS goes so far as to question the titles of the PFA executives who signed PFA Pension's Certification. Those executives are identified as "Group CFO and Group CIO," leading CalPERS to speculate what "Group" refers to in those titles. ECF No. 61 at 7. The term "Group" recognizes that they are Chief Financial Officer and Chief Investment Officer of PFA Pension and PFA Holding A/S, the parent company to PFA Pension, *see* ECF No. 22-4 ¶ 4, and reflects that they have responsibility for the financial and investment areas across that group of legally separate entities. PFA Pension has provided evidence of their authority to enter legally binding agreements on behalf of PFA Pension, to execute PFA Pension's Certification, and to authorize PFA Pension's Lead Plaintiff motion. Uslaner Reply Decl. ¶ 12 & Exhibit 1 thereto.

### 3. Ohio PERS and PFA Pension Are An Ideal Lead Plaintiff Group, And The Competing Movant Has Not Provided Any Evidence To Rebut Their Showing Of Adequacy and Typicality

The PSLRA expressly allows for the appointment of a group of investors to serve as Lead Plaintiff, particularly when they are comprised of institutional investors like Ohio PERS and PFA Pension. *See* 15 U.S.C. § 78u-4(a)(3)(B); *Mersho*, 6 F.4th at 899 ("The statute expressly allows a 'group of persons' to move for appointment."). In fact, most of the largest securities class action recoveries in history, representing tens of billions of dollars recovered for the benefit of defrauded

---

[11] CalPERS's other out-of-Circuit authorities are also distinguishable. *See Steamfitters Loc. 449 Pension Fund v. Cent. Eur. Distrib. Corp.*, 2012 WL 3638629, at *3 (D.N.J. Aug. 22, 2012) (investment manager for several funds subject to unique standing defenses because it "has no ownership interest in the claims" and the party with standing are the "entities that actually purchased or owned [the company's] stock, and thus incurred any losses"); *Plymouth Cty. Ret. Ass'n v. Array Techs., Inc.*, 2021 WL 5051649, at *2 (S.D.N.Y. Nov. 1, 2021) (asset manager of legally separate funds subject to unique standing defenses regarding invalidity of assignment); *Theodore v. Purecycle Techs., Inc.*, 2021 WL 5259840, at *4 (M.D. Fla. Aug. 5, 2021) (questioning validity of assignment to asset manager from "fund" that incurred the loss and thus movant "fail[ed] to demonstrate that it has any financial interest in the relief sought in this litigation"); *Gross v. AT & T Inc.*, 2019 WL 3500496, at *3 (S.D.N.Y. July 31, 2019) (finding "a non-speculative risk" that asset manager lacks a property interest in the claims").

investors, were achieved by groups of institutional investors similar to Ohio PERS and PFA Pension.[12] Courts in this District and elsewhere routinely appoint such lead plaintiff groups upon a showing—typically provided through a written declaration by representatives of the movants—that they are "a cohesive group that will adequately represent all class members" and "capable of actively overseeing the litigation and monitoring its counsel." *Doherty v. Pivotal Software, Inc.*, 2019 WL 5864581, at *6, *11 (N.D. Cal. Nov. 8, 2019) (appointing group of two investors).

CalPERS's argument that Ohio PERS and PFA Pension are a "lawyer-created" group that may not aggregate their claims is completely without merit and belied by the evidence. ECF No. 61 at 13-14. That argument fails at the outset because PFA Pension alone incurred a loss that is more than double CalPERS's. *See, e.g.*, *Depomed*, 289 F. Supp. 3d at 1055 (appointing group whose member had the "greatest financial stake in the litigation of any movant" and noting that "[o]ther courts have found this sufficient to appoint a group as lead plaintiff").[13] Further, aggregation of Ohio PERS's and PFA Pension's losses is entirely appropriate because, as shown below, they have more than sufficiently demonstrated their adequacy to represent the Class.

