# EXHIBIT A

**Ohio PERS's and PFA Pension's Responses to Questions Raised By CalPERS**

| Questions Raised By CalPERS | Ohio PERS's and PFA Pension's Responses |
| --- | --- |
| Did PFA Pension improperly "withhold select transactions" of "[o]ther PFA entities" from its Certification?  ECF No. 61 at 3. | No.  PFA Pension disclosed all Class Period purchases and sales of Facebook stock to which it had legal title.  In the interest of transparency, PFA Pension voluntarily disclosed that "[o]ther PFA entities," which are legally distinct from PFA Pension, held Facebook shares but are not members of the Class because they did not purchase shares of Facebook stock during the Class Period and therefore are not seeking appointment as Lead Plaintiff.  ECF No. 22-2; Reply Brief at 6; Uslaner Reply Decl., Ex. B ¶ 16. |
| Were 13 of PFA Pension's purchases, which were executed at the closing or opening trading price, actually transfers, wash accounting entries, or some other type of transaction?  ECF No. 61 at 4-5. | No.  Each of the transactions referenced in CalPERS's opposition brief were open-market transactions, made through a U.S. dollar denominated cash account with J.P. Morgan, for which PFA Pension paid a broker's commission.  The trade dates, share quantities, and prices on transaction reports from PFA Pension's custodial bank, J.P. Morgan, match those set forth on PFA Pension's Certification, and, prior to its submission, an employee of PFA Pension reviewed and confirmed that each of those transactions were conducted on the open market and that the Certification correctly reflects the price at which those transactions occurred.  Reply Brief at 4-6; Uslaner Reply Decl., Ex. B ¶ 13 & Exhibit 2 thereto. |
| "What is the 'Group'?"  ECF No. 61 at 8.  This question pertains to titles of the representatives of PFA Pension who signed PFA Pension's Certification as "Group CFO and Group CIO." | PFA Pension's Certification was signed by executives identified as "Group CFO and Group CIO" of PFA Pension.  Reply Brief at 9.  The term "Group" in their titles recognizes that they are Chief Financial Officer and Chief Investment Officer of PFA Pension and PFA Holding A/S.  PFA Holding A/S is the parent company to PFA Pension, PFA Asset Management, and PFA Bank A/S (*see* ECF No. 22-4 ¶ 4), and the "Group" designation in their titles means that they have the overall responsibility for the financial and investment areas across that group of legally separate entities (*see* Reply Brief at 9).  As two members of PFA Pension's executive board, those representatives have the authority to enter legally binding agreements on behalf of PFA Pension, including the authority to execute its PSLRA Certification.  Reply Brief at 9.  PFA Pension has submitted evidence of the authority of those executives to sign PFA Pension's Certification and authorize PFA Pension's motion seeking |

1

**Ohio PERS's and PFA Pension's Responses to Questions Raised By CalPERS**

| Questions Raised By CalPERS | Ohio PERS's and PFA Pension's Responses |
|---|---|
| | leadership over this action in partnership with Ohio PERS.  Reply Brief at 9; Uslaner Reply Decl., Ex. B ¶ 12 & Exhibit 1 thereto. |
| "What is the 'Group's connection to PFA and the OPERS-PFA Group?"  ECF No. 61 at 8. | The term "Group" is used only in the titles of the executives who signed PFA Pension's Certification.  Ohio PERS and PFA Pension never refer to themselves as a "Group" and CalPERS's use of that term to refer to the partnership of Ohio PERS and PFA Pension has no connection to the designation of certain PFA Pension executives as Group CFO and Group CIO. *See* ECF No. 22-4 ¶ 4; Reply Brief at 9; Uslaner Reply Decl., Ex. B ¶¶ 14-15. |
| "What type of entity is PFA Pension?"  ECF No. 61 at 8. | As set forth in the Joint Declaration, "PFA Pension operates as a life insurance company and pension fund within the insurance area" and is "the largest commercial pension fund company in Denmark and among the largest in Europe."  ECF No. 22-4 ¶ 4.  "PFA Pension is owned by PFA Holding A/S, which, through its subsidiaries, provides pension and insurance services such as pension saving products, retirement planning, and life and health insurance services." *Id.* |
| "What is the Group's and/or PFA's connection to, and legal relationship with, Høj Risiko PFA Plus, PFA Klima Aktier, PFA Indeks Global Aktier, and PFA Indeks USA Aktier?"  ECF No. 61 at 8. | PFA Pension's trading in Facebook stock was done through four units of PFA Pension:  Høj Risiko PFA Plus, PFA Klima Aktier, PFA Indeks Global Aktier, and PFA Indeks USA Aktier.  These are not legal entities separate from PFA Pension, but are structured as economic entities within PFA Pension that do not have the legal capacity to sue independent of PFA Pension.  Reply Brief at 7-8; Uslaner Reply Decl., Ex. B ¶ 15.  PFA Pension has the authority to sue in its own name for damages suffered on those investments.  Reply Brief at 8; Uslaner Reply Decl., Ex. B ¶¶ 14-15. |
| "What are Høj Risiko PFA Plus, PFA Klima Aktier, PFA Indeks Global Aktier, and PFA Indeks USA Aktier?"  ECF No. 61 at 8. | They are the four economic units within PFA Pension through which PFA Pension purchased the Facebook shares listed on its Certification.  Reply Brief at 8; Uslaner Reply Decl., Ex. B ¶¶ 14-15. |
| "What is the legal authority under Danish law authorizing PFA to claim losses of Høj Risiko PFA Plus, PFA Klima Aktier, PFA Indeks Global Aktier, and PFA Indeks USA Aktier and/or act on behalf of Høj Risiko PFA Plus, | PFA Pension—as the institution seeking appointment as Lead Plaintiff along with Ohio PERS—has legal title to the Facebook shares purchased through Høj Risiko PFA Plus, PFA Klima Aktier, PFA Indeks Global Aktier, and PFA Indeks USA Aktier.  They are not entities legally distinct from PFA Pension, and PFA Pension has the authority to sue in its own |

