ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS (213113)
WILLOW E. RADCLIFFE (200087)
HADIYA K. DESHMUKH (328118)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com
willowr@rgrdlaw.com
hdeshmukh@rgrdlaw.com
        – and –
DARREN J. ROBBINS (168593)
DANIEL S. DROSMAN (200643)
JASON A. FORGE (181542)
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)
darrenr@rgrdlaw.com
ddrosman@rgrdlaw.com
jforge@rgrdlaw.com

[Proposed] Lead Counsel for [Proposed] Lead Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OHIO PUBLIC EMPLOYEES RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>                              Plaintiff,<br><br>       vs.<br><br>META PLATFORMS, INC. f/k/a FACEBOOK, INC., et al.,<br><br>                              Defendants. | Case No. 4:21-cv-08812-JST<br><br>CLASS ACTION<br><br>CALIFORNIA PUBLIC EMPLOYEES' RETIREMENT SYSTEM'S SUPPLEMENTAL BRIEF<br><br>DATE:        April 28, 2022<br>TIME:        2:00 p.m.<br>CTRM:      Zoom hearing per ECF No. 43<br>JUDGE:     Hon. Jon S. Tigar |

4879-2172-3670

## I.    INTRODUCTION

The OPERS-PFA Group's reply submission underscores the deficiencies associated with the Group's lead plaintiff motion.  According to the OPERS-PFA Group, it claims "the largest financial interest" and is "therefore, the presumptive Lead Plaintiff."  ECF No. 63 at 1.  That is wrong. To trigger the presumption, the statute plainly states that a timely movant must, "in the determination of the court, ha[ve] the largest financial interest" *and* "otherwise satisf[y] the requirements of Rule 23." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I).[1]  Despite taking three bites at the apple, the OPERS-PFA Group has failed to make the step two *prima facie* showing required of it – both individually as to PFA Pension and collectively as to the Group.[2]

As set forth below, even if the Group could clear step two (which it cannot), it would fail at step three.  Accordingly, CalPERS respectfully requests that the Court grant its motion to be appointed lead plaintiff and deny the Group's motion.  Nevertheless, if the Court continues to entertain the Group's motion, CalPERS would respectfully request an evidentiary hearing to examine under oath the PFA Pension declarants.

## II.    ARGUMENT

### A.    The Group Has Failed to Clear Step Two

It is PFA Pension's burden to establish standing, *not* CalPERS' burden to *disprove* it.  *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 106 n.5 (2d Cir. 2008) ("district courts should be mindful that named plaintiffs in a class action 'must allege and show that they personally have been injured'") (emphasis omitted).[3]

---

[1]    *In re Mersho*, 6 F.4th 891, 899 (9th Cir. 2021) (district court "must identify which movant has the largest alleged losses *and then* determine whether that movant has made a prima facie showing of adequacy and typicality").  Unless otherwise noted, all emphasis added and citations are omitted.

[2]    The Group's two declarations contain nearly verbatim generic and conclusory statements. *Compare* ECF No. 22-4 at ¶¶3, 10-13 *with* ECF No. 63-3 at ¶¶7-10.  There is still no plan to avoid a deadlock other than essentially talking it out with counsel.  ECF No. 63-3 at ¶10.  There is still no evidence that the members, based on different continents an ocean apart, "formed a partnership on their own volition," not at counsel's urging.  ECF No. 63-2 at 4.  The plain fact is that counsel introduced them to give OPERS a larger loss and to give PFA Pension a partner to allow the Group to claim to satisfy the Rule 23 requirements.  The Court should not permit these two strangers to do together what they cannot do apart.

[3]    European investors claiming the largest financial interest are regularly rejected as lead plaintiff candidates based on "a 'non-speculative risk' that a standing challenge from Defendants may be

### 1. PFA Pension's Standing Depends on Unsupported Determinations of Foreign Law

Here, PFA Pension *still* has not established Article III standing – *i.e.*, that PFA Pension "has legal title to the Facebook stock" on which its claimed financial interest depends (ECF No. 63-3 at ¶14).[4] The OPERS-PFA Group's reply evidence confirms that PFA Pension does not belong to any identifiable category of legal entity (such as a limited liability company or a corporation). In response to the simple question, "What type of entity is PFA Pension?" the OPERS-PFA Group responded, "'PFA Pension operates as a life insurance company and pension fund within the insurance area' and is 'the largest commercial pension fund company in Denmark and among the largest in Europe.'" ECF No. 63-2 at 2. Whatever PFA Pension is, however, the reply declaration confirms that PFA Pension *itself* did not engage in any Class Period transactions in Facebook stock, but rather asserts that "economic entities within PFA Pension" did. ECF No. 63-3 at ¶15.

