**BERNSTEIN LITOWITZ BERGER
 & GROSSMANN LLP**
John Rizio-Hamilton (*pro hac vice*)
(johnr@blbglaw.com)
1251 Avenue of the Americas
New York, NY 10020
Tel.: (212) 554-1400
Fax: (212) 554-1444

Jonathan D. Uslaner (Bar No. 256898)
(jonathanu@blbglaw.com)
Caitlin C. Bozman (Bar No. 343721)
(caitlin.bozman@blbglaw.com)
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Tel.: (310) 819-3470

*Counsel for Lead Plaintiffs*
*Ohio Public Employees Retirement System and*
*PFA Pension Forsikringsaktieselskab*

[Additional Counsel Appear on
Signature Page]

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE META PLATFORMS, INC. SECURITIES LITIGATION<br><br>This document relates to: All Actions | Lead Case No. 3:21-cv-08812-AMO<br><br>Consolidated Case Nos. 3:21-cv-08873-AMO and 3:21-cv-09041-AMO<br><br>**LEAD PLAINTIFFS' REPLY MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO PARTIALLY MODIFY THE PSLRA'S DISCOVERY STAY**<br><br>Date: March 7, 2024<br>Time: 2:00 p.m.<br>Courtroom 10 – 19th Floor<br>Judge: Honorable Araceli Martínez-Olguín |

**TABLE OF CONTENTS**

**Page**

REPLY MEMORANDUM OF POINTS & AUTHORITIES ............................................................1

I.     PRELIMINARY STATEMENT ....................................................................................1

II.    ARGUMENT ................................................................................................................3

       A.     Lead Plaintiffs' Request Is Particularized.......................................................3

       B.     Lead Plaintiffs Will Suffer Undue Prejudice If the Stay Is Not Modified...............8

III.   CONCLUSION .............................................................................................................11

## **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Allegheny Cty. Emps.' Ret. Sys. v. Energy Transfer LP*,
2022 WL 17339035 (E.D. Pa. Nov. 30, 2022) ........................................................................5

*In re Am. Funds Sec. Litig.*,
493 F. Supp. 2d 1103 (C.D. Cal. 2007) .............................................................................3, 4

*Avila v. Lifelock Inc.*,
2016 WL 7799624 (D. Ariz. Apr. 22, 2016) ..........................................................................9

*In re Bank of Am. Corp. Sec., Deriv., & "ERISA" Litig.*,
2009 WL 4796169 (S.D.N.Y. Nov. 16, 2009) ........................................................................6

*Borteanu v. Nikola Corp.*,
2022 WL 1188081 (D. Ariz. Apr. 21, 2022) ......................................................................8, 11

*Brown v. Ambow Educ. Hldg. Ltd.*,
2014 WL 12487666 (C.D. Cal. Feb. 6, 2014)........................................................................11

*In re Countrywide Fin. Corp. Deriv. Litig.*,
542 F. Supp. 2d 1160 (C.D. Cal. 2008) .......................................................................6, 9, 10

*Courter v. CytoDyn, Inc.*,
2022 WL 621535 (W.D. Wash. Mar. 3, 2022) .........................................................2, 3, 4, 6

*In re Delphi Corp. Sec., Deriv., & "ERISA" Litig.*,
2007 WL 518626 (E.D. Mich. Feb. 15, 2007) ...................................................................7, 10

*In re Eargo, Inc. Sec. Litig.*,
No. 3:21-cv-08597-CRB (N.D. Cal. June 30, 2022), ECF No. 71 ................................. *passim*

*In re Enron Corp. Sec., Deriv. & "ERISA" Litig.*,
2002 WL 31845114 (S.D. Tex. 2002) ...................................................................9, 10, 11, 12

*In re Facebook, Inc. S'holder Deriv. Priv. Litig.*,
411 F. Supp. 3d 649 (N.D. Cal. 2019) ..................................................................................10

*In re FirstEnergy Corp. Sec. Litig.*,
2021 WL 2414763 (S.D. Ohio June 14, 2021) ........................................................................3

*In re LaBranche Sec. Litig.*,
333 F. Supp. 2d 178 (S.D.N.Y. 2004)...........................................................................10, 11

*M&M Hart Living Tr. v. Glob. Eagle Ent., Inc.*,
2017 WL 5642326 (C.D. Cal. Aug. 18, 2017)........................................................................6

*N.Y. State Tchrs.' Ret. Sys. v. Fremont Gen. Corp.*,
  2009 WL 10675265 (C.D. Cal. Nov. 5, 2009)............................................................4, 5

