Charles S. Duggan (admitted *pro hac vice*)
James P. Rouhandeh (admitted *pro hac vice*)
Nikolaus J. Williams (admitted *pro hac vice*)
Paulina Perlin (admitted *pro hac vice*)
DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, NY 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Email: charles.duggan@davispolk.com
        rouhandeh@davispolk.com
        nikolaus.williams@davispolk.com
        paulina.perlin@davispolk.com

Neal A. Potischman (SBN 254862)
DAVIS POLK & WARDWELL
900 Middlefield Road
Redwood City, CA 94063
Telephone: (650) 752-2000
Facsimile: (650) 752-2111
Email: neal.potischman@davispolk.com

*Attorneys for Defendants Meta Platforms, Inc.,
Mark Zuckerberg, Nick Clegg, Karina Newton and
Antigone Davis*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE META PLATFORMS, INC. SECURITIES LITIGATION | Lead Case No. 3:21-cv-08812-AMO |
| | Consolidated Case Nos. 3:21-cv-08873-AMO and 3:21-cv-09041-AMO |
| | **STIPULATION AND ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION** |
| | CLASS ACTION |
| | Judge: Hon. Araceli Martínez-Olguín Courtroom: 10 |

## 1.    PURPOSE

This Stipulation and Order the ("Order") will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure, the Northern District of California's Guidelines for the Discovery of Electronically Stored Information, the Standing Order for Civil Cases Before District Judge Araceli Martínez-Olguín, and any other applicable orders and rules.

## 2.    COOPERATION AND PROPORTIONALITY

The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of ESI.

## 3.    LIAISON

The Parties have identified liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI.  Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter.  The Parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

## 4.    PRESERVATION

The Parties have discussed their preservation obligations and needs and agree that preservation of potentially relevant ESI will be reasonable and proportionate.  To the extent any Party raises issues with respect to the other Party's preservation obligations, the Parties will meet and confer over those obligations and bring any open items in dispute to the Court in accordance with its standing order for the submission of discovery disputes.

## 5.    SEARCH

The Parties agree to the following process to search, collect, cull, and produce documents responsive to discovery requests:

a)  Search Terms.  On December 30, 2024, Plaintiffs served their First Set of Requests for the Production of Documents ("Plaintiffs' First Set of RFPs").  Defendants

1

served their Responses and Objections ("Defendants' R&Os") to Plaintiffs' First Set of RFPs on February 12, 2025, and the Parties have been meeting and conferring over Plaintiffs' First Set of RFPs and Defendants' R&Os, including the timing for exchanging search terms.  The Parties have agreed to the below procedure for negotiating search terms applicable to Plaintiffs' First Set of RFPs, which will also apply to all other discovery of ESI if the producing Party will use search terms to locate potentially responsive documents for collection and/or cull after collection.

    i.    The producing Party will provide an initial list of proposed search terms that it believes would lead to the identification of relevant documents as soon as practicable after the Parties resolve any disputes about the scope of the discovery requests, but in no event later than 28 days after the responding Party has served responses and objections to the discovery requests, except the Parties will separately agree to a date for the producing Party to provide search terms applicable to Plaintiffs' First Set of RFPs.

    ii.    Within seven (7) days of the producing Party providing its proposed search terms, the receiving Party will provide a list of any additional search terms it believes should be run.  Within seven (7) days of the receiving Party providing its list of additional terms, the Parties will meet and confer over their respective proposed search terms.

    iii.    If the producing Party objects to the inclusion of certain search terms on the basis of burden, it will make good faith efforts to provide prior to the meet and confer, and no later than 14 days following the exchange of search terms, a search term hit list or hit report to the requesting Party that includes: (i) for the search terms to which it objects; the number of documents that hit on each term; the number of unique documents that hit on each term (i.e., documents that hit on a particular term and no other term on the list); the total number of documents for all such terms combined, with and without families; and (ii) for all search terms proposed by the producing Party (excluding any terms to

