**BERNSTEIN LITOWITZ BERGER**
  **& GROSSMANN LLP**
John Rizio-Hamilton (*pro hac vice*)
(johnr@blbglaw.com)
Rebecca E. Boon (*pro hac vice*)
(rebecca.boon@blbglaw.com)
1251 Avenue of the Americas
New York, NY 10020
Tel.: (212) 554-1400
Fax: (212) 554-1444

Jonathan D. Uslaner (Bar No. 256898)
(jonathanu@blbglaw.com)
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Tel.: (310) 819-3481

*Counsel for Lead Plaintiffs*
*Ohio Public Employees Retirement System*
*and PFA Pension Forsikringsaktieselskab*

**DAVIS POLK & WARDWELL LLP**
James P. Rouhandeh (admitted *pro hac vice*)
Charles S. Duggan (admitted *pro hac vice*)
Nikolaus J. Williams (admitted *pro hac vice*)
Paulina Perlin (admitted *pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Tel.: (212) 450-4000
Fax: (212) 701-5800
rouhandeh@davispolk.com
charles.duggan@davispolk.com
nikolaus.williams@davispolk.com
paulina.perlin@davispolk.com

Neal A. Potischman (SBN 254862)
DAVIS POLK & WARDWELL LLP
900 Middlefield Road
Redwood City, CA 94063
Tel.: (650) 752-2000
Fax: (650) 752-2111
neal.potischman@davispolk.com

*Attorneys for Defendants Meta Platforms, Inc.,*
*Mark Zuckerberg, Nick Clegg, Antigone Davis,*
*and Karina Newton*

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE META PLATFORMS, INC. SECURITIES LITIGATION | Lead Case No. 3:21-cv-08812-AMO |
| | Consolidated Case Nos. 3:21-cv-08873-AMO and 3:21-cv-09041-AMO |
| | **DISCOVERY LETTER BRIEF RE: DEFENDANTS' DOCUMENT PRODUCTION** |
| | <u>CLASS ACTION</u> |
| | Judge: Hon. Kandis A. Westmore Courtroom: |

Dear Judge Westmore:

Lead Plaintiffs Ohio Public Employees Retirement System and PFA Pension Forsikringsaktieselskab ("Lead Plaintiffs" or "Plaintiffs"), and Defendants Meta Platforms, Inc. ("Meta"), Mark Zuckerberg, Nick Clegg, Antigone Davis, and Karina Newton ("Defendants") (collectively, the "Parties") submit this letter regarding a discovery dispute, pursuant to Paragraph 14 of the Court's Standing Order. The Parties met and conferred in person on April 17, 2025, and were unable to resolve the disputed issues described below. The Parties hereby attest that they have complied with Section 9 of the Northern District of California's Guidelines for Professional Conduct.

Dated: April 24, 2025                          Respectfully submitted,

                                               **BERNSTEIN LITOWITZ BERGER**
                                                 **& GROSSMANN LLP**

                                               */s/ John Rizio-Hamilton*[1]
                                               John Rizio-Hamilton (*pro hac vice*)
                                               (johnr@blbglaw.com)
                                               Rebecca E. Boon (*pro hac vice*)
                                               (rebecca.boon@blbglaw.com)
                                               Aasiya M. Glover (*pro hac vice*)
                                               (assiya.glover@blbglaw.com)
                                               Mathews R. de Carvalho (*pro hac vice*)
                                               (mathews.decarvalho@blbglaw.com)
                                               Sarah K. Schmidt (*pro hac vice*)
                                               (sarah.schmidt@blbglaw.com)
                                               1251 Avenue of the Americas
                                               New York, NY 10020
                                               Tel: (212) 554-1400
                                               Fax: (212) 554-1444

                                               -and-

                                               Jonathan D. Uslaner (Bar No. 256898)
                                               (jonathanu@blbglaw.com)
                                               2121 Avenue of the Stars, Suite 2575
                                               Los Angeles, CA 90067
                                               Tel: (310) 819-3481

