**BERNSTEIN LITOWITZ BERGER**
  **& GROSSMANN LLP**
John Rizio-Hamilton (*pro hac vice*)
(johnr@blbglaw.com)
Rebecca E. Boon (*pro hac vice*)
(rebecca.boon@blbglaw.com)
1251 Avenue of the Americas
New York, NY 10020
Tel.: (212) 554-1400
Fax: (212) 554-1444

Jonathan D. Uslaner (Bar No. 256898)
(jonathanu@blbglaw.com)
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Tel.: (310) 819-3481

*Counsel for Lead Plaintiffs*
*Ohio Public Employees Retirement System*
*and PFA Pension Forsikringsaktieselskab*

**DAVIS POLK & WARDWELL LLP**
James P. Rouhandeh (admitted *pro hac vice*)
Charles S. Duggan (admitted *pro hac vice*)
Nikolaus J. Williams (admitted *pro hac vice*)
Paulina Perlin (admitted *pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Tel.: (212) 450-4000
Fax: (212) 701-5800
rouhandeh@davispolk.com
charles.duggan@davispolk.com
nikolaus.williams@davispolk.com
paulina.perlin@davispolk.com

Neal A. Potischman (SBN 254862)
DAVIS POLK & WARDWELL LLP
900 Middlefield Road
Redwood City, CA 94063
Tel.: (650) 752-2000
Fax: (650) 752-2111
neal.potischman@davispolk.com

*Attorneys for Defendants Meta Platforms, Inc.,*
*Mark Zuckerberg, Nick Clegg, Antigone Davis,*
*and Karina Newton*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE META PLATFORMS, INC. SECURITIES LITIGATION | Lead Case No. 3:21-cv-08812-AMO<br><br>Consolidated Case Nos. 3:21-cv-08873-AMO and 3:21-cv-09041-AMO<br><br>**DISCOVERY LETTER BRIEF RE: DEFENDANTS' RESPONSE TO INTERROGATORY NO. 3**<br><br><u>CLASS ACTION</u><br><br>Judge: Hon. Kandis A. Westmore |

Dear Judge Westmore:

Lead Plaintiffs Ohio Public Employees Retirement System and PFA Pension Forsikringsaktieselskab ("Lead Plaintiffs" or "Plaintiffs"), and Defendants Meta Platforms, Inc. ("Meta"), Mark Zuckerberg, Nick Clegg, Antigone Davis, and Karina Newton ("Defendants") (collectively, the "Parties") submit this letter regarding a discovery dispute, pursuant to Paragraph 14 of the Court's Standing Order. The Parties met and conferred in person on April 17, 2025, and were unable to resolve the disputed issue described below. The Parties hereby attest that they have complied with Section 9 of the Northern District of California's Guidelines for Professional Conduct.

Dated: April 24, 2025

Respectfully submitted,

**BERNSTEIN LITOWITZ BERGER**
  **& GROSSMANN LLP**

*/s/ John Rizio-Hamilton*[1]_____
John Rizio-Hamilton (*pro hac vice*)
(johnr@blbglaw.com)
Rebecca E. Boon (*pro hac vice*)
(rebecca.boon@blbglaw.com)
Aasiya F. Mirza Glover (*pro hac vice*)
(assiya.glover@blbglaw.com)
Mathews R. de Carvalho (*pro hac vice*)
(mathews.decarvalho@blbglaw.com)
Sarah K. Schmidt (*pro hac vice*)
(sarah.schmidt@blbglaw.com)
1251 Avenue of the Americas
New York, NY 10020
Tel: (212) 554-1400
Fax: (212) 554-1444

-and-

Jonathan D. Uslaner (Bar No. 256898)
(jonathanu@blbglaw.com)
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Tel: (310) 819-3481

*Counsel for Lead Plaintiffs*
*Ohio Public Employees Retirement System and*
*PFA Pension Forsikringsaktieselskab*

---

[1] In compliance with Civil Local Rule 5-1(i)(3), the filer of this document attests that all signatories have concurred in the filing of this document.

