UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OHIO PUBLIC EMPLOYEES RETIREMENT SYSTEM,<br><br>Plaintiff,<br><br>v.<br><br>META PLATFORMS, INC., et al.,<br><br>Defendants. | Case No. 21-cv-08812-AMO (KAW)<br><br>**ORDER RE 4/24/2025 DISCOVERY LETTERS**<br><br>Re: Dkt. Nos. 183, 184<br><br>[Discovery Letter Nos. 1, 2] |

Lead Plaintiffs Ohio Public Employees Retirement System ("OPERS") and PFA Pension, Forsikringsaktieselskab ("PFA Pension") brought this case under the Securities Exchange Act of 1934 ("SEA"), alleging that Defendants made a series of false and misleading statements that propelled Defendant Meta Platforms, Inc.'s ("Meta") stock price to an all-time high of $384 per share on September 1, 2021.  (First Amend. Compl. ("FAC") ¶ 12, Dkt. No. 97.)  Thereafter, news articles in September and October 2021 revealed these alleged misrepresentations and omissions, resulting in Defendant Meta's stock price suffering significant drops, ultimately reaching $324.61 per share on October 22, 2021.  (FAC ¶¶ 1, 36, 43.)  Plaintiffs allege that Defendants violated the SEA by making false statements and omissions, thus artificially inflating the price of Defendant Meta's stock.  (FAC ¶ 605.)

On April 24, 2025, the parties filed two joint discovery letters concerning: (1) Plaintiffs' Requests for Production ("RFP"), and (2) Plaintiffs' interrogatories.[1]  (Dkt. Nos. 183, 184.)

---

[1] The Court notes that the letters fail to comply with Civil Local Rule 3-4(c)(2), which requires that all text, including footnotes, be in 12-point type or larger.  Further, the Court need not consider arguments made solely in footnotes. *See Riegels v. Comm'r (In re Estate of Saunders)*, 745 F.3d 953, 962 n.8 (9th Cir. 2014) ("Arguments raised only in footnotes, or only on reply, are generally deemed waived.").

**A.     Discovery Letter No. 1: Plaintiffs' RFPs**

     **i.     RFP Nos. 1-3**

Plaintiffs' RFP Nos. 1-3 seek all documents and communications concerning ongoing litigation and investigations, including: (1) the multi-district litigation ("MDL") *In re: Social Media Adolescent Addition/Personal Injury Products Liability Litigation* (N.D. Cal.), (2) ongoing lawsuits by various state Attorney Generals ("AG"), and (3) any other investigations by any government entity. (*See* Discovery Letter No. 1 at 1, Exh. A, Dkt. No. 183.) In this letter, Plaintiffs specifically seek "deposition transcripts of witnesses who testified in other proceedings on topics relevant to this action" from the MDL and the AG lawsuits. (*Id.* at 1.)

The parties dispute whether such "cloned" discovery requests, *i.e.*, requests seeking production of all documents produced or received in the course of other litigation or investigations, are permissible. (Discovery Letter No. 1 at 1, 3.) As a general matter, such requests are permissible. Indeed, this Court required such productions in *Schneider v. Chipotle Mexican Grill, Inc.* and *P.G. v. United States*. *See Schneider*, Case No. 16-cv-2200-HSG (KAW), 2017 U.S. Dist. LEXIS 43652, at *6 (N.D. Cal. Mar. 24, 2017); *P.G.*, Case No. 21-cv-4457-KAW, Dkt. No. 106 (N.D. Cal. Sept. 28, 2023). In both cases, the Court also found there was significant factual *and* legal overlap. *See Schneider*, 2017 U.S. Dist. LEXIS 43652, at *11 (finding that both lawsuits "involve[d] the same legal claims based on the same facts"); *P.G.* at 2 ("Defendant has repeatedly contended that this case has significant factual and legal overlap with the Arizona cases[.]").

In contrast, in *Garavanian v. Jet Blue Airways Corp.*, the Court denied a request for cloned discovery where the plaintiffs sought production of all documents produced by the defendants to the government pursuant to the Hart-Scott-Rodino Act. Case No. 22-cv-6841-JSW (KAW), Dkt. No. 32 at 3 (N.D. Cal. Mar. 10, 2023). There, the Court explained that it was "not apparent to the Court that the government investigation and the instant case are substantially identical." *Id.* at 4. Specifically, the plaintiffs were challenging a proposed airline acquisition under Section 7 of the Clayton Act, while the government was reviewing the acquisition for violation of antitrust laws, including but not necessarily limited to Section 7 of the Clayton Act. (*Id.*) Without "information

1  about the scope of the government's investigation, which may be broader than the instant case, the
2  Court will not require Defendants to produce all documents produced under the [Hart-Scott-
3  Rodino Act]." (*Id.* at 5.)

