**DAVIS POLK & WARDWELL LLP**
James P. Rouhandeh (admitted *pro hac vice)*
Charles S. Duggan (admitted *pro hac vice)*
Rory A. Leraris (admitted *pro hac vice)*
Nikolaus J. Williams (admitted *pro hac vice)*
Esther C. Townes (admitted *pro hac vice)*
Paulina Perlin (admitted *pro hac vice)*
450 Lexington Avenue
New York, NY 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Email: rouhandeh@davispolk.com
        charles.duggan@davispolk.com
        rory.leraris@davispolk.com
        nikolaus.williams@davispolk.com
        esther.townes@davispolk.com
        paulina.perlin@davispolk.com

Neal A. Potischman (SBN 254862)
Julia Leff (SBN 356813)
900 Middlefield Road
Redwood City, CA 94063
Telephone: (650) 752-2000
Facsimile: (650) 752-2111
Email:  neal.potischman@davispolk.com
        julia.leff@davispolk.com

*Attorneys for Defendants Meta Platforms, Inc.,*
*Mark Zuckerberg, Nick Clegg, Antigone Davis,*
*and Karina Newton*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE META PLATFORMS, INC. SECURITIES LITIGATION | Lead Case No. 3:21-cv-08812-AMO<br><br>Consolidated Case Nos. 3:21-cv-08873-AMO and 3:21-cv-09041-AMO<br><br>**DECLARATION OF MAX EULENSTEIN IN SUPPORT OF DEFENDANT META PLATFORMS, INC.'S STATEMENT IN SUPPORT OF PLAINTIFFS' ADMINISTRATIVE MOTION TO CONSIDER WHETHER ANOTHER PARTY'S MATERIAL SHOULD BE SEALED (ECF NO. 207)**<br><br>CLASS ACTION<br><br>Judge: Hon. Araceli Martínez-Olguín |

## DECLARATION OF MAX EULENSTEIN

I, MAX EULENSTEIN, declare pursuant to 28 U.S.C. § 1746, as follows:

1. I am Vice President and Co-Head of Product of Instagram at Meta Platforms, Inc. ("Meta"). I joined Meta in 2011 and was previously Director of Product Management. I submit this Declaration in support of Meta's Statement in Support of Plaintiffs' Administrative Motion to Consider Whether Another Party's Material Should Be Sealed ("Meta's Statement in Support"). I make all statements in this Declaration based on my own personal knowledge. If called upon to do so, I could and would competently testify as follows.

2. I have reviewed Exhibits 2, 3, 6, 7, 8, 9, 10, 11, 12, 15, 17, 18, 19, 20, and 23, all of which contain commercially sensitive information that, if publicized, could damage Meta in significant ways as described below.

3. These documents contain highly confidential and proprietary information about Meta's internal research, product development and specifications, and competitive strategies. The exhibits at issue contain information on Meta's business strategies and efforts to effectively compete in the market. *See, e.g.*, Exhibit 3 at META_OPERS_00345923 (discussing app usage and revenue connections); Exhibit 8 at META_OPERS_00015208 (discussing specific ad strategies and how to deal with competition for certain demographics); *see also id.* at META_OPERS_00015218 to META_OPERS_00015233 (internal presentation decks discussing ad strategy and user demographics, among other competitively sensitive information).

4. The documents also reveal internal audits, planning, strategies, and responses to potentially controversial, complicated, and or/sensitive topics and how they will affect Meta's business. For example, META_OPERS_00337249 in Exhibit 6 discusses internal analysis on how potential legislation may impact Meta's business and META_OPERS_00013096 in Exhibit 7 discusses proposed confidential responses to potential legislation that could impact Meta's business. *See also* Exhibit 15 at META_OPERS_00175572 (discussing certain Meta product ramifications from possible regulatory responses).