CalPERS's conclusory challenges to Ohio PERS's and PFA Pension's partnership are completely undermined by the two detailed Joint Declarations submitted by Ohio PERS and PFA Pension, as well as the actions they have already taken to protect the Class's interests.[14] *See*

---

[12] *See, e,g, In re Cendant Corp. Litig.*, 264 F.3d 201, 217 (3d Cir. 2001) ($3.2 billion recovery achieved by a group of three institutions); *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 252 n.1, 261 (D.N.H. Dec. 19, 2007) ($3.2 billion recovery by group of five institutions); *In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, 2013 WL 1558686, at *1-2 (S.D.N.Y. Apr. 11, 2013) ($2.425 billion recovery by five institutions); *In re Lehman Brothers Sec. & ERISA Litig.*, No. 09-md-2017 (S.D.N.Y.) ($735 million recovery by group of five institutions). *See*

[13] In contrast, *Bodri v. GoPro, Inc.*, 2016 WL 1718217 (N.D. Cal. Apr. 28, 2016), involved a lead plaintiff group of seven members that only claimed the largest financial interest by aggregating losses. *See id.* at *4. Here, PFA Pension alone has the largest financial interest. *See Depomed*, 289 F. Supp. 3d at 1054 (distinguishing *GoPro* because "[t]here, the group in question had the largest claimed losses, but only in the aggregate").

[14] CalPERS points to just two paragraphs of Ohio PERS's and PFA Pension's Joint Declaration to contend that the evidence submitted here is "virtually identical" to the declaration submitted in another case in this District. *See* ECF No. 61 at 17-18. Aside from the fact that those two paragraphs discuss the lead plaintiff's goal of maximizing any recovery for the class and its commitment to attending court proceedings and overseeing the case—goals and commitments that should be shared by the lead plaintiff in all securities class actions—CalPERS ignores the bulk of

---

*Mersho*, 6 F.4th at 900 (holding that a lack of evidence is insufficient to rebut the presumption); *Akeena Solar*, 263 F.R.D. at 533 ("[movant] provides no evidence to support his contention that the Akeena Investor Group is a lawyer-made artifice"). The Joint Declarations demonstrate that Ohio PERS and PFA Pension are acting independent of their counsel and will continue to function cohesively to control the litigation. Ohio PERS and PFA Pension have already taken significant steps to ensure this case is prosecuted in the best interests of the Class, and will continue to do so if appointed as Lead Plaintiff. Ohio PERS, working with the OAG, stepped forward to protect the interests of the Class by filing the first complaint in this District to ensure that the proper Class Period was asserted, and to place the claims against Facebook in the proper venue. Following that filing, the Ohio Attorney General issued a press release informing Facebook investors of their right to seek appointment and expressly inviting other institutional investors to join Ohio PERS in seeking to hold Facebook accountable. After learning of that complaint and recognizing the benefits Ohio PERS and the OAG had provided through their proactive filing, PFA Pension discussed with counsel the possibility to work together with Ohio PERS and the OAG.

The decision by Ohio PERS, as advised by the OAG, and PFA Pension to seek joint leadership over this action was reached only after Ohio PERS, together with the OAG, and PFA Pension each followed their established processes for considering participation in securities litigation matters, including detailed discussions among board members and executives at both Ohio PERS and PFA Pension. Prior to filing their joint motion, representatives of the OAG, on behalf of Ohio PERS, and PFA Pension held a discussion during which they conferred about, among other things, their objectives for jointly prosecuting this case. Accordingly, CalPERS's contention that Ohio PERS and PFA Pension are acting at the direction of their counsel is belied by the deliberative processes that each institution carefully followed in deciding to take an active role in this case and jointly seek appointment as Lead Plaintiff.

The decisions in *Cloudera*, *Isaacs*, and *Eichenholtz* that CalPERS primarily relies upon do not support a finding that Ohio PERS and PFA Pension are an inadequate Lead Plaintiff. In the evidence provided by Ohio PERS and PFA Pension discussing how they came together on their own volition to seek to prosecute these claims, and disregards the steps they have already taken to assert the proper class period and organize related cases in this District.