2

**Ohio PERS's and PFA Pension's Responses to Questions Raised By CalPERS**

| Questions Raised By CalPERS | Ohio PERS's and PFA Pension's Responses |
|---|---|
| PFA Klima Aktier, PFA Indeks Global Aktier, and PFA Indeks USA Aktier?"  ECF No. 61 at 8. | name for damages suffered on those investments.  Reply Brief at 7-8; Uslaner Reply Decl., Ex. B ¶¶ 14-15. |
| "What are the '[o]ther PFA entities' within the same parent/holding company's family that held and/or transacted in Facebook stock during the Class Period?"  ECF No. 61 at 9. | They are related but separate legal entities that are not members of the Class because they didn't purchase any Facebook stock during the Class Period, and PFA Pension does not have legal title to any Facebook shares held by any other separate legal entity.  Reply Brief at 7-8; Uslaner Reply Decl., Ex. B ¶ 16. |
| "If Høj Risiko PFA Plus, PFA Klima Aktier, PFA Indeks Global Aktier, and PFA Indeks USA Aktier are legally distinct (from PFA and the Group), why were they included but the unidentified '[o]ther PFA entities' were not?"  ECF No. 61 at 9. | Høj Risiko PFA Plus, PFA Klima Aktier, PFA Indeks Global Aktier, and PFA Indeks USA Aktier are not legally distinct from PFA Pension.  They are economic entities that form component parts of PFA Pension.  They were included in PFA Pension's Certification because these are the economic units within PFA Pension through which PFA Pension purchased Facebook stock during the Class Period, and PFA Pension has legal title to the shares listed on its Certification.  Reply Brief at 7-8; Uslaner Reply Decl., Ex. B ¶¶ 14-15.  The "[o]ther PFA entities" are legally separate from PFA Pension, and therefore PFA Pension does not have legal title to any shares held by those other entities, and their holdings could not be included with the transactions of PFA Pension.  Reply Brief at 5-6; Uslaner Reply Decl., Ex. B ¶ 16. |
| "What is the impact of the undisclosed holdings and transactions of the '[o]ther PFA entities' on PFA's financial interest and typicality/adequacy?"  ECF No. 61 at 9. | The holdings and transactions of the "[o]ther PFA entities" have no impact on PFA Pension's financial interest, adequacy or typicality.  The "[o]ther PFA entities" are legally separate entities from PFA Pension, PFA Pension does not have legal title to the Facebook shares they own, and PFA Pension does not have the legal authority to sue on their behalf.   Reply Brief at 5-6; Uslaner Reply Decl., Ex. B ¶ 16. |
| Does PFA Pension have "questionable standing" that could subject it to unique defenses?  ECF No. 61 at 7-9, 12. | No.  PFA Pension clearly stated in the Joint Declaration, and reaffirmed in the Supplemental Joint Declaration, that PFA Pension, as the institution seeking Lead Plaintiff appointment with Ohio PERS, "has legal title to" the Facebook stock listed in its Certification.  ECF No. 22-4 ¶ 4; Reply Brief at 7-8; Uslaner Reply Decl., Ex. B ¶¶ 14-15.  Therefore, PFA Pension suffered a direct injury on its investments in Facebook stock and has |