Rather than explain what "economic entities" *are* under Danish law, the declarants represent what they supposedly *are not*: "[t]hese are not independent legal entities, but rather are structured as economic entities within PFA Pension" (whatever an "economic entity" is, as the declarants do not say).[5] *Id*. The declarants further contend, presumably under Danish law, that none of these

---

successful." *Gross v. AT & T Inc.*, 2019 WL 3500496, at *2 (S.D.N.Y. July 31, 2019); *Theodore v. Purecycle Techs., Inc.*, 2021 WL 5259840, at *4 (M.D. Fla. Aug. 5, 2021); *Plymouth Cty. Ret. Ass'n v. Array Techs., Inc.*, 2021 WL 5051649, at *2 (S.D.N.Y. Nov. 1, 2021). In each case, the movant claimed losses based on transactions that were not its own and failed to articulate in its motion how the movant could nonetheless claim those losses (and the claims associated therewith) in accordance with foreign law and Article III principles. PFA Pension suffers the same shortcomings.

4  It is disingenuous to contend this fact is established simply because PFA Pension says so. *See In re Boeing Co. Aircraft Sec. Litig.*, 2019 WL 6052399, at *7-*8 (N.D. Ill. Nov. 15, 2019) (declining to accept movant with largest loss's certification and declaration as sufficient where statements were "uncorroborated" and "raised so many red flags" combined with movant's "inability (or refusal) to provide sufficient information to permit the court to make an informed judgment as to their adequacy to serve as Lead Plaintiff and as to the bona fides of their claimed investments"); *Irving Firemen's Relief & Ret. Fund v. Tesco PLC*, 2015 WL 1345931, at *3 (S.D.N.Y. Mar. 19, 2015) (declining to accept certification as accurate when publicly available data rendered sworn statement doubtful, and ultimately declining to appoint institution as lead plaintiff because court was "unable to verify its claimed losses which 'undermines [its] adequacy'"); *Bhojwani v. Pistiolis*, 2007 WL 9228588, at *3 (S.D.N.Y. July 31, 2007) (declining to accept certification as accurate even where movant "provided back up statements from his broker" because court "identified . . . discrepancies, this time between the data derived from the Fidelity statements and the 'corroborative backup data'").

5  BLACK'S LAW DICTIONARY defines "entity" as "[a]n organization (such as a business or a governmental unit) that has a legal identity apart from its members." *Id.* at 573 (8th ed.).

"economic entities" has "the legal capacity to bring suit independent of PFA Pension," and that PFA Pension "has legal title to the Facebook shares [of the four different entities] identified in PFA Pension's Certification." *Id*. In the very next paragraph, PFA Pension claims, again presumably under Danish law, that some as-yet-unidentified "other PFA entities" are "legally separate from PFA Pension" and "PFA Pension does not have the legal authority to sue on behalf of those entities." *Id.* at ¶16. These reply declaration statements confirm that the OPERS-PFA Group's motion turns on whether multiple Danish law determinations go their way.

But these Danish law determinations ***cannot*** possibly go PFA Pension's way, as it has not even attempted to comply with Federal Rule of Civil Procedure 44.1, which required the OPERS-PFA Pension Group to provide notice ***and*** "to provide the district court with the information needed to determine the meaning of the foreign law." *G & G Prods. LLC v. Rusic*, 902 F.3d 940, 949 (9th Cir. 2018). The Group provided neither. And as the Ninth Circuit has explained:

> "Even in the internet age, it would put an extraordinary burden on the court if parties could nakedly invoke foreign law and then delegate the job of figuring it out to the judge and her clerks. By making clear that the information burden remains at all times on the party invoking foreign law, the scheme effectively instructs parties that they waive the right to rely on foreign law if they don't supply the information needed to determine it."