*N.Y. State Tchrs.' Ret. Sys. v. Gen. Motors Co.*,
  2015 WL 1565462 (E.D. Mich. Apr. 8, 2015)............................................................8, 9

*Osher v. JNI Corp.*,
  2003 WL 25797624 (S.D. Cal. May 21, 2003)................................................................11

*Pension Tr. Fund for Operating Eng'rs v. Assisted Living Concepts, Inc.*,
  943 F. Supp. 2d 913 (E.D. Wis. 2013)..........................................................................8

*Petrie v. Elec. Game Card, Inc.*,
  761 F.3d 959 (9th Cir. 2014) ......................................................................................10

*In re Rambus, Inc. Sec. Litig.*,
  2007 WL 1430047 (N.D. Cal. May 14, 2007) .............................................................9

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
  220 F.R.D. 246 (D. Md. 2004)....................................................................................9

*S.G. Cowen Sec. Corp. v. U.S. Dist. Ct. for the N. Dist. of Cal.*,
  189 F.3d 909 (9th Cir. 1999) ......................................................................................6

*Singer v. Nicor, Inc.*,
  2003 WL 22013905 (N.D. Ill. Apr. 23, 2003) .......................................................9, 11

*In re Tesla, Inc. Sec. Litig.*,
  2019 WL 6320829 (N.D. Cal. Nov. 26, 2019) ...........................................................11

*Turocy v. El Pollo Loco*,
  2017 WL 2495172 (C.D. Cal. May 10, 2017) ..............................................2, 8, 9, 11

*U.S. v. State Water Res. Control Bd.*,
  988 F.3d 1194 (9th Cir. 2021) ....................................................................................10

*Vacold LLC v. Cerami*,
  2001 WL 167704 (S.D.N.Y. Feb. 16, 2001)...............................................................10

*In re Vantive Corp. Sec. Litig.*,
  283 F.3d 1079 (9th Cir. 2002) ....................................................................................6

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
  2016 WL 11796891 (N.D. Cal. June 23, 2016) ..........................................................10

*Whitman v. State Farm Life Ins. Co.*,
  2020 WL 5526684 (W.D. Wash. Sept. 15, 2020)..........................................................5

*In re WorldCom Sec. Litig.*,
  234 F. Supp. 2d 301 (S.D.N.Y. 2002)...........................................................8, 9, 10, 11

**RULES AND STATUTES**

15 U.S.C. §78u-4 ("Private Securities Litigation Reform Act of 1995") .............................. *passim*

Fed. R. Civ. P. 26(b)(1)..................................................................................................5

**OTHER AUTHORITIES**

H.R. Conf. Rep. 104-369, *reprinted in* 1995 U.S.C.C.A.N. 730 .....................................................10

S. Rep. No. 104-98, *reprinted in* 1995 U.S.C.C.A.N. 679 ............................................................10

**REPLY MEMORANDUM OF POINTS & AUTHORITIES**

## I.   PRELIMINARY STATEMENT

As explained in the Motion (ECF No. 134) ("Mot." or "Motion"), Lead Plaintiffs are entitled to relief from the PSLRA's stay of discovery because the discovery they seek is particularized and necessary to avoid undue prejudice.[1]  Defendants' Opposition (ECF No. 136, "Opp.") is more notable for what it does not say than what it does.

*First*, Defendants do not meaningfully dispute that the documents are relevant to both falsity and scienter.  Nor could they.  The documents uncovered by the attorneys general and detailed in the Motion demonstrate that:

- Before and during the Class Period, Defendants extensively studied the effects that Meta's platforms had on young people.  Defendants found that Facebook and Instagram had significant "negative" effects on young people's mental and physical health.  Mot. at 6.  Meta's researchers "directly told Zuckerberg" about these negative effects, and the Executive Defendants were frequently presented with, discussed among themselves, and even authored Meta's research documenting the severe negative impacts of Facebook and Instagram.  Mot. at 7-9.

- Despite their knowledge of these harms, Defendants Zuckerberg, Mosseri, Clegg, Newton, and Davis refused to make changes to Meta's platforms that would improve well-being—for instance, if they had even a "1% negative effect on Meta's advertising revenue."  Mot. at 9, 11-13.