2

which the producing Party objects), the total number of documents that would be returned, with and without families.  If the receiving Party concludes that it cannot adequately assess burden without information regarding the total number of documents against which the search terms have been run, the Parties shall meet and confer over the producing Party's obligation to disclose such information.

    iv.    Thereafter, the Parties will meet and confer to attempt to reach agreement on a final set of search terms.  If the Parties cannot reach agreement on a final set of search terms within 28 days after the producing Party produced its hit report, the Parties agree to submit any remaining dispute to the Court in accordance with this Court's standing order for the submission of discovery disputes.

b) Custodians.  Pursuant to the Parties' agreement, Plaintiffs provided a preliminary list of proposed custodians in connection with Plaintiffs' First Set of RFPs on February 5, 2025, and Defendants provided a counter proposal list of custodians on February 19, 2025.  The Parties are meeting and conferring over a final custodian list in connection with Plaintiffs' First Set of RFPs.  For all other requests for the production of documents, the receiving Party will provide a proposed list of custodians, if any, specific to such requests within 14 days of serving responses and objections to the discovery requests, and the requesting Party will provide any counter proposal list of custodians seven days later.

c) Technology Assisted Review.  If a producing Party intends to use technology assisted review ("TAR") to filter out or exclude non-responsive documents, it shall notify the receiving Party and the Parties shall meet and confer regarding what information, if any, the producing Party must disclose in connection with its use of TAR.

d) Each Party will use reasonable efforts to filter out common system files and application executable files by using a commercially reasonable hash identification

3

process. For example, the Parties may filter out during this process the hash values that are located in the National Software Reference Library ("NSRL") NIST hash set list.

e) Nothing in this Order may be construed or interpreted as precluding a producing Party from performing a responsiveness review to determine if documents (1) captured by search terms; (2) identified as potentially responsive through TAR; or (3) identified as potentially responsive based on location, source or other criteria, are in fact responsive to the Requesting Party's discovery requests.  Similarly, nothing may be construed or interpreted as precluding a producing Party from performing, by any means, a privilege review of documents determined to be responsive. Further, nothing in this Order requires the production of documents captured by any search term that are not responsive to the Requesting Party's request, privileged, or otherwise protected from disclosure.

**6.    PRODUCTION FORMATS**

The Parties agree to produce documents in the formats described in Appendix 1 to this Order.  If particular documents warrant a different format, the Parties will cooperate to arrange for the mutually acceptable production of such documents. The Parties agree, to the extent practicable, not to materially degrade the searchability of documents as part of the document production process.

**7.    PHASING**

When a Party propounds discovery requests pursuant to Fed. R. Civ. P. 34, the Parties may produce documents on a rolling basis (i.e., breaking the full document production into multiple productions made on different dates).  The Parties agree to meet and confer to determine the priority of custodians and the phasing for production of documents.  Nothing in this Section requires a Party to substantially complete the production of documents before the Court-ordered deadline for doing so.

4

STIPULATION AND ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION CASE NO. 3:21-CV-08812-AMO

**8.    THIRD PARTY DOCUMENTS**

A Party that issues a subpoena to a non-party ("Issuing Party") will include a copy of this Order with the subpoena and state that (i) the subpoenaed non-party should produce Documents in response to the subpoena to all Parties; and (ii) the Parties to this litigation have requested that non-parties produce documents in accordance with the specifications set for herein.  If a Party modifies or extends the time to respond to a Fed. R. Civ. P. 45 document subpoena in writing, it shall simultaneously provide that written extension, modification, or explanation to the other Party.

If the subpoenaed non-party produces documents to the Issuing Party but does not produce those documents to other Parties, the Issuing Party will produce such documents to those other Parties within 14 days of receiving the documents, except where the documents are to be used in a deposition, in which case the Issuing Party will produce such documents to all other Parties no later than three days prior to the deposition, or as soon as reasonably practicable if such production occurs thereafter.  Any Party that does not have access to substantially all materials that have been provided by a non-party for at least 14 calendar days before any deposition of that non-party may elect to have the deposition postponed until the Party has had access to the materials for at least 14 calendar days.  If the non-party production cannot reasonably be produced to the other Parties within the time periods set forth herein, the Issuing Party will notify the other Parties and provide a reasonable time for production.