                                               *Counsel for Lead Plaintiffs*
                                               *Ohio Public Employees Retirement System and*
                                               *PFA Pension Forsikringsaktieselskab*

---

[1] In compliance with Civil Local Rule 5-1(i)(3), the filer of this document attests that all signatories have concurred in the filing of this document.

i

**OFFICE OF THE ATTORNEY GENERAL
 OF THE STATE OF OHIO**

Shawn Busken
(Shawn.Busken@OhioAttorneyGeneral.gov)
30 East Broad Street
Columbus, OH 43215
Tel: (800) 282-0515

*Additional Counsel for Lead Plaintiff Ohio Public
Employees Retirement System*

ii

Dated: April 24, 2025

Respectfully submitted,

**DAVIS POLK & WARDWELL LLP**

 */s/ Charles S. Duggan*
James P. Rouhandeh (admitted *pro hac vice*)
Charles S. Duggan (admitted *pro hac vice*)
Nikolaus J. Williams (admitted *pro hac vice*)
Paulina Perlin (admitted *pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Tel.: (212) 450-4000
Fax: (212) 701-5800
rouhandeh@davispolk.com
charles.duggan@davispolk.com
nikolaus.williams@davispolk.com
paulina.perlin@davispolk.com

Neal A. Potischman (SBN 254862)
DAVIS POLK & WARDWELL LLP
900 Middlefield Road
Redwood City, CA 94063
Tel.: (650) 752-2000
Fax: (650) 752-2111
neal.potischman@davispolk.com

*Attorneys for Defendants Meta Platforms,*
*Inc., Mark Zuckerberg, Nick Clegg, Antigone*
*Davis, and Karina Newton*

iii

### A. Defendants' Document Production in Response to Request Nos. 1-3

This disputed discovery issue concerns whether Defendants should be compelled to produce relevant deposition transcripts from other proceedings in response to Request Nos. 1-3. *See* Ex. A (excerpted document requests).

**Plaintiffs' Position**: Defendants must produce deposition transcripts of witnesses who testified in other proceedings on topics relevant to this action, which include (i) the impact of Meta's platforms on young users; and (ii) Meta's exempting of users from its community standards and other policies governing permissible content through X-Check and whitelisting.

Defendants must produce all relevant deposition transcripts in at least the following proceedings, which concern Meta's platforms' harms to young users: (i) the multi-district litigation *In re: Social Media Adolescent Addition/Personal Injury Products Liability Litigation*, MDL No. 3047, Case Nos. 4:23-cv-05448, 4:23-cv-05885 (N.D. Cal.) ("MDL"); (ii) *Tennessee v. Meta Platforms, Inc.*, Case No. 23-1364-IV (Tenn. Ch. Ct.) ("TN AG"); (iii) *New Mexico v. Meta Platforms, Inc.*, Case No. D-101-CV2023-02838 (N.M. 1st J. D. Ct.) ("NM AG"); and (iv) *Social Media Cases*, Case No. JCCP 5255 (Cal. Super. Ct.) ("JCCP").

Plaintiffs seek these transcripts to streamline discovery by (i) introducing relevant party admissions into evidence; and (ii) reducing the burden on non-parties by avoiding cumulative depositions. In the first instance, Plaintiffs have requested that Defendants provide a list of the deponents in the other cases. Such a list would allow Plaintiffs to ascertain who likely testified on relevant subjects based on their roles and titles. Defendants have refused even this modest step.

**Defendants' refusal to produce any deposition transcripts or even a list of deponents in the other actions is not acceptable.** During the parties' final meet and confer, Defendants agreed to produce certain transcripts, namely those for deponents in the MDL who Defendants also agreed to include as document custodians in this case. Plaintiffs explained that this was insufficient.[2] On April 23, 2025, in connection with this joint statement, Defendants changed their position and said that they would produce no transcripts whatsoever, and further would not even produce a list of the depositions taken in the other actions.