i

**OFFICE OF THE ATTORNEY GENERAL**
**OF THE STATE OF OHIO**

Shawn Busken
(Shawn.Busken@OhioAttorneyGeneral.gov)
30 East Broad Street
Columbus, OH 43215
Tel: (800) 282-0515

*Additional Counsel for Lead Plaintiff Ohio Public*
*Employees Retirement System*

ii

Dated:    April 24, 2025

Respectfully submitted,

**DAVIS POLK & WARDWELL LLP**

*/s/Charles S. Duggan*

James P. Rouhandeh (admitted *pro hac vice*)
Charles S. Duggan (admitted *pro hac vice*)
Nikolaus J. Williams (admitted *pro hac vice*)
Paulina Perlin (admitted *pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Tel.: (212) 450-4000
Fax: (212) 701-5800
rouhandeh@davispolk.com
charles.duggan@davispolk.com
nikolaus.williams@davispolk.com
paulina.perlin@davispolk.com

Neal A. Potischman (SBN 254862)
DAVIS POLK & WARDWELL LLP
900 Middlefield Road
Redwood City, CA 94063
Tel.: (650) 752-2000
Fax: (650) 752-2111
neal.potischman@davispolk.com

*Attorneys for Defendants Meta Platforms, Inc.,
Mark Zuckerberg, Nick Clegg, Antigone Davis,
and Karina Newton*

iii

### A. Request for Defendants' Response to Interrogatory No. 3

The disputed issue is whether Defendants should be compelled to answer Plaintiffs' Interrogatory No. 3, which states in relevant part: "Identify any investigation or potential investigation or proceeding by any Governmental Entity, from the beginning of the Relevant Time Period through the present, Concerning (i) the use of Meta's platforms by Young Users, and/or the impact of Meta's platforms on Young Users; or (ii) X-Check and/or Whitelisting." *See* Ex. A.

<u>**Plaintiffs' Position:**</u>

This case is about false and misleading statements and omissions made by the Meta Defendants about two issues: (i) the impact of Meta's platforms on young users; and (ii) Meta's exempting of certain users from its community standards and other policies governing permissible content through X-Check and whitelisting. Defendants' alleged fraud was revealed through a series of corrective disclosures in September and October 2021, beginning with the *Wall Street Journal*'s "Facebook Files" series. Publicly-available information indicates that multiple government bodies have conducted investigations into the two issues in this case, but Plaintiffs do not have a complete list of those investigations or proceedings.

Plaintiffs request that Defendants identify these investigations and proceedings in response to Interrogatory No. 3. This will make discovery in this case more efficient and streamlined because Plaintiffs will be able to issue narrowly tailored requests directed toward information provided in those investigations, which is also relevant here, as well as obtain party admissions on relevant issues.

Defendants refuse to identify the government investigations and proceedings on two grounds. <u>First</u>, Defendants contend that Plaintiffs are not entitled to clone discovery; and <u>second</u>, Defendants argue they should not be required to assess whether an investigation concerns issues relevant to this action. On both counts, Defendants are wrong.

**First, clone discovery is appropriate where, as here, the same defendants and the same factual allegations are at issue.** As this Court has explained, "The Ninth Circuit 'strongly favors access to discovery materials to meet the needs of parties engaged in collateral litigation.'" Order at 2, *Wilbur P.G. v. United States*, No. 4:21-cv-04457 (N.D. Cal. Sept. 28, 2023), ECF 106 (Westmore, J.) (granting request to compel production of interrogatory responses and requests for admission from related lawsuits); *see also Schneider v. Chipotle Mexican Grill, Inc.*, 2017 WL 1101799, at *2-4 (N.D. Cal. Mar. 24, 2017) (Westmore, J.) (ordering production of documents produced by defendant in prior lawsuit). Indeed, "[c]ourts in this district generally permit 'clone discovery'—discovery of documents produced in collateral litigation—when the case involves "the *same defendant and the same factual allegations*." Order at 1, *Wilbur P.G.* (quoting *Pac. Wine Distribs., Inc. v. Vitol Inc.*, 2022 WL 1489474, at *1 (N.D. Cal. May 11, 2022)); *see also Garner v. Amazon.com, Inc.*, 2023 WL 6038011, at *2 (W.D. Wash. Sept. 15, 2023) (ordering production of documents from an FTC investigation, over defendants' relevance objection, because the fact "[t]hat a government agency has inquired about" the "conduct that is clearly at issue here, falls within the permissible scope of discovery").