4        Here, Plaintiffs argue that the MDL and AG lawsuits involve Defendant Meta and factual
5  overlap, including allegations regarding Defendant Meta's research into the negative impacts of its
6  platforms on young users and alleged misrepresentations about the harmful and addictive nature of
7  its platforms. (Discovery Letter No. 1 at 2.) As Defendants point out, however, the instant case is
8  a securities litigation concerning fifteen allegedly false statements made, while the MDL and AG
9  lawsuits assert claims under consumer protection laws that Defendants operated their platforms in
10 a way that endangered young users over the course of a decade. (*Id.* at 3; *see also* Dkt. No. 143 at
11 13, 22 (dismissal order identifying the specific statements at issue).) Thus, it would appear that
12 like *Garavanian*, Plaintiffs seek cloned discovery from lawsuits that are substantially broader than
13 the instant action, even if there is *some* overlap between the cases. Accordingly cloned discovery
14 is not appropriate in this case. This does not necessarily preclude Plaintiffs from requesting
15 transcripts from the MDL and AG. Plaintiffs, however, cannot put the burden on *Defendants* to
16 identify which are the "relevant" transcripts; rather, they would need to identify the specific
17 transcripts they wish produced. *See In re Uber Techs., Inc., Passenger Sexual Assault Litig.*, No.
18 23-MD-03084-CRB (LJC), 2024 WL 4950060, at *3 (N.D. Cal. Dec. 2, 2024) (allowing discovery
19 of three specific deposition transcripts where the plaintiffs demonstrated their relevance).

20       In the alternative, Plaintiffs would require that Defendants identify all deponents in the
21 MDL and AG lawsuits. (Discovery Letter No. 1 at 2.) Plaintiffs provide no legal authority for
22 why this should be required through a RFP, which concerns the production of documents that
23 already exist. Plaintiffs could, for example, propound an interrogatory on this matter, which
24 Defendants could then either comply with or challenge.

25       **ii.    Schedule for Rolling Productions and Search Terms**

26       Next, Plaintiffs request that the Court impose a schedule for Defendants' productions,
27 specifically requiring them to produce documents every two weeks beginning April 28, 2025.
28 (Discovery Letter No. 1 at 4.) Defendants, in turn, have agreed to commit to monthly productions.

1  (*Id.* at 5.) Plaintiffs also request that the Court order Defendants to provide search terms, even though the ESI Order sets no specific deadline for search terms as to Plaintiffs' first set of RFPs. (*Id.* at 4-5; *see* Dkt. No. 181 (requiring search terms within 28 days, except that the parties must "agree to a date for the producing Party to provide search terms applicable to Plaintiffs' First Set of RFPs.")).

At this juncture, the Court sees no reason why it should micromanage Defendants' production. While Plaintiffs complain that Defendants have only produced 175 documents since Plaintiffs served their document requests, Defendants anticipated making a second production of roughly 1,000 documents by April 28. (Discovery Letter No. 1 at 4-5.) To the extent the parties have issues regarding the search terms, they should so meet and confer in a timely manner. The Court fully expects the parties to cooperate and satisfy their discovery obligations without requiring the Court to use valuable judicial resources to monitor their actions. If the parties are unable to do so, they should propose a mutually agreed upon special master to be appointed by the presiding judge to manage the discovery in this case.

### B.   Discovery Letter No. 2: Plaintiffs' Interrogatory

Plaintiffs' Interrogatory No. 3 requests that Defendants "[i]dentify any investigation or potential investigation or proceeding by any Governmental Entity, from the beginning of the Relevant Time Period through the present, Concerning (i) the use of Meta's platforms by Young Users, and/or the impact of Meta's platforms on Young Users; or (ii) X-Check and/or Whitelisting." (Discovery Letter No. 2 at 1.) Plaintiffs state that this information is relevant because Plaintiffs can then "issue narrowly tailored requests directed toward information provided in those investigations, as well as obtain party admissions on relevant issues." (*Id.*) Specifically, Plaintiffs again argue that they are entitled to cloned discovery. (*Id.*)

As discussed above, it is not apparent to the Court that cloned discovery is warranted in this case. Plaintiffs have not demonstrated that there is significant factual and legal overlap in the cases. Nor is it clear why Plaintiffs cannot, as Defendants point out, obtain the relevant information directly from Defendants by issuing document requests specifying the categories of documents sought. (Discovery Letter No. 2 at 4.) As Plaintiffs do not identify any purpose for

1  this interrogatory other than to eventually obtain cloned discovery, the Court declines to require a
2  response at this time.
3        This order disposes of Dkt. Nos. 183 and 184.
4        IT IS SO ORDERED.
5  Dated: May 7, 2025

                                                KANDIS A. WESTMORE
                                                United States Magistrate Judge