5. Other documents discuss internal Meta strategies for managing sensitive, potentially commercially and reputationally vulnerable events and issues. *See* Exhibit 11 at

DECL. OF MAX EULENSTEIN ISO DEF. META PLATFORMS, INC.'S STATEMENT ISO PLS.' ADMIN. MOT. TO CONSIDER WHETHER ANOTHER PARTY'S MATERIAL SHOULD BE SEALED (ECF NO. 207)
CASE NO. 3:21-CV-08812-AMO

1

META_OPERS_00345181 to META_OPERS_00345184; Exhibit 17 at META_OPERS_00060779 to META_OPERS_000607780 (internal discussion of a feature of a Meta app that included an "evaluation of controls across ad revenue, content integrity, key product features, metrics & monitoring"); Exhibit 18 at META_OPERS_00333119 (discussing methodology and results of an audit of Instagram's product features in connection with youth wellbeing); Exhibit 20 at META_OPERS_00002571, META_OPERS_00002584, and META_OPERS_00002587 (discussing internal measurements of users' experiences with social experience on Instagram and other internal reports on related topics); *id.* at META_OPERS_00002589 (discussing internal product implications based on social media comparison findings); Exhibit 23 at META_OPERS_00046149 (discussing potential policy changes regarding content moderation decisions). If this information were publicized, Meta's competitors could exploit it in a number of ways, including to take advantage of perceived Meta vulnerabilities.

6.    Other documents detail confidential internal planning for launching new product features, *see* Exhibit 9 at META_OPERS_00013779 to META_OPERS_00013801 (deck describing roll-out for messaging and calling features); Exhibit 12 at META_OPERS_00164432 to META_OPERS_00164446 (internal discussions and deck about cosmetic surgery filters); Exhibit 19 (internal communications regarding decisions as to Project Daisy); Exhibit 20 at META_OPERS_00002578 (discussing internal metrics regarding Project Daisy); or internal discussions on press strategy, *see* Exhibit 10 at META_OPERS_00090974 to META_OPERS_000909777. If this information were publicized, Meta's competitors could readily utilize it to develop their own copycat products and features or revamp their existing ones by taking advantage of Meta's internal analyses.

7.    Additionally, other exhibits reflect confidential discussions of how Meta executives are compensated. *See* Exhibit 2 at META_OPERS_00347228 to META_OPERS_00347234; Exhibit 3 at META_OPERS_00345969. If competitors knew our approach, metrics, and raw amounts for compensation, they would have a window into how to poach our most essential talent, which would significantly hurt our business.

8.    Meta does not disclose any of this information publicly in the ordinary course of business. It is confidential, proprietary, and valuable, and Meta takes steps to maintain its

DECL. OF MAX EULENSTEIN ISO DEF. META PLATFORMS, INC.'S STATEMENT ISO PLS.' ADMIN. MOT. TO CONSIDER WHETHER ANOTHER PARTY'S MATERIAL SHOULD BE SEALED (ECF NO. 207)
CASE NO. 3:21-CV-08812-AMO

2

confidentiality, including not sharing it publicly and limiting who can receive it. Disclosure of this information would provide Meta's competitors with insights about Meta's business that they would not otherwise have.

9. Disclosing this information would both cause competitive harm to Meta and enable competitors and other individuals to take advantage of Meta's systems.

10. For instance, if individuals were aware of the full extent of Meta's business and advertising strategies, competitors could attempt to copy or otherwise subvert Meta's business and thereby poach users and clients. As another example, competitors could use this information to make comparative marketing claims about the effectiveness of their advertising measures with certain groups of users. Competitors could also use this information to try and distinguish themselves from Meta when selling similar services. They could further use this information to market their platforms to users as an alternative to Meta's platforms.

11. Meta competes with many companies, including companies that facilitate the ability of users to share, communicate, and discover content and information online. Meta faces intense competition in every aspect of its business. As a result, Meta takes great care to protect information related to product decisions, performance metrics, and business strategy. For the reasons described, this information could give Meta's competitors an unfair advantage and thereby cause Meta competitive harm.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on December 19, 2025 in Kentfield, California.

Signed by:

Max Eulenstein

AD65CFBDC12D4E8…

Max Eulenstein

## CIVIL L.R. 5-1(i)(3) ATTESTATION

I, Paulina Perlin, am the ECF user whose ID and password are being used to file this document.  In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that all signatories of this document have concurred in its filing.

Dated:    December 19, 2025

*/s/ Paulina Perlin*
Paulina Perlin

DECL. OF MAX EULENSTEIN ISO DEF. META PLATFORMS, INC.'S STATEMENT ISO PLS.' ADMIN. MOT. TO CONSIDER WHETHER ANOTHER PARTY'S MATERIAL SHOULD BE SEALED (ECF NO. 207)
CASE NO. 3:21-CV-08812-AMO

4