REPLY MEM. IN FURTHER SUPPORT OF MOTION FOR APPOINTMENT AS LEAD PLAINTIFF
CASE NO. 4:21-cv-08812-JST

*Cloudera*, the court relied primarily on *Eichenholtz* and *Isaacs*, which, as discussed below, are distinguishable from this case and found that a group of two institutions failed to show it would adequately represent the class.[15] Here, by contrast, Ohio PERS and PFA Pension have submitted two detailed Joint Declarations demonstrating their active involvement in this case and their ability to work together in a cohesive manner, including discussions both before and after the filing of their motion, during which they conferred about, among other things, their strategy for continued joint oversight of this case. ECF No. 22-4 ¶ 14; Uslaner Reply Decl., Ex. B ¶¶ 5, 11. The evidence provided by Ohio PERS and PFA Pension also demonstrates that it was Ohio PERS, advised by the OAG, and PFA Pension that were the driving force behind their partnership. ECF No. 22-4 ¶¶ 9-15; Uslaner Reply Decl., Ex. B ¶¶ 6-8, 11. Thus, unlike the group that was rejected in *Cloudera*, Ohio PERS and PFA Pension have demonstrated their ability to work together in the best interests of the Class, including through multiple telephonic conferences and their collaborative efforts that led to the transfer of the related New York action to this District. *See Okla. L. Enf't Ret. Sys. v. Adeptus Health Inc.*, 2017 WL 3780164, at *6 (E.D. Tex. Aug. 31, 2017) (finding that "actions in [a parallel] proceeding demonstrate [group's] ability to cohesively represent the class").

In *Eichenholtz*, the court found that "a pre-existing relationship between entities is not required" where, as here, "the resulting group is small and cohesive enough such that it can adequately control and oversee the litigation." 2008 WL 3925289, at *8. The court in that case rejected a group of five Israeli institutional investors because some members were competitors of others in the group and were likely to have different investment strategies potentially subjecting them to unique defenses. *Id*. at *9. In addition, the group's decision to change counsel "raise[d] further questions regarding the stability of the Israel Group's decision-making structure and its relationship with its counsel" and gave the court "cause for concern."

---

[15] *Cloudera* is an outlier in rejecting the appointment of two institutional investors as lead plaintiff. The weight of authority supports the appointment Ohio PERS and PFA Pension. In addition, other courts have drawn a distinction between appointing groups consisting of unrelated individuals and groups comprised of sophisticated institutions, finding the latter more suitable. *See, e.g.*, *Cohen v. Luckin Coffee Inc.*, 2020 WL 3127808, at *5 (S.D.N.Y. June 12, 2020) (rejecting group of individuals and appointing group of institutions because "[t]heir combined experience and resources give some confidence that the group members will have the knowledge and background to appropriately supervise counsel and protect against lawyer-driven litigation").

In *Isaacs*, the court expressly noted that "a pre-litigation relationship amongst group members is not required," but rejected a group of five individual investors. 2018 WL 6182753, at *2-3. The court found that the group would be subject to unique defenses because group members had been accused or fined for committing securities fraud. *See id*. at *3; *see also id*., ECF Nos. 107 at 17; 111 at 3; 115 at 8. The court also determined that the group's proposal to have it disassembled if the court had concerns about any specific member "suggest[ed] that the group is artificial and should not have been brought in the first place." *Isaacs*, 2018 WL 6182753, at *3.[16]

Based on the evidence submitted by Ohio PERS and PFA Pension, CalPERS cannot credibly suggest that Ohio PERS, a multi-billion-dollar public pension that is advised by the Ohio Attorney General, and PFA Pension, one of the largest commercial insurance and pension companies in Europe, have ceded control of this litigation to its lawyers. CalPERS of all investors should understand that sophisticated institutions like Ohio PERS—which benefits from the resources and experience of the OAG and, like CalPERS, is a member of the U.S. pension fund community—and PFA Pension are not the types of investors that are susceptible to being controlled by counsel. Indeed, CalPERS's complaints about Ohio PERS's and PFA Pension's partnership ring particularly hollow given that CalPERS itself has previously sought and obtained lead plaintiff appointment as part of a group of unrelated institutions. For example, in *Cendant*, CalPERS served as lead plaintiff with two other institutions and recovered $3.2 billion—one of the largest securities class action recoveries in history. *See* ECF No. 27 at 4. These facts raise the question of whether CalPERS truly takes issue with Ohio PERS's and PFA Pension's partnership,