3

**Ohio PERS's and PFA Pension's Responses to Questions Raised By CalPERS**

| Questions Raised By CalPERS | Ohio PERS's and PFA Pension's Responses |
|---|---|
|  | standing to assert claims arising from the purchase of that stock.  Reply Brief at 7-8. |
| Are Ohio PERS and PFA Pension an improper "lawyer created" Lead Plaintiff group that "offers no explanation as to how the putative class could possibly be better off by being led by two investors . . . jointly serving as lead plaintiff"?  ECF No. 61 at 14. | No.  As set forth in two detailed Joint Declarations, Ohio PERS, through the OAG, and PFA Pension formed a partnership on their own volition, have spoken repeatedly about this litigation, and are in no way controlled by counsel.  ECF No. 22-4 ¶¶ 2, 4, 9-12; Reply Brief at 2, 11-12; Uslaner Reply Decl., Ex. B ¶¶ 5, 11.  Ohio PERS, with the OAG, and PFA Pension thoroughly considered the merits of this case and made an informed judgment to seek appointment as Lead Plaintiff, and each followed their own established processes in deciding whether to take an active role and seek appointment as Lead Plaintiff and whether to partner with each other.  Those processes included discussions within the OAG and discussions among board members and executives at both Ohio PERS and PFA Pension.  ECF No. 22-4 ¶ 11; Reply Brief at 2, 11-12; Uslaner Reply Decl., Ex. B ¶ 11.<br><br>Ohio PERS and PFA Pension both understand the tangible benefits to serving as part of a Lead Plaintiff partnership comprised of institutional investors, including providing the Class with the benefits of those institutions' combined resources and the sharing of their knowledge, experience, and judgment.  ECF No. 22-4 ¶ 12; Uslaner Reply Decl., Ex. B ¶ 9.  Moreover, Ohio PERS and PFA Pension have already demonstrated their ability to work together in the best interests of the Class through their collaborative efforts that led to the transfer of the New York action against Facebook to its proper venue in this District.  Reply Brief at 2, 12. |
| Will Ohio PERS's and PFA Pension's partnership somehow "dilute" their ability to exercise control over the litigation?  ECF No. 61 at 16. | No.  CalPERS's insinuation is not only belied by the detailed facts and evidence provided by Ohio PERS and PFA Pension, but is significantly undermined by CalPERS's own experience in *Cendant*, where CalPERS served as lead plaintiff with two other institutions and achieved a $3.2 billion recovery for investors.  Reply Brief at 14.  Indeed, CalPERS relies on its experience in *Cendant* to support its adequacy to serve as Lead Plaintiff in this case.  ECF No. 27 at 4; Reply Brief at 13-14. |

**Ohio PERS's and PFA Pension's Responses to Questions Raised By CalPERS**

| Questions Raised By CalPERS | Ohio PERS's and PFA Pension's Responses |
|---|---|
| Does "logic suggest[]" that Ohio PERS, which filed a complaint in this matter, forged a partnership with PFA Pension to be able to claim the largest financial interest?  ECF No. 61 at 15. | No.  Ohio PERS recognized that a partnership with a like-minded, institutional investor in PFA Pension could afford the Class with tangible benefits including the benefit of their combined resources, and give the Class the advantages of the knowledge, experience, and judgment of both institutions.  ECF No. 22-4 ¶¶ 4, 10; Uslaner Reply Decl., Ex. B ¶¶ 9-10. Moreover, the decision to partner with PFA Pension was also informed by Ohio PERS's and the OAG's prior experience serving as lead plaintiff groups in securities class actions, through which they experienced firsthand the benefits to serving as part of lead plaintiff groups, including the ability to collaborate on important litigation decisions and combine resources. ECF No. 22-4 ¶ 12; Uslaner Reply Decl., Ex. B ¶ 10.  Also, PFA Pension alone has a significantly larger financial interest than CalPERS, so clearly Ohio PERS and PFA Pension are not aggregating their losses to surpass the financial interests asserted by other Lead Plaintiff movants.  Reply Brief at 1, 3.<br><br>In addition, CalPERS's own experience in a securities class action in which it filed a complaint and then sought and obtained appointment as lead plaintiff with two other investors, undermines its suggested "logic" here that Ohio PERS is seeking appointment as Lead Plaintiff jointly with PFA Pension simply to claim the largest financial interest.  Reply Brief at 14-15. |