*Id.*; *Giha v. Garland*, 12 F.4th 922, 936 (9th Cir. 2021) ("personal legal conclusions" about foreign law by laypeople "are of no material value").[6] Here, the Court is left to guess what Danish law is when making the determination required of it pursuant to the PSLRA as PFA Pension did not cite any "cases, statutes, regulations, treatises, scholarly articles, legislative history, treaties [or] other legal materials." *De Fontbrune v. Wofsy*, 838 F.3d 992, 999 (9th Cir. 2016).

Beyond that insurmountable hurdle, Høj Risiko PFA Plus's J.P. Morgan statements also confirm that the relevant transactions were made by Høj Risiko, ***not*** PFA Pension. *See* ECF No. 63-

---

[6]   *See also Array*, 2021 WL 5051649, at *2 (rejecting lead plaintiff movant that failed to provide an explanation of Austrian law in support of its motion and recognizing that "foreign law is relevant to 'establish[ing] the existence of the requisite property right'" when considering Article III standing questions pertaining to European entities seeking appointment as lead plaintiff); *Gross*, 2019 WL 3500496, at *2 (denying reconsideration motion where entity "made no mention of Belgian law whatsoever" in its motion but waited until its reconsideration brief to provide legal analysis and expert declarations concerning its ability to satisfy Article III standing requirements).

3.[7]  As the Court's review will confirm, PFA Pension's name is nowhere on these statements. Again, the Group fails to explain how this record could possibly support a determination that under some aspect of uncited Danish law, PFA Pension has legal title to the shares set forth in Høj Risiko's JP Morgan statements.

PFA Pension appears to ask the Court to make at least two findings under Danish law. First, the Court is to simply assume that even though Høj Risiko PFA Plus is the actual purchaser and account holder (as the Certification (ECF No. 22-2), loss chart (ECF No. 22-3), and J.P. Morgan exhibit (ECF No. 63-3) all indicate), Høj Risiko PFA Plus nonetheless lacks a sufficient legal personality and therefore does not possess standing to assert the claim by virtue of some unidentified corporate provision or uncited aspect of Danish law.  And second, since Høj Risiko PFA Plus lacks a legal personality of its own, Danish law is such that PFA Pension possesses a property right and therefore Article III standing to assert the claims associated with Høj Risiko PFA Plus's purchases of Facebook stock.  The Court should decline to make these unfounded leaps.

### 2.    Multiple Courts Have Denied Lead Plaintiff Motions Under Similar Circumstances

The factual record before this Court is similar to that before the court in *Purecycle* where a European investor sought appointment as lead plaintiff based on transactions in the relevant stock by the movant's "fund" without "explain[ing] its relationship to the Fund."  2021 WL 5259840, at *3. Like here, the *Purecycle* entity that moved included an "unsupported" statement that the entity had standing and was authorized to sue on its fund's behalf as a matter of law.  *Id.* at *4.  And like here, the *Purecycle* entity that moved did "not state that it bought PureCycle shares," but instead "states that its fund incurred a loss, but does not establish its relationship to this fund."  *Id.*  Based on that record, the court concluded that the European entity that moved "fails to demonstrate that it has any financial interest in the relief sought in this litigation" and denied its motion.  *Id.*  A similar scenario unfolded in *Smajlaj v. Brocade Commc'ns Sys. Inc.*, 2006 WL 7348107, at *2-*3 (N.D. Cal. Jan. 12,

---

[7]    At the step two stage of the Court's analysis, the district court "must" focus its attention on the movant claiming the largest loss and "determine, ***based on the information he has provided*** in his pleadings and declarations, whether he satisfies the requirements of Rule 23(a), in particular those of 'typicality' and 'adequacy.'"  *In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002).  Thus, only the OPERS-PFA Group's evidence is considered at step two.

2006), with a similar outcome:

> The Court has struggled, despite several rounds of briefing and two oral arguments, to determine the precise corporate structure of [the movant] . . . In particular, the Court is concerned about an apparent reluctance by Intrepid to turn over documentation of its authority to litigate this matter to the Court, as well as the continuous "new" revelations that appear to expose the somewhat complicated and intricate structure of the company. . . . In sum, there are too many questions surrounding Intrepid's standing, authority, transparency, and structure that may give rise to unique defenses and are atypical of the class as a whole. Taken together, these concerns lead the Court to conclude that Intrepid will not adequately represent the interests of the plaintiff class.