- Defendants purposely designed Meta's platforms to addict children, even though they knew of the severe harms they caused.  Defendants, including at the direction of Defendant Mosseri, extensively studied the "biological factors" of the "teenage brain," and used that information to design the platforms "to inform product strategy" and "keep[] them scrolling and scrolling."  Mot. at 13-15.

- Meta heavily "invest[ed] in experiences targeting youth aged roughly 10-to 12," as part of deliberate efforts to recruit children under 13 onto its platforms, and in meetings with Defendant Zuckerberg, specifically advised him on how to grow "the tween market."  Mot. at 16-17.

The documents and communications discussed in the various attorney general complaints (*see* Exs. 1-3) are direct evidence showing that—as Lead Plaintiffs alleged in the Complaint—

---

[1] Emphasis is added, citations are omitted unless otherwise noted, and all terms have the same meaning as in the Complaint (ECF No. 97) and the Motion.  References to Ex. __ refer to the Declaration of John Rizio-Hamilton filed in support of the Motion (ECF No. 135).

Defendants knowingly misled the public and investors concerning the harms that Meta's platforms caused, particularly to young people. It is extremely unusual to have such direct evidence of knowledge at the pleading stage in a securities class action.

*Second*, Defendants do not contest that these documents have already been gathered, reviewed, and produced to numerous third parties, including more than forty state attorney general offices and many more individual plaintiffs in the Personal Injury actions. As a result, Lead Plaintiffs are the only interested party at a substantial informational disadvantage.

*Third*, Defendants do not dispute that many of these documents have been made public through unredacted versions of the various attorney general complaints—and that Meta in fact agreed to this. Defendants' decision to allow a number of these documents to be publicly discussed in court filings further diminishes their interest in withholding the documents.

Despite these concessions, Defendants assert that Lead Plaintiffs' request is unparticularized and that Lead Plaintiffs face no prejudice if they do not receive this discovery. Defendants are wrong on both counts.

Lead Plaintiffs' request is sufficiently particularized under the PSLRA because it seeks a defined universe of relevant documents that Defendants have already gathered, reviewed, and produced in related actions. Courts both within and outside the Ninth Circuit routinely conclude that such requests are particularized for these purposes. *See, e.g.*, *Courter v. CytoDyn, Inc.*, 2022 WL 621535, at *2 (W.D. Wash. Mar. 3, 2022) ("Courts have regularly held that requests seeking documents produced to regulatory agencies or produced in other proceedings were particularized.").

Moreover, Lead Plaintiffs face undue prejudice absent modification of the stay. Ample authority, including from the Ninth Circuit, holds that Lead Plaintiffs "would be unduly disadvantaged in pursuing litigation and settlement without discovery of the documents already made available to" other parties. *Turocy v. El Pollo Loco*, 2017 WL 2495172, at *2 (C.D. Cal. May 10, 2017). Additionally, "[m]aintaining the discovery stay as to materials already provided to other entities and plaintiffs does not further the policies behind" the PSLRA. *Id.* Lead Plaintiffs are one of numerous parties litigating against Meta based on the same misconduct that

is alleged in the Complaint, in the Personal Injury actions, and by the attorneys general of dozens of states. Lead Plaintiffs should not be the only party deprived of discovery at this juncture, especially because producing that discovery would impose no burden on Defendants. Accordingly, Lead Plaintiffs respectfully submit that the Court should grant the Motion.

## II.    ARGUMENT

### A.    Lead Plaintiffs' Request Is Particularized

Lead Plaintiffs seek the same documents that Defendants have already reviewed and produced to (i) the state attorneys general, and (ii) the civil plaintiffs in the Personal Injury actions. This readily-identifiable set of documents easily satisfies the PSLRA's particularity requirement. Federal courts "regularly find that specific requests for already-produced discovery satisfy the particularity requirement of the exception to a PSRLA discovery stay." *In re FirstEnergy Corp. Sec. Litig.*, 2021 WL 2414763, at *4 (S.D. Ohio June 14, 2021).

Defendants claim that courts within the Ninth Circuit are uniquely at odds with the rest of the country and "routinely" impose a higher standard. Opp. at 5. This assertion is incorrect. *See, e.g.*, *Courter*, 2022 WL 621535, at *2 ("Courts have regularly held that requests seeking documents produced to regulatory agencies or produced in other proceedings were particularized."); Order Re Motion for a Partial Lift of the PSLRA's Discovery Stay, *In re Eargo, Inc. Sec. Litig.*, No. 3:21-cv-08597-CRB, at 4 (N.D. Cal. June 30, 2022), ECF No. 71 ("Lead Plaintiffs seek a concrete and well-defined set of materials: the documents already produced in that related [DOJ] investigation.").