Nothing in this Order is intended or may be interpreted to narrow, expand, or otherwise affect the rights of the Parties or non-parties to object to a subpoena.  Nor is anything in this Order intended to limit the right of a Party to assert attorney-client privilege and/or work product protection over documents produced by a non-party, in which case the Parties will meet and confer over the process and timing for reviewing the documents and asserting such attorney-client privilege and/or work product protection.  If the non-party production is not Bates-stamped, the Parties will meet and confer upon a format for designating the documents with a unique Bates Number prefix.

**9.    DOCUMENTS PROTECTED FROM DISCOVERY**

a)  The Parties intend to enter into a separate Stipulation and Proposed Order under Fed.

5

R. Civ. 502(d) that governs the production of documents protected from discovery.

b)  The Parties have submitted a separate Stipulation and Proposed Protective Order that governs the treatment of confidential documents and information produced or disclosed from discovery.

## 10.  PRIVILEGE LOG PROTOCOL

The Parties intend to enter into a separate Privilege Log Protocol by no later than March 31, 2025.

## 11.  NO WAIVER

a)  Nothing in this Order will be interpreted to require disclosure of nonresponsive information or responsive information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. Nothing in this Order waives any applicable privilege or other legal basis under which information may not be subject to production.

b)  The Parties do not waive any objections to the production, discoverability, admissibility, or confidentiality of documents and ESI.

c)  Nothing in this Order will preclude or impair any and all protections provided by any protective order(s), 502(d) order, privilege log protocol, expert protocol or other agreement entered into by the Parties.

## 12.  MODIFICATION

This Order may be modified by a written agreement of the Parties entered by the Court or by the Court for good cause shown.

**IT IS SO STIPULATED**, through Counsel of Record.

6

Dated: March 25, 2025

Respectfully submitted,

**DAVIS POLK & WARDWELL LLP**

*/s/ Charles S. Duggan*

Charles S. Duggan (admitted *pro hac vice*)
James P. Rouhandeh (admitted *pro hac vice*)
Nikolaus J. Williams (admitted *pro hac vice*)
Paulina Perlin (admitted *pro hac vice*)
DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, NY 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Email: charles.duggan@davispolk.com
        rouhandeh@davispolk.com
        nikolaus.williams@davispolk.com
        paulina.perlin@davispolk.com

Neal A. Potischman (SBN 254862)
DAVIS POLK & WARDWELL
900 Middlefield Road
Redwood City, CA 94063
Telephone: (650) 752-2000
Facsimile: (650) 752-2111
Email: neal.potischman@davispolk.com

*Attorneys for Defendants Meta Platforms, Inc.,
Mark Zuckerberg, Nick Clegg, Karina Newton
and Antigone Davis*

**BERNSTEIN LITOWITZ BERGER
  & GROSSMANN LLP**

*/s/ John Rizio-Hamilton*

John Rizio-Hamilton (*pro hac vice*)
(johnr@blbglaw.com)
Rebecca E. Boon (*pro hac vice*)
(rebecca.boon@blbglaw.com)
Mathews R. de Carvalho (*pro hac vice*)
(mathews.decarvalho@blbglaw.com)
1251 Avenue of the Americas
New York, NY 10020
Tel: (212) 554-1400
Fax: (212) 554-1444

-and-

7

STIPULATION AND ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION CASE NO.
3:21-CV-08812-AMO

Jonathan D. Uslaner (Bar No. 256898)
(jonathanu@blbglaw.com)
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Tel: (310) 819-3481

*Counsel for Lead Plaintiffs*
*Ohio Public Employees Retirement System and*
*PFA Pension Forsikringsaktieselskab*

**OFFICE OF THE ATTORNEY GENERAL**
**OF THE STATE OF OHIO**

Shawn Busken
(Shawn.Busken@OhioAttorneyGeneral.gov)
30 East Broad Street
Columbus, OH 43215
Tel: (800) 282-0515

*Additional Counsel for Lead Plaintiff Ohio*
*Public Employees Retirement System*

## ECF ATTESTATION

I, Charles S. Duggan, am the ECF User whose identification and password are being used to file this Stipulation and Order re: Discovery of Electronically Stored Information. In compliance with Civil Local Rule 5.1(i)(3), I hereby attest that counsel for all parties have concurred in this filing.