Defendants acknowledge that Plaintiffs may have grounds, in specific instances, to seek transcripts of testimony taken in these other proceedings, and state that Defendants would be "prepared to meet and confer" concerning those transcripts. *Infra* at 4. Yet their refusal to even identify the deponents in the MDL makes it impossible for any such discussion to occur, unless Plaintiffs are to guess as to who has been deposed.

Defendants' principal objections to producing all the relevant deposition transcripts are that the MDL is broader than this case, Plaintiffs are not entitled to "clone discovery," and that they do not have an obligation to determine whether the transcripts are relevant to this case. Notably, Defendants have not taken the position that the disputed transcripts are irrelevant.

**All relevant MDL deposition transcripts should be produced because the MDL involves the same defendant and the same factual allegations as this case.** Plaintiffs may seek "clone discovery" of relevant information from other proceedings when the case involves "the same defendant and the same factual allegations." Order at 2, *Wilbur P.G. v. United States*, No. 4:21-cv-04457(N.D. Cal. Sept. 28, 2023), ECF No. 106 (Westmore, J.); *see In re Uber Techs.,*

---

[2] Defendants' proposal would <u>exclude</u> transcripts of witnesses who gave relevant testimony but who (i) are a third party (and thus cannot be a custodian in our case), (ii) Meta has not agreed to make a custodian in our case, or (iii) testified in a relevant proceeding that is not the MDL (e.g., the TN AG action). For example, Dr. Jonathan Haidt, a social psychologist cited in Plaintiffs' Complaint, has or will testify in the MDL about his conversations with Defendant Zuckerberg about Meta's platforms' harm to young users; yet his transcript would not be produced.

*Inc., Passenger Sexual Assault Litig.*, 2024 WL 4950060, at *2-3 (N.D. Cal. Dec. 2, 2024) (ordering production of transcripts of witnesses from related action whose testimony concerned issues relevant to instant litigation); *Hall v. Marriott Int'l, Inc.*, 2021 WL 1906464, at *7 (S.D. Cal. May 12, 2021) (ordering production of deposition transcripts, interrogatory responses, responses to requests for admission, and responses to requests for documents defendants produced in a related action with a "substantially similar and, in parts, completely identical" complaint).

Here, the MDL involves the same defendant, Meta Platforms, Inc., and the same—and in some cases identical—factual allegations as those alleged here. In denying Meta's motion to dismiss the state attorneys general's ("AGs") complaint in the MDL, Judge Gonzalez Rogers highlighted numerous allegations matching Plaintiffs' allegations here. For example:

- <u>Plaintiffs allege</u> that Meta's own research "revealed that Meta's platforms had negative impacts on teens, and in particular teen girls," ¶210; the <u>AGs alleged</u> that "Meta is aware of the harms its social comparison features cause its young users," including via conclusions from its own researchers. Order at 7, *In re: Social Media Adolescent Addition/Personal Injury Products Liability Litigation* (N.D. Cal. Oct. 15, 2024), ECF No. 1214 ("MDL Order").
- <u>Plaintiffs allege</u> that Meta's research concluded that Instagram "can send teens spiraling toward eating disorders," ¶222; the <u>AGs alleged</u> that Meta knew that certain platform features "promote and encourage eating disorders." MDL Order at 8.
- <u>Plaintiffs allege</u> that "[i]nstead of 'protect[ing]' the safety of young users, Meta concealed and misrepresented its internal research from the public," ¶204; the <u>AGs alleged</u> that "Meta affirmatively misrepresented to the public the safety of its platforms while possessing knowledge of harms to young users." MDL Order at 8.
- <u>Plaintiffs allege</u> that "Meta invited Jonathan Haidt [] to Instagram's headquarters" to discuss Instagram's "efforts to combat bullying and reduce social pressure on the platform," ¶230; the <u>AGs alleged</u> that "[o]utside sources notified Meta of the harms to young users," including Jonathan Haidt. MDL Order at 9.

Further, the claims at issue in the MDL and this case overlap. The AGs allege that Meta misrepresented the harmful and addictive nature of its platforms and prioritized profits over young users' health and safety. MDL Order at 13-14. The same allegation is at issue here. *See* ¶¶26-30.