Here, publicly-available information makes clear that there are multiple investigations and proceedings involving the same defendants in this case and the same factual allegations concerning (a) the impact of Meta's platforms on young users; and/or (b) X-Check and whitelisting. For example, dozens of state attorneys general investigated and then brought legal proceedings against the same defendant in this action, Meta Platforms, Inc., on one of the key issues in this action: that "despite overwhelming internal research, independent expert analysis, and publicly available data

that its Social Media Platforms harm young users, Meta still refuses to abandon its use of known harmful features—and has instead redoubled its efforts to misrepresent, conceal, and downplay the impact of those features on young users' mental and physical health."[2]

Public reporting also indicates that U.S. Senators launched an investigation into another whistleblower's revelations about Meta's platforms' harm to young users and the whistleblower's complaints to Defendant Zuckerberg during the Class Period at issue in this case.[3]

Likewise, other government entities, including, for instance, the U.K. Parliament, have investigated Meta's X-Check program.[4] Among other things, the U.K. Parliament collected evidence about Meta's content moderation, and specifically asked whistleblower Frances Haugen about Meta's whitelisting practices.[5]

Contrary to Defendants' arguments, Plaintiffs only seek the identification of relevant investigations, and investigations into Meta's platforms' harmful effects on young users and into X-Check, whitelisting, and newsworthiness are relevant to this case. Defendants contend that investigations can only be relevant if they concern Meta's "internal research," but the sustained statements themselves refer to "external research," "third-party experts," drawing from "multiple industry experts," and whether Instagram is "harmful" or "helpful"; they are not limited to "internal research." Further, the literal words of the misstatements "do not bound the limits of relevant or potentially relevant information." *In re Toyota Motor Corp. Sec. Litig.*, 2012 WL 3791716, at *8-9 (C.D. Cal. Mar. 12, 2012) (allowing discovery of information relevant to scienter, falsity, materiality, and loss causation as well as sustained statements). Plaintiffs may seek discovery into the *subject* of sustained statements (i.e., harm to young users), not just the facts about those statements that Plaintiffs could identify at the pleading stage. *See id.* at *7 ("[T]he requirements of pleading, or proof, do not bound the scope of discovery."); *Microsoft Corp. v. Buy Cheap Software, Inc.*, 2016 WL 7444627, at *2 (C.D. Cal. May 26, 2016) (rejecting defendant's attempt to limit discovery to just the alleged facts in the complaint); *In re Remec, Inc. Sec. Litig.*, 2008 WL 11338404, at *4 (S.D. Cal. Oct. 24, 2008) (ordering production of documents "relevant to Plaintiffs' claims" without "specific allegations relating to" the requested documents).

**Second, consistent with their discovery obligations, Defendants must conduct a reasonable investigation to determine which investigations are relevant to this case.** Defendants are generally required to conduct a reasonable investigation to identify responsive

---

[2] *See* Complaint at 1, *People of the State of California v. Meta Platforms, Inc.*, No. 4:23-cv-05448 ("MDL") (N.D. Cal. Oct. 24, 2023), ECF No. 1. *See also* AG Slatery Leads Nationwide Investigation into Instagram's Impact on Young People, *available at* https://shorturl.at/0X4E4 ("Attorney General Herbert H. Slatery III is leading a nationwide investigation into Meta Platforms, Inc. [] for providing and promoting its social media platform–Instagram–to children and young adults despite knowing that such use is associated with mental health harms."). United States Senators Blumenthal and Blackburn announced a similar investigation. *See* Blumenthal & Blackburn Announce Probe Into Facebook Coverup of its Platforms' Negative Impact on Teens & Children, dated September 14, 2021, *available at* https://shorturl.at/NGqyF.