---

[16] The other authorities cited by CalPERS are likewise distinguishable. *See In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 813 (N.D. Ohio 1999) (declining to approve "hodgepodge" group of 18 unrelated individuals and multiple law firms); *Aronson v. McKesson HBOC, Inc.*, 79 F. Supp. 2d 1146, 1154 (N.D. Cal. 1999) (faced with "groups as large as 4,000 plaintiffs strong . . . vying for appointment," the court adopted a narrow view of the term "group" in the PSLRA); *In re Petrobras Sec. Litig.*, 104 F. Supp. 3d 618, 621-23 (S.D.N.Y. 2015) (rejecting group of three investors and two law firms); *In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427 (S.D. Tex. 2002) (rejecting group of three institutions with multiple law firms after finding the institutions were not involved in previous litigation as they had claimed); *In re Stitch Fix, Inc. Sec. Litig.*, 393 F. Supp. 3d 833, 835-36 (N.D. Cal. 2019) (rejecting group of three individuals that provided no evidence that they were "driving their lead plaintiff application"); *Frias v. Dendreon Corp.*, 835 F. Supp. 2d 1067, 1075 (W.D. Wash. 2011) (group had largest loss only in the aggregate).

or whether this attack was concocted by CalPERS's counsel to wrest control over the litigation from the presumptive Lead Plaintiff.

For its part, CalPERS's counsel has represented lead plaintiff groups comprised of unrelated institutions in numerous cases. Currently, Robbins Geller serves as co-class counsel in *In re Twitter Inc. Sec. Litig.*, No. 16-cv-05314 (N.D. Cal.), a case pending before this Court, in which it represents a Belgian institution and a U.S. pension fund that recently secured an $809.5 million recovery (pending approval). *See id.*, ECF No. 653-4. In *In re Cardinal Health Inc. Securities Litigation*, 226 F.R.D. 298 (S.D. Ohio 2005), Robbins Geller argued that a joint declaration submitted by four institutions provided a sufficient basis to conclude that the grouping of unrelated investors was appropriate because "the class will benefit from the . . . Group's collective financial and legal resources and experience." Uslaner Reply Decl., Ex. F ¶ 11; *see also Boynton Beach Firefighters' Pension Fund v. HCP, Inc.*, 2017 WL 5759361, at *7 (N.D. Ohio Nov. 28, 2017) (appointing a group of institutional investors represented by Robbins Geller and noting that concerns about how the group formed were assuaged by the institutions' representations that they are "'committed to working together to vigorously prosecute' this action"). Given its regular practice of representing groups that attest to their bona fides in written declarations, Robbins Geller's arguments challenging the partnership of Ohio PERS and PFA Pension lack credibility.[17]

CalPERS's claim that because Ohio PERS filed a complaint in this matter, "logic suggests" that the basis for its decision to forge a partnership with PFA Pension was to be able to argue the largest financial interest (ECF No. 61 at 15), is absurd and directly contradicted by the sworn evidence submitted by Ohio PERS (*see* ECF No. 22-4 ¶¶ 8-14; Uslaner Reply Decl., Ex. B ¶¶ 6-8). CalPERS's contention is also undermined by its own experience. In *California Public Employees' Retirement System v. Chubb Corp.*, No. 3:00-cv-04285 (D.N.J.), CalPERS filed a

[17] Robbins Geller's insinuation that because Ohio PERS's and PFA Pension's partnership is "multi-continental" it would somehow harm the Class is not only contradicted by Robbins Geller's own representation of groups comprised of U.S. and European institutions, but has been repeatedly rejected by courts. *See In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 347 (S.D.N.Y. Oct. 13, 2009) (noting that courts routinely appoint foreign investors as lead plaintiffs).