*Id*. The situation here is analogous. Because the OPERS-PFA Group has failed to ascend step two regarding the transactions of the four non-moving entities, the Court cannot consider those transactions when determining the movant with the largest stake and should therefore conclude that CalPERS has the largest financial interest.[8]

"There is no greater impediment to a Plaintiff's ability to prosecute a case than a lack of standing." *Steamfitters Loc. 449 Pension Fund v. Cent. Euro. Distrib. Corp.*, 2012 WL 3638629, at *10 (D.N.J. Aug. 22, 2012). In a representative action like this, which has the potential to be one of the largest PSLRA class actions in history, putative class members are depending on the lead plaintiff to ensure that the courthouse doors are not slammed shut because of extraneous issues unique to the lead plaintiff. If this Court were to appoint PFA Pension as lead plaintiff, "'these issues could ultimately severely prejudice the class, either at the class certification stage or on some subsequent appeal'" or otherwise be exploited by defendants in the context of confidential settlement discussions. *Baydale v. Am. Exp. Co.*, 2009 WL 2603140, at *3 (S.D.N.Y. Aug. 14, 2009); *Steamfitters*, 2012 WL 3638629, at *11 (court cannot prejudice class "by subjecting them to the time and expense of litigating these unique [standing] defenses" even if "the presence of entities that have standing will cure other entities' standing deficiencies").

---

[8]  Høj Risiko PFA Plus did not timely seek appointment as lead plaintiff (and neither has PFA Klima Aktier, PFA Indeks Global Aktier, or PFA Indeks USA Aktier). Nor can it do so now. *See Zhu v. UCBH Holdings, Inc*., 682 F. Supp. 2d 1049, 1053 (N.D. Cal. 2010) (filing "a timely motion is the threshold requirement to serve as lead plaintiff" and the "'plain language of the statute[] precludes consideration of a financial loss asserted for the first time . . . in a complaint, or any other pleading, for that matter, filed after the sixty (60) day window has closed'") (emphasis omitted).

### B.    The Group Cannot Clear Step Three

Even if the Court looked past the Group's failure to provide the requisite notice under Rule 44.1 (which it should not), and even if the Group belatedly cobbles together sufficient evidence to enable the Court to determine in the Group's favor all the above issues of foreign law, there is ample step-three proof that PFA Pension has not been forthcoming regarding its Class Period transactions which likely renders it subject to unique defenses.  Specifically, PFA Pension's reply declaration represents that "*other* PFA entities owned Facebook stock during the Class Period" and those transactions can be withheld from the Court because "[t]hose entities are legally separate from PFA Pension."  ECF No. 63-3 at ¶16.  Yet, PFA Pension's own website reveals that PFA Pension *itself* claims to have held a position in Facebook stock representing approximately 1,193,967 shares as of June 30, 2021, while PFA Pension's loss chart only discloses 377,162 shares held as of June 30, 2021 (ECF No. 22-3).[9]

Perhaps more importantly, bookending PFA Pension's 1,193,967 shares as of June 30, 2021, PFA Pension's website asserts that it held 1,205,431 shares as of December 31, 2020, and 1,125,734 shares as of December 31, 2021 – only two months after the end of the Class Period and well within the PSLRA's 90-day lookback period.[10]  As such, PFA Pension's own figures confirm that PFA Pension *itself* has withheld from the Court hundreds of thousands of shares that it held during the Class Period and transacted in no later than the 90-day lookback period.

The reply declaration does not explain how or why it is proper for the Court to simultaneously: (1) accept transactions by four different "economic entities" (Høj Risiko PFA Plus, PFA Klima Aktier, PFA Indeks Global Aktier, and PFA Indeks USA Aktier) as belonging to PFA Pension; and (2) overlook undisclosed Facebook transactions that PFA Pension tells the Court

---

[9]    *See* https://pfa.dk/-/media/pfa-v2/dansk/dokumenter/om-pfa/aarsrapporter/aktielister-halvaar-2021.pdf?la=da-dk&hash=35544B102C25498F059D789F85920E1A18F36E49.