The remaining arguments that Defendants make also fail. ***First***, Defendants argue that Lead Plaintiffs' request is not sufficiently particularized because it does not identify the "'specific categories or types of documents sought,'" and that Lead Plaintiffs "provide no information whatsoever" about the documents—not even "their general subject." Opp. at 1, 5-6 (citing *In re Am. Funds Sec. Litig.*, 493 F. Supp. 2d 1103, 1107 (C.D. Cal. 2007)). Defendants are wrong. As multiple courts within the Ninth Circuit have found in recent years, Lead Plaintiffs' request for documents previously produced in other litigation satisfies the requirements of the PSLRA, and there is no requirement that Lead Plaintiffs go further and

identify "categories" of the documents produced. In fact, the courts in both *Courter* and *Eargo* rejected identical arguments to the one Defendants raise here: namely, that those plaintiffs had "failed to identify the specific categories or types of documents sought." *Courter*, at \*2 (criticizing Defendants for "fail[ing] to engage with Plaintiffs' cited case law," including certain of the cases Lead Plaintiffs cite in the Motion); *see also Eargo*, at 4 (rejecting defendant's "complaining that 'Plaintiffs seek every document produced to DOJ,' which [defendants claimed] is too broad"). In rejecting that argument, both courts directly acknowledged and declined to follow *In re American Funds Securities Litigation*, which Defendants here rely on. 493 F. Supp. 2d 1103 (C.D. Cal. 2007).

Even if the Court applied Defendants' preferred standard (and it should not), Lead Plaintiffs would satisfy that too. Defendants' assertion that the "[m]otion contains virtually no details regarding the requested discovery" (Opp. at 6) is, frankly, ridiculous. Lead Plaintiffs described, cited, and even quoted extensively from many of the documents they seek, which provides ample description of the types of documents at issue.[2] *See* Mot. at 5-17; *supra* at 1. These documents include: (i) numerous Meta internal studies on the harmful effects that its platforms have on young people, including several studies that were presented to, and even authored by, the Executive Defendants (*see* Mot. at 6-11); (ii) documents indicating that Defendants intentionally designed Meta's platforms to be addictive to the young brain (*see* Mot. at 13-16); and (iii) communications among the Executive Defendants, including Defendants Zuckerberg, Mosseri, Clegg, Newton, and Davis, in which they discussed their knowledge of these harms but refused to make changes to the platforms, in order to avoid decreasing Meta's revenue both before and during the Class Period (*see* Mot. at 11-13). *New York State Teacher's Retirement Systems v. Fremont General Corp.*, which Defendants rely on, is inapposite for this reason; the court in that case found that the plaintiff had not "identified any information

---

[2] The Multistate Complaint, and the complaints filed by the attorneys general for Massachusetts and Oklahoma, include specific descriptions of many additional compelling documents that confirm both the falsity of Defendants' statements and their scienter, across hundreds of pages. *See* Exs. 1-3. Lead Plaintiffs' Motion discusses only some of those documents within the applicable page limits.

contained on the requested documents."  2009 WL 10675265, at *2 (C.D. Cal. Nov. 5, 2009). By contrast, Lead Plaintiffs have more than adequately "indicate[d] what is contained on the documents or how any of the documents are relevant," including by referencing, describing, and even directly quoting many of the documents at issue. *Id.*

Defendants' assertion that Lead Plaintiffs' request "would not even meet the standards of Rule 26(b)(1)" (Opp. at 7) is wrong because the Motion shows that the documents are plainly relevant.  Defendants' assertion is also misplaced; courts frequently order reproductions of documents from related actions in the ordinary course of discovery where there is merely a substantial factual overlap between the cases.  *See Whitman v. State Farm Life Ins. Co.*, 2020 WL 5526684 (W.D. Wash. Sept. 15, 2020) (ordering reproduction of "all documents, records, deposition transcripts, discovery responses, and data produced or provided by" defendant in related litigation).  While Defendants equivocate without support that "[m]uch of the discovery sought by Plaintiffs is likely not relevant," and that the attorney general investigations "may have swept more broadly than the complaints that were subsequently filed" (Opp. at 1, 7), the fact of the matter is that Lead Plaintiffs have described copious amounts of highly relevant evidence in great detail, and the requested documents should be produced.