Dated: March 25, 2025                              By: */s/ Charles S. Duggan*
                                                                  Charles S. Duggan

\*          \*          \*

**IT IS ORDERED** that the forgoing Agreement is approved.

Dated:  April, 15, 2025          _____
                                              KANDIS A. WESTMORE
                                              UNITED STATES MAGISTRATE JUDGE

8

STIPULATION AND ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION CASE NO.
3:21-CV-08812-AMO

# APPENDIX 1: PRODUCTION FORMAT

## 1.    PRODUCTION COMPONENTS

Except as otherwise provided below, ESI will be produced in accordance with the following specifications:

a) an ASCII (or UTF8) delimited data file (.DAT) using standard delimiters;

b) an image load file (.OPT) that can be loaded into commercially acceptable production software (e.g., Concordance or Relativity);

c) native or TIFF images; and

d) document level .TXT files for all documents containing extracted full text or OCR text.

e) parent-child relationships will be maintained in production.

Links (or hyperlinks) within documents: If a Receiving Party identifies to the Producing Party a reasonable number of specific hyperlinks it believes are relevant and important to this action, the Parties agree to meet and confer over such request.

Non-substantive automatically-generated embedded files, such as logos, embedded, non-substantive formatting files such as .ole or .dll formats, or confidentiality legends need not be produced as separate attachments.

Documents or records existing in physical hard copy format may be converted to a single page .TIFF file and produced following the same protocols set forth herein or otherwise agreed to by the Parties, regardless of the format in which the documents or records originally existed.

Notwithstanding the foregoing, all documents that the producing Party received from non-parties or reproduces in whole or in part from the production files of a historical litigation may be produced in the same manner and form, including native files and all metadata, as the producing Party received from the non-party or as originally produced in the relevant historical litigation.

If a particular document warrants a different production format, the Parties will cooperate in good faith to arrange for a mutually acceptable production format.

9

If a producing party asserts that certain ESI is inaccessible or otherwise unnecessary or inadvisable under the circumstances, or if the requesting party asserts that, following production, certain ESI is not reasonably usable, the parties shall meet and confer with their respective technology experts to discuss resolving such assertions. If the parties cannot resolve any such disputes after such a meet and confer has taken place, the issue shall be presented to the Court for resolution.

**2.    PRODUCTION MEDIA AND ACCESS CONTROLS**

Documents will be encrypted and produced through electronic means, such as secure file sharing methods (e.g., FTP), or on CD, DVD, flash drive or external hard drive ("Production Media"). Each piece of Production Media will identify a production number corresponding to the production volume (e.g., "VOL001"). Each piece of Production Media will also identify: (a) the case caption; (b) the following label: "This media contains material subject to Court Ordered security measures"; (c) the producing Party's name; (d) the production date; and (e) the Bates Number range of the materials contained on the Production Media.

Nothing in this Order will preclude or impair any and all protections provided to the Parties by any protective order(s) agreed and entered into by the parties. Any data produced by the producing Party must be protected in transit, in use, and at rest by all in receipt of such data. Parties will use best efforts to avoid the unnecessary copying or transmittal of produced documents. Any copies made of produced data must be kept on media or hardware employing whole-disk or folder level encryption or otherwise secured on information systems and networks in a manner consistent with the best practices for data protection. If questions arise, Parties will meet and confer to ensure security concerns are addressed prior to the exchange of any documents.