**Relevant deposition transcripts from the remaining actions should be produced for the same reasons.** The remaining actions also involve defendant Meta and the same factual allegations. The TN AG alleged that Meta "has long known that Instagram was on-balance harmful for users, and especially ruinous for young women," but "conceal[ed] the significant risks Instagram presented to its users, particularly Young Users." TN AG Compl. ¶14. The NM AG alleged that "Meta's business model of profit over child safety and business practices of misrepresenting the amount of dangerous material and conduct to which its platforms expose children violates New Mexico law." NM AG Compl. ¶¶1, 6. The JCCP court sustained plaintiffs' fraudulent concealment claim that they "suffered various types of harm as a result of the use of the platforms," and "Meta knew of its platforms' defects, but [] failed to share this information" externally. JCCP Opinion at 2, 83. This case makes the same or closely similar core allegations.

**<u>Plaintiffs' Final Substantive Position and Proposed Compromise:</u>** Defendants should produce deposition transcripts of individuals with testimony relevant to this action. Defendants also must produce a list of deponents in related proceedings, so that the parties may confer on the production of relevant transcripts, and either agree on the scope or bring any specific disputes to the Court.

**Defendants' Position:** Plaintiffs' request for all "relevant" deposition transcripts from other proceedings is an improper form of "cloned" discovery. Plaintiffs' request is also premature.

Cloned discovery goes against "[t]he traditional route for obtaining document discovery," namely, "serv[ing] subject-matter-specific requests for production, which 'must describe with reasonable particularity each item or category of items to be inspected.'" *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 2018 U.S. Dist. LEXIS 69066, at *3 (N.D. Cal. Apr. 24, 2018) (quoting Fed. R. Civ. P. 34(a)). As a result, courts routinely reject it. *See, e.g.*, *Tristan v. Bank of Am., N.A.*, 2024 WL 5412486, at *3, *4 (C.D. Cal. June 10, 2024) ("Plaintiffs simply have not shown the 'significant factual and legal overlap' necessary to find that RFP No. 30 seeks relevant information that is proportional to the needs of this case and described with reasonable particularity."); *Pac. Wine Distributors, Inc. v. Vitol Inc.*, 2022 WL 1489474, at *1 (N.D. Cal. May 11, 2022) (rejecting request for party's discovery production, including deposition transcripts, in another litigation); *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2017 WL 4680242, at *1 (N.D. Cal. Oct. 18, 2017) (similar).

Plaintiffs claim that cloned discovery is warranted here because the MDL and this action "involve[] the same defendant and the same factual allegations," but that is not the standard. Rather, Plaintiffs must demonstrate "significant factual and legal overlap." *Tristan*, 2024 WL 5412486, at *4. Plaintiffs have not demonstrated any *legal* overlap between the MDL and this suit. Plaintiffs claim that both actions involve similar alleged misrepresentations, but the legal claims are entirely different: This action involves alleged violations of federal securities law; the alleged misrepresentations in the MDL relate to violations of state consumer protection laws. In *Garavanian v. Jet Blue Airways Corporation*, this Court held that cloned discovery was not warranted where a lawsuit and a government investigation both involved potential violations of "Section 7 of the Clayton Act" because the investigation was broader and "not necessarily *limited* to Section 7." *See* Order at 3, No. 22-cv-06841-JSW (Mar. 10, 2023) ECF No. 32 (Westmore, J.). Here, the legal claims in the MDL are both broader and arise out of a wholly different body of law.