[3] *See* Bipartisan Senators Demand Documents from Mark Zuckerberg After Newly Unsealed Court Filing Alleges Meta Hid Evidence of Harms to Kids from Congress & Public, Supporting Whistleblower Testimony, dated November 15, 2023, *available at* https://shorturl.at/8kL2L.

[4] *See* Houses of Parliament, Draft Online Safety Bill, Corrected oral evidence, dated October 25, 2021, *available at* https://shorturl.at/IIQZY; Frances Haugen to MEPs: EU digital rules can be a game changer for the world, dated November 8, 2021, *available at* https://shorturl.at/tuCA1; Interview of: Frances Haugen, Select Committee to Investigate the January 6th Attack on the U.S. Capitol, U.S. House of Representatives, dated November 22, 2021, *available at* https://shorturl.at/lRyEz.

[5] *Id.*

information in discovery, and courts have applied this requirement to interrogatories and the identification of investigations in similar circumstances. *See, e.g.*, *In re State St. Bank & Trust Co. Fixed Income Funds Inv. Litig.*, 2009 WL 805812, at \*1-2 (S.D.N.Y. Mar. 23, 2009) (ordering "State Street to serve updated answers" to "Plaintiffs' interrogatories that asked State Street to identify any depositions of current or former employees of State Street taken by any regulator relating to any investigation of the fixed-income funds at issue in this litigation."); *see also Elan Microlectronics Corp. v. Apple, Inc.*, 2011 WL 3443923, at \*3 (N.D. Cal. Aug. 8, 2011) (ordering party to supplement interrogatories with responsive information "no matter how incomplete, informal or anecdotal," revealed after a "reasonable investigation").

Accordingly, Defendants must conduct a reasonable investigation to determine the existence of responsive information and answer the Interrogatory.

**Plaintiffs' Final Substantive Position and Proposed Compromise**

Plaintiffs respectfully request that Defendants be compelled to answer Interrogatory No. 3 by identifying the responsive investigations and proceedings. Plaintiffs have compromised by requiring identifying information only, and not the additional detail set forth in the subparts of Interrogatory No. 3.

**Defendants' Position:**

Interrogatory No. 3 seeks information that is irrelevant to Plaintiffs' claims and would impose unjustifiable burdens disproportionate to the needs of the case. Its directions are also vague and unworkable. Plaintiffs' "compromise" position is no compromise at all, given that Plaintiffs seek the identities of investigations only to obtain further discovery into them.

In its September 2024 order, the District Court significantly narrowed the claims at issue in this case, permitting Plaintiffs to proceed with claims in respect of 15 alleged statements. ECF No. 143 at 13, 16, 18, 22, 24. Two of those statements concern Meta's practices regarding its "X-Check" and "whitelisting" policies and "newsworthiness" exception—policies relating to Meta's practices for regulating the content allowed on its platforms. The remaining statements, according to the Court, were to the effect that "1) there is little research on Instagram's impact on children; 2) Instagram's impact on the mental health of teens is bi-directional; 3) social media is not inherently bad for teens and children; and 4) Meta is committed to protecting child safety." *Id.* at 18. The Court held that Plaintiffs had adequately alleged that these statements were misleading in view of purported "internal research . . . showing the harm that Instagram causes to teenagers." *Id.* at 21. The alleged corrective disclosures were news articles published in the fall of 2021 on the scope of X-Check and whitelisting and regarding Meta's internal research related to teen mental health.

Plaintiffs' Interrogatory No. 3 is improper, because the existence of "any investigation" or "potential investigation" is not relevant to what Meta's practices were with respect to "X-Check," "whitelisting" and its "newsworthiness" exception or what its "internal research" showed during the class period about the alleged harm of Instagram. None of the statements are about any investigations. Nor are the alleged corrective disclosures related to any government investigations.