securities class action and then sought (and was appointed) as lead plaintiff along with two other investors. *See id.*, ECF No. 37. Clearly, CalPERS did not believe that its filing of a complaint and subsequent partnership with two other investors rendered it inadequate.[18]

CalPERS's suggestion that Ohio PERS's and PFA Pension's partnership would somehow "dilute" their ability to exercise control over the litigation (ECF No. 61 at 16), is simply not true and belied by the "significant public policy advantages to appointing a small, cohesive group of investors as Lead Plaintiff." *In re Molycorp, Inc. Sec. Litig.*, 2012 WL 13013602, at *3 (D. Colo. May 29, 2012); *see also In re Versata, Inc., Sec. Litig.*, 2001 WL 34012374, at *6 (N.D. Cal. Aug. 20, 2001) ("[T]he class may benefit more from a small group with no prior relationship and no opportunity or ability to collude against the interests of the class."). Indeed, cohesive lead plaintiff partnerships "best protect[] the interests of the class; afford[] the class the benefit of combined resources to defray what may prove to be significant up-front litigation costs; and give[] the class the advantages of the combined knowledge, experience, and judgment of both lead plaintiffs." 7 WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTIONS § 22:36, n.11 (5th ed. 2016). Both CalPERS and its counsel plainly recognize the benefits of such partnerships, based on their successful work with lead plaintiff groups in past cases. That Ohio PERS and PFA Pension chose to avail themselves and the Class to those significant benefits further demonstrates their suitability to serve as Lead Plaintiff. *See* ECF No. 22-4 ¶ 12; Uslaner Reply Decl., Ex. B ¶¶ 9-10.

## II.    CONCLUSION

For the reasons discussed above and in their prior briefs, Ohio PERS and PFA Pension respectfully request that the Court grant their Motion, and deny the competing motions.

Dated: January 18, 2022                    Respectfully submitted,

                                           **BERNSTEIN LITOWITZ BERGER
                                             & GROSSMANN LLP**

                                           */s/ Jonathan D. Uslaner*
                                           JONATHAN D. USLANER (Bar No. 256898)
                                           (jonathanu@blbglaw.com)

---

[18] CalPERS's authority supports Ohio PERS and PFA Pension. *See In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 119 (E.D.NY. 2012) (concerns regarding group ameliorated when "the incurred losses of the separate institutional investors individually exceed the losses of any other").

2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Tel:    (310) 819-3470

-and-

HANNAH ROSS
(hannah@blbglaw.com)
AVI JOSEFSON
(avi@blbglaw.com)
JEROEN VAN KWAWEGEN
(jeroen@blbglaw.com)
SCOTT R. FOGLIETTA
(scott.foglietta@blbglaw.com)
1251 Avenue of the Americas
New York, NY 10020
Tel:    (212) 554-1400
Fax:    (212) 554-1444

*Counsel for Proposed Lead Plaintiff
Ohio Public Employees Retirement System and PFA
Pension, Forsikringsaktieselskab and Proposed
Lead Counsel for the Class*

**OFFICE OF THE ATTORNEY GENERAL
    OF THE STATE OF OHIO**

SHAWN BUSKEN
(Shawn.Busken@OhioAttorneyGeneral.gov)
30 East Broad Street
Columbus, OH 43215
Tel:    (800) 282-0515

*Additional Counsel for Proposed Lead Plaintiff
Ohio Public Employees Retirement System*

REPLY MEM. IN FURTHER SUPPORT OF MOTION FOR APPOINTMENT AS LEAD PLAINTIFF
CASE NO. 4:21-cv-08812-JST                                                                 16

## CERTIFICATE OF SERVICE

I hereby certify that on January 18, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

**BERNSTEIN LITOWITZ BERGER**
**& GROSSMANN LLP**

*/s/ Jonathan D. Uslaner*
JONATHAN D. USLANER (Bar No. 256898)
(jonathanu@blbglaw.com)
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Tel:    (310) 819-3470

REPLY MEM. IN FURTHER SUPPORT OF MOTION FOR APPOINTMENT AS LEAD PLAINTIFF
CASE NO. 4:21-cv-08812-JST