[10]    For December 31, 2020, *see* https://pfa.dk/-/media/pfa-v2/dansk/dokumenter/om-pfa/aarsrapporter/aktieliste_2020.pdf?la=da-dk&hash=7592E4CEB2DF4EEC1A46CDC1928C6198A201C4CD.  For December 31, 2021, *see* https://pfa.dk/-/media/pfa-v2/dansk/dokumenter/om-pfa/aarsrapporter/aktielister_2021.pdf?la=da-dk&hash=FC47C5EC9CF168BBA6B43F8ABFF8ED3A048E1183.  The stated share counts result from applying a Kroner-to-Dollar exchange rate of .165299 and closing Facebook price of $273.16 for December 31, 2020, and .152248 and $336.35 for December 31, 2021.

belong to "[o]ther entities," while telling the rest of the world they are, in fact, PFA Pension's own shares. In the end, because PFA Pension publicly reports these Facebook shares as its own, there is no basis for PFA Pension to selectively withhold data when the PSLRA requires disclosure of "*all*" Class Period transactions. 15 U.S.C. §78u-4(a)(2)(A)(iv).

At this late date in the now-supplemental briefing stage of what should be a simple process, PFA Pension's decision to withhold this relevant information from the Court is disqualifying.

## III.   CONCLUSION

Despite multiple opportunities to do so, PFA Pension has not established its Article III standing to claim Høj Risiko PFA Plus, PFA Klima Aktier, PFA Indeks Global Aktier, and PFA Indeks USA Aktier's losses as PFA Pension's own. The Court should decline to appoint PFA Pension or the Group to serve as the putative class's fiduciary in this case.

DATED: March 18, 2022                    Respectfully submitted,

ROBBINS GELLER RUDMAN & DOWD LLP
DARREN J. ROBBINS
DANIEL S. DROSMAN
JASON A. FORGE

s/ Darren J. Robbins
DARREN J. ROBBINS

655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

ROBBINS GELLER RUDMAN & DOWD LLP
SHAWN A. WILLIAMS
WILLOW E. RADCLIFFE
HADIYA K. DESHMUKH
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)

[Proposed] Lead Counsel for [Proposed] Lead Plaintiff

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on March 18, 2022, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ Darren J. Robbins
DARREN J. ROBBINS

ROBBINS GELLER RUDMAN & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

Email:  darrenr@rgrdlaw.com

4879-2172-3670

# Mailing Information for a Case 4:21-cv-08812-JST Ohio Public Employees Retirement System v. Meta Platforms, Inc. f/k/a Facebook, Inc. et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Hadiya Khan Deshmukh**
  hdeshmukh@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Daniel S. Drosman**
  DanD@rgrdlaw.com,tholindrake@rgrdlaw.com,e_file_sd@rgrdlaw.com,DanD@ecf.courtdrive.com,e_file_sf@rgrdlaw.com

- **Charles S. Duggan**
  charles.duggan@davispolk.com

- **Jason A. Forge**
  jforge@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Jennifer Lauren Joost**
  jjoost@ktmc.com,1759490420@filings.docketbird.com

- **Avi Josefson**
  Avi@blbglaw.com,jose.echegaray@blbglaw.com

- **David Reuven Lev Kaplan**
  dkaplan@saxenawhite.com,e-file@saxenawhite.com,lmix@saxenawhite.com

- **Gregg S. Levin**
  glevin@motleyrice.com,sturman@sturman.ch,lmclaughlin@motleyrice.com,erichards@motleyrice.com,kweil@motleyrice.com

- **Neal Alan Potischman**
  neal.potischman@dpw.com,ecf.ct.papers@dpw.com,lit.paralegals.mp@davispolk.com,felicia.yu@davispolk.com

- **Willow E. Radcliffe**
  willowr@rgrdlaw.com,WillowR@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

- **Sophia Marie Rios**
  srios@bm.net,jgionnette@bm.net

- **Darren Jay Robbins**
  darrenr@rgrdlaw.com

- **Laurence Matthew Rosen**
  lrosen@rosenlegal.com,larry.rosen@earthlink.net,lrosen@ecf.courtdrive.com

- **Hannah G Ross**
  Hannah@blbglaw.com

- **James P. Rouhandeh**
  rouhandeh@davispolk.com

- **Jonathan Daniel Uslaner**
  jonathanu@blbglaw.com

- **Shawn A. Williams**
  shawnw@rgrdlaw.com,ShawnW@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)