It is exceedingly rare for securities class action plaintiffs to be able to describe the sought discovery with this level of detail on a motion to lift the PSLRA stay, precisely because the stay is in place, and plaintiffs do not have access to the documents at issue.  As Lead Plaintiffs explained, they were able to obtain the information referenced in the Motion "only because it was made public; otherwise, the PSLRA discovery stay has prevented Lead Plaintiffs from seeking internal Meta documents or documents from third parties."  Mot at 2.  In short, while Lead Plaintiffs are not required to identify the specific types of documents that they expect are contained in Defendants' previous productions under recent law within the Ninth Circuit, they have obviously done so here.

The rest of Defendants' cited authority is inapposite for various reasons.  Defendants mischaracterize the decision in *In re Countrywide Financial Corp. Derivative Litigation*, 542 F. Supp. 2d 1160 (C.D. Cal. 2008).  *See* Opp. at 6.  In that case, unlike here, those plaintiffs'

requests were "not limit[ed]" to reproductions from other actions, and the court found that their requests "may or may not overlap with the discovery requested" in the related actions. *Countrywide*, 542 F. Supp. 2d at 1181; *see also In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1086 (9th Cir. 2002) (motion to dismiss opinion concerning "generalized" false statements—not PSLRA discovery stay); *M&M Hart Living Tr. v. Glob. Eagle Ent., Inc.*, 2017 WL 5642326, at *3 (C.D. Cal. Aug. 18, 2017) (no parallel proceedings); *S.G. Cowen Sec. Corp. v. U.S. Dist. Ct. for the N. Dist. of Cal.*, 189 F.3d 909 (9th Cir. 1999) (discussing third-party subpoenas and interrogatories requiring new discovery, not reproductions from defendants).

*Second*, Defendants claim that the discovery at issue is not relevant because the legal claims brought by the attorneys general and Personal Injury plaintiffs are different than the securities fraud claims brought by Lead Plaintiffs.  To start, this argument fails because there is no requirement that in order to modify the stay, the claims in both sets of actions must be legally identical.  Defendants' claim that none of the other litigants are asserting "claims based on violations of federal or state securities laws" is, in fact, a complete red herring.  Opp. at 6. Pursuant to the PSLRA, this Court consolidated into this action all of the securities class action complaints filed against Meta based on the same underlying facts, and Lead Plaintiffs were appointed to direct the case on behalf of all investors.  *See* ECF No. 77.  Put differently, there is, and can be, no other securities class action against these Defendants from which Lead Plaintiffs could even seek discovery.  If the law required complete overlap between the legal claims of the related actions, no securities plaintiff would ever succeed in lifting the stay to receive documents from other actions or investigations.  But that is not the standard.  *See, e.g.*, *Courter* (reproducing documents previously produced to the DOJ); *Eargo* (same); *In re Bank of Am. Corp. Sec., Deriv., & "ERISA" Litig.*, 2009 WL 4796169, at *2 (S.D.N.Y. Nov. 16, 2009) (reproducing documents previously produced to multiple state attorneys general and Congress); *In re Delphi Corp. Sec., Deriv. & "ERISA" Litig.*, 2007 WL 518626, at *4 (E.D. Mich. Feb. 15, 2007) (reproducing documents previously produced to the DOJ, FBI, and U.S. Postal Inspector).

And in any event, to the extent the nature of the legal claims brought in the related actions is relevant, the Multistate Complaint alleges consumer fraud claims under numerous state

laws, including based on "false or misleading statements by Meta," "deceptive representations," and the "suppression or omission of material facts with intent that others rely on such concealment, suppressions or omission." *See, e.g.*, Ex. 1 at ¶¶860-73. The Massachusetts and Oklahoma Complaints bring similar legal claims against Defendants. *See* Ex. 2 at ¶¶392-93; Ex. 3 at ¶¶396-98.

That aside, what truly matters is whether there is enough of a <u>factual</u> overlap between the actions for the discovery to be relevant. Both the Complaint and the Motion make clear that <u>the facts</u> underlying all these claims are strikingly similar, which is why the same discovery is relevant to <u>all</u> of these cases. *Compare* Complaint ¶1 ("This case arises from misstatements and omissions by the senior executives of Meta—the most powerful social media company in the world—about the severe harms that its platforms cause, and its decision to prioritize profits over users' safety"), *with* Multistate Complaint ¶1 ("Meta has repeatedly misled the public about the substantial dangers of its Social Media Platforms").