**3.    DATA LOAD FILES / IMAGE LOAD FILES**

Each TIFF in a production must be referenced in the corresponding image load file. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the image load file(s) in the production. The total number of pages referenced in a production's image load file should match the total number of

10

TIFF files in the production. All images must be assigned a unique Bates number that is sequential within a given document and across the production sets.  The Bates Numbers in the image load file must match the corresponding documents' beginning Bates numbers in the data load file. The total number of documents in a production should match the total number of records in the data load file.  Load files will not vary in format or structure within a production, or from one production to another.

**4.     METADATA FIELDS**

Each of the metadata and coding fields set forth below that can be extracted will be produced for each document. The Parties are not obligated to populate or edit manually any of the fields below if such fields cannot be extracted from a document, with the exception of the following: (a) BEGBATES, (b) ENDBATES, (c) BEGATTACH, (d) ENDATTACH, (e) PRODVOL, (f) ALLCUSTODIAN(S), (g) CONFIDENTIALITY, (h) REDACTIONS, (i) NATIVEFILEPATH, (j) TEXTFILEPATH, and (k) HASHVALUE, which should be populated by the Party or the Party's vendor.  The Parties will make reasonable efforts to ensure that metadata fields automatically extracted from the documents correspond directly to the information that exists in the original documents.

| Field Name | Field Description |
|---|---|
| BEGBATES | Beginning Bates number as stamped on the production image |
| ENDBATES | Ending Bates number as stamped on the production image |
| BEGATTACH | First production Bates number of the first document in a family |
| ENDATTACH | Last production Bates number of the last document in a family |
| PRODVOL | Production volume |
| ALLCUSTODIAN(S) | Individual(s) from whom the document was obtained and de-duplicated out during global de-duplication |

11

| Field Name | Field Description |
|---|---|
| CONFIDENTIALITY | Confidentiality designation assigned to document |
| HASHVALUE | Hash value of document (e.g. MD5 or SHA-1) |
| AUTHOR | Any value populated in the Author field of the document properties (Edoc or attachment only) |
| DOCDATE | Date the document was created (format: MM/DD/YYYY) (Edoc or attachment only) |
| DATE/TIMEMODIFIED | Date and time when document was last modified according to filesystem information (format: MM/DD/YYYY hh:mm AM/PM) (Edoc or attachment only) |
| FILELASTSAVEDBY | The last individual to save the file. |
| FILELASTEDITEDBY | The name of the last person to edit the document from extracted metadata |
| FILENAME | Filename of an electronic document |
| ALLFILEPATH(S) | Original path(s) to the individual source file(s). Includes path up to and including internal path of containers |
| TITLE | Any value populated in the Title field of the document properties |
| DOCEXT | File extension of document pulled from the document properties |
| FROM | The sender of the email |
| TO | All recipients that were included on the "To" line of the email |
| CC | All recipients that were included on the "CC" line of the email |
| BCC | All recipients that were included on the "BCC" line of the email |
| DATETIMERECEIVED | Date and time email was received (format: MM/DD/YYYY HH:MM SS) as processed per the TIMEZONE field |
| DATETIMESENT | Date and time email was sent (format: MM/DD/YYYY HH:MM SS) as processed per the TIMEZONE field |

12

| Field Name | Field Description |
|---|---|
| EMAILSUBJECT | Subject line of email pulled from the document properties |
| REDACTIONS | Indicate Yes/No if document redacted |
| TIMEZONE | Reflects the time zone corresponding to the DATETIMERECEIVED and DATETIMESENT fields |
| NATIVEFILEPATH | Native File Link (Native Files only) |
| TEXTFILEPATH | Path to extracted text/OCR file for document |
| TEXT/CHAT TYPE | Indicates the type of text/chat |
| PARTICIPANTS | Indicates the participants (either by name or phone number) of a text/chat |
| FILEAPPLICATION | Native file application associated with file |
| EMAILCONVERSATION INDEX/THREAD TEXT | ID used to tie together e-mail threads |
| EMAILIMPORTANCE | Email importance flag |

**5.    TIFFs**

Documents that exist only in hard copy format will be scanned and produced as TIFFs. In scanning hardcopy documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., hardcopy documents should be logically unitized). The parties will use reasonable efforts to unitize documents correctly.