Nor is there significant factual overlap between the MDL and this action. While certain allegations about Meta's internal analyses regarding the experience of teen users of Instagram are relevant to both actions, the MDL's factual allegations extend far broader. Here, Plaintiffs assert that Meta investors were harmed when Meta's stock price declined in September and October 2021 after it was allegedly disclosed that Meta made fifteen allegedly false statements over a five-month period in 2021. In contrast, the MDL complaints are brought by users of social media, school districts, and certain state attorneys general against various social media companies, including Meta, and assert that over the course of more than a decade, the defendants operated their services in a way that endangered young users' physical and mental safety and well-being.[3]

Plaintiffs cannot salvage their request by claiming only to seek "relevant" deposition transcripts. Plaintiffs supply no basis to conclude which deposition transcripts are "relevant"—a legal issue the parties are actively contesting. In any event, "[a] request for any and all relevant documents is inappropriate, as it fails to describe with reasonable particularity the documents sought." *Williams v. Adams*, 2009 WL 1220311, at *10 (E.D. Cal. May 4, 2009).

Plaintiffs argue that producing the transcripts will "streamline discovery," but that is not a valid basis for discovery, which must be relevant and proportional to the needs of the case. Fed.

---

[3] Plaintiffs' reliance on *Wilbur* is inapposite; the Defendant in that case "repeatedly contended" that the two actions had "significant factual *and legal* overlap" and "attempted to limit its document productions and discovery obligations based on what was produced" in the other action. Order at 2-3, *Wilbur P.G. v. United States*, No. 4:21-cv-04457 (N.D. Cal. Sept. 28, 2023) ECF No. 106 (Westmore, J.) (emphasis added). Defendants have repeatedly maintained just the opposite here.

R. Civ. P. 26(b)(1).  Plaintiffs claim their request would allow them to "introduce[e] relevant party admissions into evidence," but ignore that many of the deposition transcripts sought are from third parties or former employees and would not constitute party admissions.  *Weil v. Citizens Telecom Servs. Co., LLC*, 922 F.3d 993, 1000 (9th Cir. 2019) (prior admissions by employee admissible against employer only if "made before that relationship was terminated").  Whether the discovery sought would "reduc[e] the burden" on an unknown number of non-parties is entirely speculative.

For similar reasons, Defendants should not be required to produce a list of deponents from any other proceeding.  Such "discovery on discovery" is disfavored, absent a showing that there is a specific deficiency in a party's production, which Plaintiffs have not attempted to argue.  *See, e.g.*, *Uschold v. Carriage Servs., Inc.*, 2019 WL 8298261, at *4 (N.D. Cal. Jan. 22, 2019).  Instead, Plaintiffs must identify the specific information they believe is relevant to this action.  As this Court has recognized, the absence of public information about an investigation or lawsuit is no excuse.  *See Garavanian*, No. 4-22-cv-06841-JSW at 4-5 (denying plaintiffs' request for all documents produced in a government investigation "[g]iven the lack of information about the scope of the government's investigation, which may be broader than the instant case ").

Although Plaintiffs are not entitled to the discovery they request, this Court need not decide the issue now because it is premature.  Depositions of witnesses in this case will not occur for many months.  There is ample time to evaluate, based on document and written discovery, whether producing transcripts of testimony taken in other proceedings is warranted in this matter.  After reviewing the discovery that Meta will otherwise provide in this case, Defendants are prepared to meet and confer on the potential relevance of specific testimony previously given by specific individuals based on such a showing, at the appropriate time.

**Defendants' final position is that Plaintiffs are not entitled to all "relevant" deposition transcripts or a list of deponents, and that the production of specific testimony is premature.**

### B.  Schedule for Defendants' Rolling Productions and Search Term Proposal

This disputed issue is whether Defendants should provide search terms by April 28, 2025 and make rolling productions every two weeks beginning on April 28.

**Plaintiffs' Position:** In the nearly 4 months since Plaintiffs served document requests, Defendants have made <u>one production</u> of 175 documents, which included 174 PDFs of <u>publicly-available website pages</u>. Defendants have not proposed a single search term, or engaged with the search terms Plaintiffs sent <u>nearly a month ago</u>. This contravenes Section 5(a)(i) of the ESI Order, which requires the producing Party to provide their search terms by "no later than 28 days" after their responses and objections (served on February 12), except that the parties must "agree to a date for the producing Party to provide search terms applicable to Plaintiffs' First Set of RFPs." ECF No. 181 at 2. Defendants could have produced many readily-available documents already, including deposition transcripts and documents that Meta has already produced in the MDL.