Plaintiffs argue that Defendants' response to the Interrogatory would allow them to issue "narrowly tailored requests" directed toward information provided in those investigations and obtain unspecified "party admissions." But even assuming Plaintiffs could obtain governmental investigative material (which is doubtful[6]), Plaintiffs can appropriately discover relevant

---

[6] *See, e.g.*, *Breiterman v. United States Capitol Police*, 323 F.R.D. 36, 53 (D.D.C. 2017) (quashing vast majority of a subpoena directed at government entity because most of the records sought were shielded by the deliberative process

3

information directly from Defendants.  Fishing through third-party efforts is not within the proper scope of discovery.  Plaintiffs cannot leverage discovery conducted by others pursuing different objectives as a roadmap for their own discovery requests.  Courts have rejected similar discovery requests.  *See, e.g.*, *Tristan v. Bank of Am., N.A.*, 2024 WL 5412486, at *4 (C.D. Cal. June 10, 2024) ("[G]eneral assertions that there are government investigations into [an area related to plaintiffs' claim], implying possible similarities between those investigations and this case, is insufficient to demonstrate relevance."); *Nichols v. Fed. Deposit Ins. Corp.*, 2017 WL 434426, at *8 (W.D. Wash. Feb. 1, 2017) (denying interrogatory seeking identification of FDIC investigations because "the wide scope of information sought . . . is not proportional to the needs of this case").

Plaintiffs' claim that the Interrogatory would make discovery more "efficient and streamlined" is backwards.  Permitting discovery into various other investigations would *increase* the scope of discovery far beyond the discrete statements that survived the motion to dismiss and would invite endless amounts of additional discovery on discovery.  In any event, efficiency is not the standard.  Relevancy and proportionality are.  Fed. R. Civ. P. 26(b).

Nor can Interrogatory No. 3 be used to obtain documents, if any, that Defendants produced to government entities.  Cloned discovery from government investigations "is irrelevant and immaterial unless *the fact that* particular documents were produced or received by a party is relevant to the subject matter of the subject case."  *King Cnty. v. Merrill Lynch & Co.*, 2011 WL 3438491, at *3 (W.D. Wash. Aug. 5, 2011) (emphasis added) (internal quotation marks omitted).  Plaintiffs make no such claim.  Nor would the request be valid, even if documents produced in an investigation were relevant to Plaintiffs' claims here.  "It may very well be that each and every document produced in the government investigations is relevant to Plaintiff's claims.  However, Plaintiff must make proper discovery requests, identifying the specific categories of documents sought, in order to obtain them—and each category must be relevant to its claims and defenses."  *Id.*  Plaintiffs have served ample document requests on Defendants in this litigation.  They have not shown the relevance of other documents, produced in response to a government investigation, outside of the scope of Plaintiffs' propounded discovery requests.  *See, e.g.*, *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 2018 U.S. Dist. LEXIS 69066, at *3.

As this Court has recognized, cloned discovery is *only* warranted when the action from which the discovery is sought has "significant factual and legal overlap" with the instant matter.  *Schneider v. Chipotle Mexican Grill, Inc.*, 2017 WL 1101799, at *4 (N.D. Cal. Mar. 24, 2017) (Westmore, J.).  As Defendants explain in the parties' joint letter regarding disputes over Plaintiffs' First Set of RFPs ("Joint RFP Letter"), there are significant differences between the claims and facts in this lawsuit and in the MDL and other investigations.[7]

This Court's order in *Garavanian v. Jet Blue*, No. 4-22-cv-06841-JSW (Mar. 10, 2023), ECF No. 32 (Westmore, J.), is instructive.  Plaintiffs in an antitrust violation suit sought all documents that defendants produced to federal regulators as part of a pre-merger review, but this Court denied the request because it was "not apparent" that the government investigation and the litigation were substantially identical where "Plaintiffs challenge the acquisition under Section 7 of the Clayton Act, while the government is reviewing the acquisition for violation of antitrust laws,

---

privilege); *Walker v. NCNB Nat. Bank of Fla.*, 810 F. Supp. 11, 14 (D.D.C. 1993) (denying subpoena directed towards EEOC official because the federal agency "has a strong interest in keeping its investigations confidential").