Many of the documents, statements, and events referenced in both Lead Plaintiffs' Complaint and the related actions <u>are identical</u>; the only difference is that the other actions have already received the discovery that confirms their allegations. *Compare* Complaint ¶242 (Zuckerberg Congressional testimony discussing the effects of social media usage), *with* Multistate Complaint ¶419 (focusing on same statement; confirming Zuckerberg was "given talking points" concerning platforms' "negative effects" before Congressional testimony). *See also* Complaint ¶251 (Mosseri statement that Instagram's effects on teen well-being were "quite small"), *and* Multistate Complaint ¶425 (focusing on same statement; confirming Mosseri had "been apprised of many of the significant harms teens experienced from using Instagram" before making this statement).[3]

Lead Plaintiffs' request for the documents is sufficiently particularized.

---

[3] Defendants' unsupported assertion that they would "be obligated to review the documents <u>to determine whether they are relevant</u> to this action" (Opp. at 10) is moot because once courts find it appropriate to modify the discovery stay and grant requests similar to the one Lead Plaintiffs make here, courts order that the discovery from the related actions be produced <u>without</u> re-review. *See, e.g.*, *Eargo* at 5 (ordering reproduction of documents provided to regulator) and other authorities cited herein.

**B.    Lead Plaintiffs Will Suffer Undue Prejudice If the Stay Is Not Modified**

As the Opposition tacitly concedes, courts in this Circuit and others evaluate undue prejudice on a case-by-case basis, and as a result, there is no across-the-board rule as to what constitutes undue prejudice in every case. Opp. at 8-9 (citing *Borteanu v. Nikola Corp.*, 2022 WL 1188081, at *4 (D. Ariz. Apr. 21, 2022), which acknowledges that "[t]he Ninth Circuit has never clearly addressed what constitutes 'undue prejudice' in the PSLRA discovery stay context"). In this case, Lead Plaintiffs "would face undue prejudice if the Court were not to lift the stay" because they are "fighting this lawsuit in a rapidly shifting landscape, at an informational disadvantage when compared to the many other interested parties." *Pension Tr. Fund for Operating Eng'rs v. Assisted Living Concepts, Inc.*, 943 F. Supp. 2d 913, 916 (E.D. Wis. 2013).

This conclusion finds ample support in case law, including (contrary to Defendants' assertion, Opp. at 9) Ninth Circuit cases, in which "[u]ndue prejudice has been found where the plaintiff lacks access to documents already produced to governmental and other agencies and in other lawsuits." *N.Y. State Tchrs.' Ret. Sys. v. Gen. Motors Co.*, 2015 WL 1565462, at *3 (E.D. Mich. Apr. 8, 2015) (collecting cases); *see, e.g.*, *Turocy*, 2017 WL 2495172, at *2 (concluding that securities plaintiffs "would be unduly disadvantaged in pursuing litigation and settlement without discovery of the documents already made available to the derivative plaintiffs"); *In re WorldCom Sec. Litig.*, 234 F. Supp. 2d 301, 305 (S.D.N.Y. 2002).

Defendants unpersuasively attempt to distinguish this case from *WorldCom* and its progeny based on the fact that in *WorldCom*, "the defendant was bankrupt and plaintiffs were participating in settlement negotiations with other parties who possessed additional information." Opp. at 9 n.6. But "even if [Meta] is not bankrupt, the concerns expressed by the *Enron* and *WorldCom* courts are valid and present in this case. Plaintiffs here may well be unfairly disadvantaged if they do not have access to the documents that the governmental and other agencies already have, during the pendency of the motion to dismiss." *Singer v. Nicor, Inc.*, 2003 WL 22013905, at *2 (N.D. Ill. Apr. 23, 2003) (rejecting defendants' "attempt to distinguish

th[eir] case from *Enron* and *WorldCom* by noting that the defendants in those cases were bankrupt"); *see also Gen. Motors Co.*, 2015 WL 1565462, at \*4 (collecting cases not "involv[ing] bankrupt or sold entities" where PSLRA stay was lifted).

Defendants cite to a single case in which an out-of-circuit court critiqued other courts' reliance on *WorldCom* (Opp. at 9 n.6) but ignore that most relevant authorities rely on *WorldCom*'s analysis of undue prejudice. *See, e.g.*, *Turocy*, 2017 WL 2495172, at \*2 (block-quoting *WorldCom*); *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 220 F.R.D. 246, 251-52 (D. Md. 2004) (describing *WorldCom*'s reasoning as "persuasive"). And although "Courts also have considered the defendants' settlements with regulators and/or other plaintiffs in deciding whether the securities plaintiffs would suffer undue prejudice if the PSLRA stay was not lifted," *Gen. Motors*, 2015 WL 1565462, at \*4, Defendants do not cite any authority to suggest that lifting the stay requires ongoing settlement negotiations—because none exists.