Documents that exist as ESI will be converted and produced as TIFFs, except as provided below.  The Parties will take reasonable efforts to process presentations (e.g., MS PowerPoint) with hidden slides and speaker's notes unhidden, and to show both the slide and the speaker's notes on the TIFF image. Unless excepted below, single page, black and white, Group IV TIFFs should be provided, at least 300 dots per inch (dpi) for all documents. Each

13

TIFF image will be named according to a unique corresponding Bates number associated with the document.  Each image will be branded according to the Bates number and the agreed upon confidentiality designation. Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape).  Upon written request , the producing Party will provide a higher quality TIFF image or the native or original file provided the volume of documents selected for such re-production is reasonable.

**6.    COLOR**

For files not produced in their native format, if an original document contains color, the producing party may produce black and white image(s).  At the request of the receiving party, the producing Party shall produce color images, provided that the parties shall meet and confer if the producing Party believes that the number of requests is unreasonable.

**7.    TEXT FILES**

A single multi-page text file will be provided for each document, and the filename should match its respective TIFF filename.  When possible, the text of native files should be extracted directly from the native file. Text files will not contain the redacted portions of the documents. A commercially acceptable technology for optical character recognition ("OCR") will be used for all scanned, hard copy documents and for documents with redactions.

**8.    NATIVE FILES**

Spreadsheets (e.g., MS Excel) will be produced in native format. Spreadsheets may be redacted in native format or as redacted TIFF files with OCR Text Files.  To the extent that they are produced in this action, audio, video, and multi-media files will be produced in native format. Native files will be produced with a link in the NATIVEFILEPATH field, along with extracted text (where extracted text is available) and applicable metadata fields set forth in

14

paragraph 4 above.  A Bates numbered TIFF placeholder indicating that the document was provided in native format must accompany every native file.

The Parties agree to respond to additional reasonable and specific requests for the production of files or file types in native format where appropriate.  If a dispute arises with regard to requests for the production of files or file types in native format, the parties will meet and confer in good faith to try to resolve it.  If the Parties are unable to reach agreement with regard to requests for additional documents in native-file format, the parties reserve the right to seek relief from the Court.

**9.      CONFIDENTIALITY DESIGNATION**

Responsive documents in TIFF format will be stamped with the appropriate confidentiality designations in accordance with the protective order entered in this matter. Each responsive document produced in native format will have its confidentiality designation identified in the filename of the native file and indicated on its corresponding TIFF placeholder.

**10.      DATABASES AND OTHER STRUCTURED DATA**

The Parties will meet and confer regarding the production format and scope of data contained in databases in order to ensure that any information produced is reasonably usable by the receiving Party and that its production does not impose an undue burden on the producing Party.  To avoid doubt, information will be considered reasonably usable when produced in CSV format, tab-delimited text format, Microsoft Excel format, or Microsoft Access format. To the extent a Party is constrained from producing responsive ESI because of a third-Party license or because software necessary to view the ESI is hardware-dependent, the Parties will meet and confer to reach an agreement on alternative methods to enable the requesting Party to view the ESI.

15

STIPULATION AND ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION CASE NO.
3:21-CV-08812-AMO

**11.     DEDUPLICATION**

Each Party is required to produce only a single copy of a responsive document and each Party may de-duplicate responsive ESI based on hash values (e.g.,  MD5  or SHA-1) across Custodians. For any documents with attachments, hash values must be identical for both the document-plus-attachment (including associated metadata) as well as for any attachment (including associated metadata) standing alone.

**12.     EMAIL THREADING**

The Parties shall produce email attachments sequentially after the parent email.  Where multiple email messages are part of a single chain or "thread," a Party is only required to produce the most inclusive message ("Last-In-Time Email") and need not produce earlier, less inclusive email messages or "thread members" that are fully contained, including attachments and including identical senders and recipients, within the Last-In-Time Email. Only email messages for which the parent document and all attachments are contained in the Last-In-Time Email will be considered less inclusive email messages that need not be produced.

16