Plaintiffs' proposed production schedule seeks rolling productions of documents every two weeks beginning on April 28, and for Defendants to provide their search terms by April 28. Such schedules are regularly set by courts in this District. *See Nat'l Urb. League v. Ross*, 2020 WL 7488068, at *2-3 (N.D. Cal. Dec. 13, 2020) (ordering schedule; defendants had "known for nearly five months they needed to produce documents," including in response to requests with "substantial[] overlap" with requests from related investigations); *Apple Inc. v. Samsung Elects. Co., Ltd.*, 2011 WL 11552883, at *1-3 (N.D. Cal. Dec. 22, 2011) (compelling dates certain for party to search for and complete its document production).

Defendants commit only to monthly productions, and have not even provided any search

terms or responded to ours. Yet Defendants condition their proposal on "reasonable progress being made on search term and custodian negotiations." *Infra* at 5. Particularly given Defendants' delay to-date, this proposal is not acceptable and jeopardizes the case schedule, for which the lynchpin is the September 2025 deadline for Defendants to substantially complete document production.

**Plaintiffs' Final Position and Proposed Compromise:** Defendants must comply with Plaintiffs' proposed production schedule and provide their search terms on or before April 28, 2025.

**Defendants' Position:** Plaintiffs attempt to re-litigate the discovery schedule imposed by the District Court in its December 20, 2024 scheduling order. ECF No. 153. At the Initial Case Management Conference held before Judge Martínez-Olguín on December 19, 2024, the parties proffered competing case schedules, including competing deadlines for document discovery. Defendants explained that they "anticipate[d] that the process of responding to [Plaintiffs'] document requests; meeting and conferring over Defendants' responses and objections; and resolving any remaining disputes will take several months" and that "it will also take several months to collect, review, and produce responsive documents." *Id.* at 9. The District Court sided with Defendants and ordered a September 23, 2025 deadline for completing document discovery. ECF No. 153.

Nothing has changed that would warrant entering a supplemental scheduling order. The parties have, as expected, spent several months meeting and conferring over the scope of Plaintiffs' First Set of RFPs, the relevant time period, and the appropriate custodians. They have made substantial progress on certain of these issues, but remain far apart on others, most notably the number of custodians, which significantly implicates the appropriate search terms to be used.

Defendants have begun producing non-custodial documents. They made an initial production on April 10 and anticipate making a second production of roughly 1,000 documents by approximately April 28. Defendants have also begun reviewing a limited set of custodial records, despite not yet having agreed with Plaintiffs on search terms. As a compromise to address Plaintiffs' concerns about the production schedule, Defendants are also committing to making monthly rolling productions following their anticipated April 28 production, subject to reasonable progress in negotiating search terms and custodians. Defendants anticipate that a significant volume of documents will be produced in the coming months, well in advance of the September 23 substantial completion deadline, which Defendants believe they will meet.

Bi-weekly productions are neither necessary nor reasonable. Plaintiffs fail to explain why monthly productions would "jeopardize" the case schedule. Nor do Plaintiffs justify the additional burden and inefficiencies of bi-weekly productions. Plaintiffs argue that Defendants have caused delays because they have not produced certain "readily-available" documents, such as deposition transcripts from other proceedings. But Defendants have opposed that request for the reasons explained above. Nor is there any easy way to identify documents produced in the MDL that are relevant to this action. Defendants have not missed any deadlines in this case and do not expect to.

Defendants should not be compelled to provide search terms by April 28 because critical issues remain regarding the number of custodians' records to be searched, which will affect the volume of—and burden of reviewing—documents hitting on search terms. The ESI Order does not require Defendants to have provided search terms by now. It states that the "the Parties will agree to a date for the producing Party to provide search terms applicable to Plaintiffs' First Set of RFPs," ECF No. 181 at 2, which they have not done, given ongoing negotiations over custodians.

**Defendants' final position and compromise is to commit to monthly productions beginning on approximately April 28.**