[7] There are also significant differences from the state AG investigations, which, as the documents Plaintiffs cite demonstrate, "examin[ed] whether [Meta] violated *state consumer protection laws*"—not federal securities laws. *See* Tenn. State Attorney General Press Release, *available at* https://shorturl.at/0X4E4.

including but not necessarily *limited* to Section 7 of the Clayton Act." *Id.* at 4. This Court concluded that, "[g]iven the lack of information about the scope of the government's investigation, which may be broader than the instant case, the Court will not require Defendants to produce all documents produced" to the federal regulators. *Id.* at 5.[8] The same is true here.

In addition to seeking irrelevant information, Interrogatory No. 3 is not proportionate to the needs of the case, given the prejudice of disclosing nonpublic investigations or nonpublic details of disclosed investigations. Government investigations are often sprawling in scope and end with no finding of wrongdoing. Companies, without the protections of the Federal Rules of Civil Procedure, may be compelled to produce far more discovery than warranted in civil litigation. *See, e.g.*, *Cap. Ventures Int'l v. J.P. Morgan Mortg. Acquisition Corp.*, 2014 WL 1431124, at *2 (D. Mass. Apr. 14, 2014) (denying discovery request because, inter alia, "[g]overnment investigations also may be much broader than the limited subject matter of a lawsuit"); *Doe v. U.S. S.E.C.*, 2011 WL 4593181, at *3 (N.D. Cal. Oct. 4, 2011) ("Congress recognizes the need for government agencies to investigate wrongdoing and accordingly has granted these agencies investigatory powers that are not available to civil parties."). Courts have also recognized that disclosing non-public details of government investigations may go against the interests of the government investigators themselves by "discouraging cooperation with the government [and] revealing the identities of those whose cooperation is not public." *State Comp. Ins. Fund v. Drobot*, 2016 WL 3546583, at *6 (C.D. Cal. Feb. 29, 2016). Plaintiffs have made no showing as to why their interest in the information sought outweighs Meta's valid concerns with confidentiality and the interests of any government investigators who have not chosen to disclose their inquiries.

Interrogatory No. 3 is also objectionably vague and unworkable and burdens Defendants with determining which investigations are or are not somehow relevant to Plaintiffs' claims. How are Defendants to identify "potential" investigations? Even as to "actual" investigations, Plaintiffs cannot reasonably impose on Defendants the burden of making legal assessments as to the purposes, focus, and scope of third-party inquiries, especially when government investigators often refuse to provide details about the nature or scope of their investigations in order to, among other reasons, protect the investigations' integrity.[9] Even if inquiries as to these topics could be determined, their relevance to the claims here—that Defendants *misled investors* about certain subjects—would be an entirely additional subject of inquiry.

**In light of the foregoing reasons, Defendants' final position is that they should not be required to provide information responsive to Interrogatory No. 3.**

---

[8] As Defendants explain in the Joint RFP Letter, Plaintiffs' reliance on *Wilbur P.G. v. United States*, No. 4:21-cv-04457 (N.D. Cal. Sept. 28, 2023), ECF 106 (Westmore, J.), is misplaced. Plaintiffs' other cases in support of cloned discovery are also readily distinguishable. *See Schneider*, 2017 WL 1101799, at *4 (finding "significant factual and legal overlap" between the two actions"); *Garner v. Amazon.com, Inc.*, 2023 WL 6038011, at *2 (W.D. Wash. Sept. 15, 2023) (seeking discovery from a specific and publicly identified government investigation).

[9] Plaintiffs' cases do not hold otherwise. *In re State St. Bank & Trust Co. Fixed Income Funds Inv. Litig.*, 2009 WL 805812, at *2 (S.D.N.Y. Mar. 23, 2009), involved the identification of individuals who had been deposed—not government investigations. *Elan Microelectronics Corp. v. Apple, Inc.*, 2011 WL 3443923, (N.D. Cal. Aug. 8, 2011), sought discrete, specific information about the presence of a company's products in the United States.