Defendants' remaining cases are inapposite. In *In re Rambus, Inc. Sec. Litig.*, the court distinguished *WorldCom* and *Enron* on the basis that—unlike here—there was "no evidence of widespread dissemination of documents to governmental or other entities." 2007 WL 1430047, at \*2 (N.D. Cal. May 14, 2007). In *Avila v. Lifelock Inc.*, the plaintiffs "only summarily argued that they will be unduly prejudiced," 2016 WL 7799624, at \*2 (D. Ariz. Apr. 22, 2016), whereas here, Lead Plaintiffs have explained in detail, both in this Reply and in their Motion, why they would suffer undue prejudice absent modification of the stay. *Countrywide* is even further afield because there, the court never reached the question of undue prejudice. *See Countrywide*, 542 F. Supp. 2d at 1181, *abrogated by U.S. v. State Water Res. Control Bd.*, 988 F.3d 1194 (9th Cir. 2021). Finally, Defendants' other cases—including *Facebook*, *Volkswagen*, *Petrie*, *American Funds*, and *S.G. Cowen*—are among the many cases that interpret the PSLRA discovery stay in light of its legislative history, which, as explained *infra*, strongly supports modifying the stay in this case.

Modifying the stay is entirely consistent with the purposes of the PSLRA discovery stay. Congress "intended [the stay] to prevent unnecessary imposition of discovery costs on defendants" in frivolous actions. H.R. Conf. Rep. 104-369, at 32, *reprinted in* 1995

U.S.C.C.A.N. 730, 731; *see, e.g.*, S. Rep. No. 104-98, at 14, *reprinted in* 1995 U.S.C.C.A.N. 679, 693; *WorldCom*, 234 F. Supp. 2d at 305 ("Congress enacted the discovery stay in order to minimize the incentives for plaintiffs to file frivolous securities class actions in the hope either that corporate defendants will settle those actions rather than bear the high cost of discovery . . . or that the plaintiff will find during discovery some sustainable claim not alleged in the complaint"). Recognizing this, "[c]ourts have modified the discovery stay in other securities class actions involving concurrent investigations by governmental agencies when doing so would not frustrate Congress' purposes in enacting the PSLRA." *In re LaBranche Sec. Litig.*, 333 F. Supp. 2d 178, 181 (S.D.N.Y. 2004) (collecting cases). Here, Lead Plaintiffs "ha[ve] clearly not filed the complaint to initiate a 'fishing expedition' in search of sustainable claims or to force defendants to settle an otherwise frivolous class action," as demonstrated by the fact that a bipartisan coalition of dozens of state attorneys general have sued Meta for the same misconduct alleged in the Complaint—causing and concealing harm to young users of Meta's platforms. *WorldCom*, 234 F. Supp. 2d at 305; *accord Vacold LLC v. Cerami*, 2001 WL 167704, at *7 (S.D.N.Y. Feb. 16, 2001).

Accordingly, the legislative intent of the PSLRA provides additional support for modifying the discovery stay under these circumstances. *See Delphi Corp.*, 2007 WL 518626, at *7 ("the PSLRA stay 'was not designed to keep secret from counsel in securities cases documents that have already become available for review by means other than discovery in the securities case'" (quoting *In re Enron Corp. Sec., Deriv. & "ERISA" Litig.*, 2002 WL 31845114, at *1 (S.D. Tex. 2002))); *WorldCom*, 234 F. Supp. 2d at 306 ("Where, as here, plaintiffs are not in any sense engaged in a fishing expedition or an abusive strike suit and do not thereby act in contravention of the fundamental rationales underlying the PSLRA discovery stay, . . . defendants cannot . . . bend Section 78u-4(b)(3)(B) to a purpose for which it was not intended."); *Turocy*, 2017 WL 2495172, at *2 ("Maintaining the discovery stay as to materials already provided to other entities and plaintiffs does not further the policies behind the PLSRA.").

The minimal burden on Defendants to produce the requested discovery provides yet further support for modifying the stay, and is not, as Defendants contend, "irrelevant." Opp. at

10. "When deciding whether or not to lift the PSLRA's discovery stay, 'it is customary to consider whether a production request places an undue burden on the party from which it is requested.'" *LaBranche*, 333 F. Supp. 2d at 183 (quoting *WorldCom*, 234 F. Supp. 2d at 306).

Defendants cite *Tesla*, but there, the court held that there was no undue prejudice because the only parallel proceedings had already "been resolved," and therefore, there was "no demonstrable urgency" to obtain the discovery—the exact opposite of this case. *In re Tesla, Inc. Sec. Litig.*, 2019 WL 6320829, at *2 (N.D. Cal. Nov. 26, 2019). The "critical" difference here, as the *Tesla* court noted, is that there are "multiple other proceedings being brought" against Defendants in a "rapidly changing legal landscape." *Id.* Nor do the other cases Defendants cite undercut the relevance of burden—they merely stand for the uncontroversial proposition that defendants' burden to produce is irrelevant where, unlike here, there is no undue prejudice. Opp. at 10 n.7 (citing *Osher v. JNI Corp.*, 2003 WL 25797624, at *3 (S.D. Cal. May 21, 2003) ("the fact that Defendants will not be subjected to great expense . . . is insufficient by itself to justify lifting the discovery stay")); *Brown v. Ambow Educ. Hldg. Ltd.*, 2014 WL 12487666, at *2 (C.D. Cal. Feb. 6, 2014) (declining to consider burden to defendants "[a]bsent a need . . . to prevent 'undue prejudice'"); *Borteanu*, 2022 WL 1188081, at *3 n.4 (relying on *Osher* and *Brown*)).

Here, "production would not place an undue burden on the defendants, since they had already reviewed and compiled the documents when they produced them to the other agencies." *Singer*, 2003 WL 22013905, at *2 (citing *Enron*, 2002 WL 31845114, at *2; *WorldCom*, 234 F. Supp. 2d at 306). As the *Enron* court explained, "this discovery has already been made, and it is merely a question of keeping it from a party because of the strictures of a statute designed to prevent discovery abuse." *Enron*, 2002 WL 31845114, at *2 (lifting stay where "the burden would be slight because Enron has already found, reviewed, and organized the documents").

## III.   CONCLUSION

Lead Plaintiffs ask the Court to GRANT the Motion to Partially Modify the Discovery Stay.[4]

---

[4] Lead Plaintiffs acknowledge that if the Court denies Defendants' motion to dismiss, the action will proceed to discovery and the Motion will be moot.

Dated: December 26, 2023                    Respectfully submitted,

                                            **BERNSTEIN LITOWITZ BERGER**
                                              **& GROSSMANN LLP**

                                            */s/ John Rizio-Hamilton*
                                            John Rizio-Hamilton (*pro hac vice*)
                                            (johnr@blbglaw.com)
                                            Hannah Ross (*pro hac vice*)
                                            (hannah@blbglaw.com)
                                            Jeroen van Kwawegen (*pro hac vice*)
                                            (jeroen@blbglaw.com)
                                            Lauren Ormsbee (*pro hac vice*)
                                            (lauren@blbglaw.com)
                                            Rebecca Boon (*pro hac vice*)
                                            (rebecca.boon@blbglaw.com)
                                            John Esmay (*pro hac vice*)
                                            (john.esmay@blbglaw.com)
                                            Mathews de Carvalho (*pro hac vice*)
                                            (mathews.decarvalho@blbglaw.com)
                                            1251 Avenue of the Americas
                                            New York, NY 10020
                                            Tel.: (212) 554-1400
                                            Fax: (212) 554-1444

                                            -and-

                                            Jonathan D. Uslaner (Bar No. 256898)
                                            (jonathanu@blbglaw.com)
                                            Caitlin Bozman (Bar No. 343721)
                                            (caitlin.bozman@blbglaw.com)
                                            2121 Avenue of the Stars, Suite 2575
                                            Los Angeles, CA 90067
                                            Tel.: (310) 819-3470

                                            *Counsel for Lead Plaintiffs*
                                            *Ohio Public Employees Retirement System and PFA*
                                            *Pension Forsikringsaktieselskab*

                                            **OFFICE OF THE ATTORNEY GENERAL**
                                              **OF THE STATE OF OHIO**

                                            Shawn Busken
                                            (Shawn.Busken@OhioAttorneyGeneral.gov)
                                            30 East Broad Street
                                            Columbus, OH 43215
                                            Tel.: (800) 282-0515

                                            *Additional Counsel for Lead Plaintiff Ohio Public*
                                            *Employees Retirement System*