James P. Rouhandeh (admitted *pro hac vice*)
Charles S. Duggan (admitted *pro hac vice*)
Rory A. Leraris (admitted *pro hac vice*)
Nikolaus J. Williams (admitted *pro hac vice*)
Esther C. Townes (admitted *pro hac vice*)
Paulina Perlin (admitted *pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Email: rouhandeh@davispolk.com
        charles.duggan@davispolk.com
        rory.leraris@davispolk.com
        nikolaus.williams@davispolk.com
        esther.townes@davispolk.com
        paulina.perlin@davispolk.com

*Attorneys for Defendants Meta Platforms, Inc.,
Mark Zuckerberg, Nick Clegg, Adam Mosseri,
Guy Rosen, Antigone Davis, Karina Newton,
and Pavni Diwanji*

[Additional Counsel on Signature Page]

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| IN RE META PLATFORMS, INC. SECURITIES LITIGATION<br><br>This document relates to: All Actions | Lead Case No. 4:21-cv-08812-AMO<br><br>**DEFENDANTS' REPLY MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS LEAD PLAINTIFFS' CONSOLIDATED SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>Date: August 6, 2026<br>Time: 2:00 p.m.<br>Dept.: TBD<br>Judge: Honorable Araceli Martínez-Olguín |

**[FILED UNDER SEAL]**

**TABLE OF CONTENTS**

PAGE

ARGUMENT ....................................................................................................................2

I.    Claims About Meta's Algorithm Should Be Dismissed (34–37) ...............................2

II.   Claims Concerning Encryption Should Be Dismissed (1–2).....................................4

III.  Claims About Age Verification Should Be Dismissed (5, 22–23, 32–33) .................7

IV.   New Claims About Youth Safety and Wellbeing Should Be Dismissed....................8

      A.    Claims About Project Daisy Should Be Dismissed (7–9, 12–15, 17–18) ..........................................................................................................8

      B.    Claims About Research (4, 16) and Policies (25) Should Be Dismissed..............................................................................................11

V.    Previously Allowed Claims Should Be Dismissed.....................................................14

      A.    Allowed Claims on Youth Safety and Wellbeing Should Be Dismissed..............................................................................................15

      B.    Allowed Claims on X-Check and Newsworthiness Should Be Dismissed..............................................................................................19

VI.   Plaintiffs' Scheme Liability Claim Should Be Dismissed........................................20

VII.  The SAC Does Not Adequately Allege a Section 20(a) Claim ...............................20

CONCLUSION................................................................................................................20

**TABLE OF AUTHORITIES**

PAGE(S)

**Cases**

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013)........................................................................................................ 2, 3

*Askins v. U.S. Dep't of Homeland Sec.*,
899 F.3d 1035 (9th Cir. 2018) ............................................................................................ 14

*Baker v. Twitter, Inc.*,
2024 WL 1178168 (C.D. Cal. 2024)..................................................................................... 14

*Barnes v. Edison Int'l*,
2021 WL 2325060 (C.D. Cal. 2021)............................................................................. 12, 13, 14

*Berson v. Applied Signal Tech., Inc.*,
527 F.3d 982 (9th Cir. 2008) .................................................................................... 3, 6, 17

*Christianson v. Colt Indus. Operating Corp.*,
486 U.S. 800 (1988)..................................................................................................... 14, 15

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
856 F.3d 605 (9th Cir. 2017) ................................................................................................ 6

*Eisner v. Meta Platforms, Inc.*,
2024 WL 3228089 (N.D. Cal. 2024) .............................................................................. 5, 15

*Espy v. J2 Glob., Inc.*,
99 F.4th 527 (9th Cir. 2024) ................................................................................................. 8

*In re Amgen Inc. Sec. Litig.*,
2014 WL 12585809 (C.D. Cal. 2014)..................................................................................... 6

*In re BofI Holding, Inc. Sec. Litig.*,
977 F.3d 781 (9th Cir. 2020) ....................................................................................... 4, 6, 12

*In re Cutera Sec. Litig.*,
610 F.3d 1103 (9th Cir. 2010) ............................................................................................... 9

*In re Finisar Corp. Sec. Litig.*,
2017 WL 1549485 (N.D. Cal. 2017) ..................................................................................... 3

*In re GlenFed, Inc. Sec. Litig.*,
42 F.3d 1541 (9th Cir. 1994) ................................................................................................. 2

*In re Hansen Nat. Corp. Sec. Litig.*,
527 F. Supp. 2d 1142 (C.D. Cal. 2007) ........................................................................... 9, 10

*In re Quality Systems, Inc. Sec. Litig.*,
865 F.3d 1130 (9th Cir. 2017) ............................................................................................. 12

*In re Rigel Pharms., Inc. Sec. Litig.*,
697 F.3d 869 (9th Cir. 2012) ...................................................................................... 2, 9, 15

ii

*In re Skechers U.S.A., Inc. Sec. Litig.*,
  2005 WL 8168047 (C.D. Cal. 2005)............................................................................................ 2

*In re Stem, Inc. Sec. Litig.*,
  2025 WL 3675114 (N.D. Cal. 2025) ......................................................................................... 20

*In re VeriFone Holdings, Inc. Sec. Litig.*,
  704 F.3d 694 (9th Cir. 2012) ..................................................................................................... 6

*Lamontagne v. Tesla, Inc.*,
  2024 WL 4353010 (N.D. Cal. 2024) ....................................................................................... 12

*Lipton v. Pathogenesis Corp.*,
  284 F.3d 1027 (9th Cir. 2002) ................................................................................................... 4

*Lloyd v. CVB Fin. Corp.*,
  811 F.3d 1200 (9th Cir. 2016) ................................................................................................... 6

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
  519 F.3d 1025 (9th Cir. 2008) ................................................................................................. 19

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
  540 F.3d 1049 (9th Cir. 2008) ............................................................................................. 7, 8

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
  575 U.S. 175 (2015)............................................................................................................. 9, 12

*Pascal v. Concentra, Inc.*,
  2020 WL 4923974 (N.D. Cal. 2020) ....................................................................................... 14

*Petersen v. TriplePoint Venture Growth BDC Corp.*,
  2024 WL 5384678 (N.D. Cal. 2024) ......................................................................................... 4

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
  759 F.3d 1051 (9th Cir. 2014) ................................................................................................... 2

*Reese v. Malone*,
  747 F.3d 557 (9th Cir. 2014) ..................................................................................................... 4

*Rumble, Inc. v. Google LLC*,
  2022 WL 3018062 (N.D. Cal. 2022) ....................................................................................... 18

*SEB Inv. Mgmt AB v. Wells Fargo & Co.*,
  742 F. Supp. 3d 1003 (N.D. Cal. 2024) ..................................................................................... 8

*SEC v. City of Victorville*,
  2018 WL 3201676 (C.D. Cal. 2018)................................................................................... 18, 20

*SEC v. Platforms Wireless Int'l Corp.*,
  617 F.3d 1072 (9th Cir. 2010) ................................................................................................. 13

*Sneed v. Talphera, Inc.*,
  147 F.4th 1123 (9th Cir. 2025) ........................................................................................... passim

*Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*,
  802 F. Supp. 2d 1125 (C.D. Cal. 2011) ..................................................................................... 7

iii

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007) .................................................................................................... 4, 18, 20

*Weston Fam. P'ship LLLP v. Twitter, Inc.*,
    29 F.4th 611 (9th Cir. 2022) .................................................................................................... 9, 16

*York Cnty. v. HP, Inc.*,
    65 F.4th 459 (9th Cir. 2023) .................................................................................................... 5, 7

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009) .................................................................................................... 3, 13

**Statute**

15 U.S.C.A. § 78u–4 .................................................................................................... 6

iv

The Opposition—which misstates the SAC's allegations, Defendants' Motion, and controlling law—confirms that the SAC fails to plead a misrepresentation, scienter, or loss causation.

The challenged statements are not false or misleading. Many are nonactionable opinions or vague and generalized statements of the kind regularly dismissed—e.g., that "[w]ellbeing is hard to measure" or Meta would "try" to work with experts. Others are statements of corporate policies or efforts, which are not misleading merely because the policies or efforts allegedly fell short. And despite Plaintiffs' efforts to use the nearly-million pages of discovery they received, the SAC and incorporated documents confirm the challenged statements were *true*. Plaintiffs' reliance on stale documents, cherry-picked snippets, or a differing "view" do not, as a matter of law, show otherwise.

The Opposition also confirms Plaintiffs' failure to plead a *strong inference* of scienter. Plaintiffs fail to identify a *single document* showing that anyone *believed* their statement was false. Instead, Plaintiffs rely on previously rejected allegations that Defendants "had access" to information. Plaintiffs' other scienter allegations likewise fail, including their previously rejected motive allegations, such as a desire to pursue profits or avoid regulatory action. Considered holistically, the more compelling inference is that Defendants did not intend to mislead investors.

Plaintiffs treat loss causation as an afterthought. Their alleged corrective disclosures either do not "correct" the challenged statement or only disclose stale information or opinions about previously known facts. For *18 of the 39* challenged statements, Plaintiffs effectively concede they have failed to plead a corrective disclosure, instead arguing that a disclosure need *only* "relate back" to the challenged statement. That is not the law. Claims based on those statements must be dismissed.

Finally, Plaintiffs' challenge to certain statements is untimely. Plaintiffs' assertion that they lacked facts sufficient to bring those claims until receiving discovery is undermined by their own allegations and public allegations from other supposedly "related" cases.

Far from advancing Plaintiffs' cause, the SAC fatally undermines it, revealing critical defects in Plaintiffs' fraud claims (whether under a misrepresentation or "scheme" theory), which the Opposition fails to cure. Although this Court previously allowed claims challenging certain statements to proceed, the SAC's newly alleged facts and incorporated documents now require their dismissal, along with Plaintiffs' claims challenging new and previously dismissed statements.

1

**ARGUMENT**

**I.    Claims About Meta's Algorithm Should Be Dismissed (34–37)**

Plaintiffs' challenges to the algorithm statements—e.g., Meta "work[s] to limit, not expand hate speech," goes "out of [its] way to try to reduce" certain content, and did "not design[] its systems to reward provocative content"—fail to plead a misrepresentation, scienter, or loss causation.

***No Actionable False or Misleading Statements.***  *First, Plaintiffs fail to allege* <u>*contemporaneous*</u> *facts rendering the statements false or misleading.*  Mot. 6–7.  This Court dismissed nearly identical claims for relying on stale documents because they do not show the statements "were false *when made*."  Order 15.  The SAC has the same flaw.  Plaintiffs cite *one* document from 2021; the rest—from three months before the Class Period or much earlier—are not "contemporaneous."  *In re Skechers U.S.A., Inc. Sec. Litig.*, 2005 WL 8168047, at *6 (C.D. Cal. 2005) (documents over two months old are stale), *aff'd*, 273 F. App'x 626 (9th Cir. 2008).  And the one 2021 document, which reflects the "███" of a diplomat with no alleged special knowledge of the algorithm, Opp. 28, *at most* reflects "the difference between two permissible judgments."  *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 877 (9th Cir. 2012); Mot. 7.  Plaintiffs' response that *Rigel* is limited to "disagreements over statistic[s]," Opp. 28, is wrong and ignores long-standing precedent, *see In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1549 (9th Cir. 1994).

*Second, the Court has rejected Plaintiffs' theory*.  Mot. 7.  Plaintiffs argue that the statements were misleading because they failed to disclose that the algorithm "amplified and caused harmful content to '███,'" Opp. 28, even while Meta did not "███████████," ¶ 17.  But this Court ruled that allegations that "*the algorithm had negative side effects* do[] not contradict Defendants' assertion that they work to reduce misinformation or extremist content . . . , had reduced such content, or that it is not in their interest to push users toward such content."  Order 15–16.

*Third, Defendants disclosed the allegedly omitted information*—the algorithm's side effects.  Mot. 8 (citing *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1060 (9th Cir. 2014)).  This is not a "premature" truth-on-the-market defense, Opp. 29, as statements must be considered "in context," *Sneed v. Talphera, Inc.*, 147 F.4th 1123, 1131 (9th Cir. 2025).  *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds* is inapposite; it addressed the sufficiency of evidence at class

2

certification. 568 U.S. 455 (2013). Plaintiffs' assertion that the warnings were only about *users* sharing content, Opp. 29, ignores that content is "shared" by the algorithm.

*Fourth, Nos. 35–37 are nonactionable opinions or corporate optimism.* Mot. 7–8. Plaintiffs fail to refute that Nos. 35 (we "try") and 37 ("we work to limit") are nonactionable aspirations and that No. 35 ("I think") and portions of No. 36 ("we view") are nonactionable opinions. Mot. 7–8 (collecting cases); Order 7, 9 (dismissing same portion of No. 36). Plaintiffs' assertion that the statements "represented what the algorithm purportedly did," Opp. 29, is conclusory, as is their assertion that "[e]ven if opinions, Defendants had information that did not 'fairly align' with them," *id*. The latter is also wrong, as the only *2021* document Plaintiffs cite reflects an *opinion*.

*Fifth, No. 37 is from an internal memo not intended to be made public.* Mot. 9. Whether it was part of a "campaign to respond to public concern," Opp. 29, does not show otherwise, and Plaintiffs' assertion that Clegg "intended to affect" Meta's stock price, *id.*, is conclusory.

**No Scienter.** Even after voluminous discovery, Plaintiffs fail to allege a strong inference that the alleged speakers, Clegg and Zuckerberg, had knowledge of falsity or should have known of an "obvious" "danger of misleading" investors. Mot. 9–10.

*First, Clegg and Zuckerberg lacked knowledge of contemporaneous contradictory information*. Allegations they "received" such information, Opp. 29–30, do not establish actual knowledge. Order 29; *infra* 6. Plaintiffs' speculation that they recklessly "ignored" the information, Opp. 30, also fails. That senior executives do not review every email they receive does not establish an "obvious" "danger of misleading" investors, *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009). And the sole *contemporaneous* document (the 2021 email from the former diplomat), Opp. 28, reflects, at most, a "good-faith difference of opinion," *Sneed*, 147 F.4th at 1134. *In re Finisar Corp. Sec. Litig.*, Opp. 30, is inapposite because, there, the defendant *discussed* information contradicting his statements, 2017 WL 1549485, at *6–7 (N.D. Cal. 2017). Allegations that Zuckerberg was "involved" with algorithm changes in 2018 and 2020, Opp. 30, also fail because they predate the statements by over a year. Order 26; *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 989 (9th Cir. 2008) (under PSLRA, allegations must "*strongly imply . . . contemporaneous* knowledge that the statement was false when made"). The 2020 changes also *undermine* scienter, as

they were intended "to *reduce* the amount and spread of false content."   Mot. 10; ¶ 420.

*Second, Plaintiffs' motive allegations fail.*  Mot. 9.  Allegations that Meta desired to avoid regulatory scrutiny, Opp. 30–31, were previously rejected, Order 28.   The new allegation that Defendants engaged in a PR strategy to "█████████," Opp. 8, 31, presents an "appropriate corporate objective," Mot. 9 (citing *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1038 (9th Cir. 2002)).  *Reese v. Malone* is inapposite, as the defendant was motivated to omit information that was "*personally*" detrimental.  747 F.3d 557, 571 (9th Cir. 2014).  And allegations that Meta "doctor[ed]" research about *child safety and teen health*, Opp. 30, are irrelevant to the *algorithm*.

*Finally, the allegations show Defendants believed their statements.*  Mot. 9–10.  Plaintiffs do not dispute that Zuckerberg approved algorithm changes to "reduce" misinformation or Clegg believed there was a public "misconception" about Meta's algorithm "fueling polarization."  Mot. 10; ¶ 397.  This is not a "premature fact issue," Opp. 30, but a "plausible opposing inference[]" that the Court "must take into account."  *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007).

***No Loss Causation.***  When, as here, a plaintiff relies on corrective disclosures to establish loss causation, the disclosure must "disseminate[]" "information correcting the misstatement or omission" by "reveal[ing] new facts."  *In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 790 (9th Cir. 2020).  As Plaintiffs concede, the algorithm's alleged effects were already publicly known, which is not a truth on the market defense, but a failure to plead loss causation.  Mot. 10; Opp. 30–31.  Plaintiffs argue the September 15 *WSJ* article "revealed specific new information," Opp. 31, but the only arguably "new" information was employee opinion, ¶¶ 530–37, which mirrored existing public complaints, *see, e.g.*, ¶ 398.  A disclosure that merely interprets prior information is not corrective. *BofI*, 977 F.3d at 790; *Petersen v. TriplePoint Venture Growth BDC Corp.*, 2024 WL 5384678, at *11 (N.D. Cal. 2024) (disclosure "of opinions of already public available information" noncorrective).  Plaintiffs' assertion that Haugen's interview and complaints are corrective disclosures, Opp. 31, is conclusory; they do not identify what was new or corrective.

## II.     Claims Concerning Encryption Should Be Dismissed (1–2)

Plaintiffs' challenge to statements that Meta takes an "active approach to addressing child exploitation" (No. 1) and that end-to-end encryption ("E2EE") brings benefits to "users" (No. 2) is

untimely, and Plaintiffs fail to plead an actionable misstatement, scienter, or loss causation.

***Claims Are Untimely.***  Plaintiffs' encryption claims are untimely because they were brought over two years after the alleged fraud was purportedly disclosed.  Mot. 11.  Plaintiffs argue they could not have brought the claims before discovery revealed facts concerning scienter, Opp. 27, but that contradicts their allegation that on December 1, 2021, an article reported that Meta "*knew* its [E2EE] would make child safety protections 'demonstrably worse,'" ¶ 794; Opp. 8; *see also York Cnty. v. HP, Inc.*, 65 F.4th 459, 467 (9th Cir. 2023) (finding claim accrued upon corrective disclosure).

***No Actionable False or Misleading Statements***.  *First, the statements are non-actionable corporate optimism*.  Mot. 11.  Plaintiffs argue they are "assertions of fact" that "E2EE would enhance Meta's ability to detect and address child safety risks."  Opp. 5–6.  But No. 1 only stated that Meta takes an "active approach to addressing child exploitation" and No. 2 stated that encryption can "further[] privacy, safety, and security for users," without reference to child safety.  Plaintiffs fail to distinguish *Eisner v. Meta Platforms, Inc.*, which dismissed similar statements that Meta "seek[s] to prevent child exploitation through a number of measures."  2024 WL 3228089, at *1, *5 (N.D. Cal. 2024).  That the statements are not identical and in a different proxy, Opp. 6, is irrelevant.

*Second, Plaintiffs fail to allege facts rendering the statements false or misleading*.  Plaintiffs argue it was misleading to tout Meta's child safety efforts when they failed "grossly."  Opp. 5.  But case law, which Plaintiffs ignore, rejects that theory.  Mot. 8, 11–12 (discussing *Eisner* and *Barnes*).  Plaintiffs also argue it was misleading to tout E2EE's benefits when Meta allegedly knew it would make child safety problems worse.  Opp. 5.  But Meta never said encryption would make *child* safety better; it said that encryption "further[ed] . . . safety, and security for *users*."

*Third, the Proxy disclosed the allegedly omitted risk of encryption to child safety*.  Mot. 11.  Indeed, the statements were responding to a Proxy shareholder proposal highlighting those very risks.  Mot. 11.  Meta had no obligation to restate those same risks, even where alleged "internal [Meta] documents" chronicled issues with child safety.  *Eisner*, 2024 WL 3228089, at *5.  Plaintiffs argue the shareholder proposal "identified external concerns and asked Meta for its own internal analysis," Opp. 6, but cite no authority and ignore *Eisner*'s holding directly to the contrary.

***No Scienter.***  *First, Plaintiffs fail to plead Davis or Zuckerberg knew of contradictory*

5

*information.*  Mot. 12.  Plaintiffs allege they had "access to" and "received" certain information, Opp. 7, but this Court held that "'*access* to internal data' or reports cannot support an inference that Defendants were *aware* of the research," Order 29; Mot. 12, consistent with controlling law, *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 620 (9th Cir. 2017) (claim that speakers had "direct access to" data room insufficient absent allegation they "*personally accessed*" it).  Plaintiffs cite no authority otherwise.  The holding in *In re Amgen Inc. Sec. Litig.* was expressly limited to "misstatements in the clinical trial context," 2014 WL 12585809, at *9 (C.D. Cal. 2014), where "accessible" contrary data is uniquely specific and objective.  Nor did "Davis prepare[]" documents supportive of scienter.  Opp. 7.  The one cited deck, from July 2020, ¶ 854, does not mention encryption and is stale, Order at 26; *Berson*, 527 F.3d at 989.

*Second, Plaintiffs' motive allegations fail.*  Engaging in a PR strategy or minimizing regulatory scrutiny (even if "serious") are insufficient to show scienter.  Mot. 9; *see* Order 28.  Such allegations boil down to a desire not to "harm Meta's profits," Opp. 8, a quintessential corporate motive that is distinguishable from *Verifone*, where defendants needed a specific merger to instantly succeed.  Opp. 8 (citing *In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 704 (9th Cir. 2012)).

*Finally, Plaintiffs cannot rely on this Court's prior holding that Davis and Zuckerberg had scienter as to other statements on other topics*.  Mot. 13; Opp. 6–7.  Plaintiffs ignore the PSLRA's requirement that scienter be pleaded for "*each*" statement.  15 U.S.C.A. § 78u–4(b)(2)(A).

***No Loss Causation.***  Plaintiffs argue that Meta's December 1, 2021 announcement that it would delay E2EE (and related news reports) were corrective disclosures.  Opp. 8.  But they *support* the challenged statements, stating that Meta delayed E2EE due to its "responsibility" to "protect [its] users."  Mot. 13; ¶ 633.  Unable to plead a corrective disclosure, Plaintiffs urge the Court to apply a lower standard, arguing that a disclosure "need *only*" "relate back" to a misstatement, not "invalidate" it.  Opp. 4, 8.  Not so.  A corrective disclosure must "*correct*[] the misstatement" by "reveal[ing] *new facts*" that render the statement false or misleading.  *BofI*, 977 F.3d at 790.  *Lloyd v. CVB Fin. Corp.* held that a disclosure "must *at least* relate back to the misrepresentation and not to *some other* negative information."  811 F.3d 1200, 1210 (9th Cir. 2016).  It nowhere states, as Plaintiffs say, that "a disclosure need not reveal a fraud [or] invalidate a statement."  Opp. 4.  Plaintiffs' allegation of a

6

stock price drop, Opp. 8, is insufficient, as "[l]oss causation requires more." *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1064 (9th Cir. 2008).

**III.    Claims About Age Verification Should Be Dismissed (5, 22–23, 32–33)**

Plaintiffs' challenge to statements that Meta prohibits under-13 ("U13") users and works to remove them is untimely, and Plaintiffs fail to plead a misrepresentation, scienter, or loss causation.

***Claims Are Untimely.***  As above, Plaintiffs' claims are untimely because they were brought over two years after the purported fraud was disclosed.  Mot. 14.  Plaintiffs' argument that they could not have learned of the alleged fraud until discovery, Opp. 27, conflicts with their allegations that Haugen's October 2021 testimony "*revealed* that Meta *knew* it had underage users on its platforms but chose not to enforce its age requirements," Opp. 11; ¶ 602; *York Cnty.*, 65 F.4th at 467.  And public complaints filed in 2023, and on February 5, 2024, in allegedly "related" cases, SAC at 1 n.1, alleged that: (i) Zuckerberg knew Meta had U13 users, Ex. 21 ¶¶ 657–59; (ii) Davis received documents regarding age classifiers and U13 users, *id.* ¶¶ 728, 738, 774; and (iii) Mosseri knew Meta had U13 users and stymied efforts to improve enforcement, *id.* ¶ 275, Ex. 22 ¶ 719.  The SAC's scienter allegations are substantially the same.  *See* ¶¶ 127–28, 299, 313 (Zuckerberg); ¶¶ 313, 858–59 (Davis); ¶¶ 127, 842–43 (Mosseri).  Plaintiffs "should have discovered [the] facts" they now plead through these "public and well-publicized" lawsuits.  *See Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1136, 1139 (C.D. Cal. 2011).

***No Actionable False or Misleading Statements.***  Plaintiffs assert that the statements were misleading by omitting that U13s *were* on the platforms, in violation of the policy.  Opp. 8–9.  But the statements *did* disclose that "young people can—*and often do*—get around [age screens]" and that "it's difficult to verify age," which will "take time to get [] right."  Mot. 14–15.  That some users violate the policy does not make it misleading.  Mot. 11–12 (collecting cases).  No reasonable investor would interpret the statements as representing that the policy was entirely effective.  Mot. 14.

Plaintiffs assert the policy was a sham because Meta "chose not to enforce [it]" *at all*, Opp. 9, but no factual allegations support that theory.  Indeed, Plaintiffs allege that Meta removed "hundreds of thousands of underage accounts," ¶ 603, and ███████████████," ¶ 338.  Complaints that Meta should have adopted "proactive" classifiers earlier or

7

cleared "[b]acklogs" faster, Opp. 9–10, amount to "[d]issatisfaction with a company's strategy [and] management," which is "not . . . securities fraud." *Espy v. J2 Glob., Inc.*, 99 F.4th 527, 533 (9th Cir. 2024). Plaintiffs' allegations are a far cry from *SEB Inv. Mgmt AB v. Wells Fargo & Co.*, where the defendant conducted "sham" interviews of diverse candidates "in a way that *actively moved away*" from its stated goals of increasing diversity. 742 F. Supp. 3d 1003, 1018 (N.D. Cal. 2024).

*No Scienter.* Plaintiffs fail to show scienter as to Davis, Diwanji, Mosseri, and Zuckerberg. Mot. 15. Again, Plaintiffs rely on alleged "access" to contradictory information, Opp. 10–11, which fails, *supra* 6. Plaintiffs argue that Defendants were involved in meetings or decisions not to adopt certain enforcement measures, or prepared documents describing enforcement issues, but that does not show that Meta "chose not to enforce" its policy. Opp. 9–10. Nor do assertions that Mosseri "███████████████████████," Opp. 10, as the SAC alleges that ████████ ███████████████████████████████," ¶ 843. And Plaintiffs allege that ███████████████████████████████." ¶ 128. Any inference of scienter is also negated because the challenged statements warned of serious enforcement limitations. Mot. 14–15 (citing *Sneed*, 147 F.4th at 1131). Plaintiffs downplay the disclosures by arguing that they "falsely portrayed [Defendants as] undertaking the efforts needed to solve" age verification challenges. Opp. 11. But the statements make no such claim and instead *highlight* that, for example, "[u]nderstanding people's age on the Internet is a complex and industry-wide challenge." Ex. 8 at 9.

*No Loss Causation.* Plaintiffs' argument that Haugen's October 4 and 5 statements to Congress were corrective disclosures, Opp. 11, is belied by the SAC, which does not identify either as a corrective disclosure, ¶ 794. Nor does the SAC allege a stock price drop after those "disclosures," ¶¶ 612–13, 794, which is fatal, *Metzler*, 540 F.3d at 1062 (stock price drop must be alleged). Nor do Plaintiffs identify any new factual information from Haugen that corrected the challenged statements, which already disclosed age enforcement issues. Mot. 14–15.

**IV.    New Claims About Youth Safety and Wellbeing Should Be Dismissed**

**A.    Claims About Project Daisy Should Be Dismissed (7–9, 12–15, 17–18)**

Plaintiffs' Project Daisy claims fail to plead a misrepresentation, scienter, or loss causation.

***Nos. 7–8, 12–14, 17 Are Nonactionable Opinions.*** This Court's dismissal of No. 7 as a

8

nonactionable opinion, Order 19–20, applies equally to Nos. 8, 12–14, and 17. Mot. 16–17. Plaintiffs' conclusory assertion that these are "concrete statements," Opp. 12, ignores case law finding similar statements to be "mildly optimistic, subjective assessment[s]," *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1111 (9th Cir. 2010). Plaintiffs do not plead that the opinions were subjectively or objectively false, but argue they were misleading under *Omnicare*'s third prong for omitting "material facts." Opp. 12. But Mosseri's opinions "fairly aligned" with those "facts." *Infra* 11. That he did not disclose "some fact[s] cutting the other way" does not render his opinions actionable. *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 176 (2015).

### Nos. 7–9, 12–15, 17–18 Are Not False or Misleading.

Nos. 7, 8, 13. Plaintiffs argue it was misleading for Mosseri to suggest that Daisy had no impact on *wellbeing*, without disclosing purported research that it impacted *social comparison*. Opp. 12; Mot. 17. But wellbeing and social comparison are not the same, and Mosseri had no obligation to address one because he mentioned the other. *Weston Fam. P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611, 615 (9th Cir. 2022) (company not required to make "complete disclosure of all material information whenever [it] speaks on a particular topic"). Plaintiffs argue that Daisy *must* have impacted wellbeing, ███████████████████████, which is "███████████████████████ ███████." Opp. 12. But the same research Plaintiffs rely on, which they misquote, refutes that theory, stating that Daisy's "████████████████████████████," even while it "█████████ ██████████████████████████████." *See* Ex. 10 at -376, -377; *compare* Opp. 12 ("████ ████████████████████████."). One employee's opinion that it was "█████████" to say "████████████████████████," Opp. 12, is belied by this research and, at most, reflects a "difference between two permissible judgments." *Rigel*, 697 F.3d at 877.

No. 14. Plaintiffs argue it was misleading for Mosseri to "dismiss[]" certain research as "overly reliant on methodologies that ask users to self-report" without disclosing that *Meta* "relied on self-reporting." Opp. 12–13; Mot. 17. There is no inconsistency. Mot. 19. Nor did Mosseri imply that Meta did not rely on self-reporting methodologies. Opp. 13. On the contrary, he explained that Meta researched wellbeing by "asking people questions." Mot. 17; Ex. 9 at 4. Plaintiffs also fail to explain why investors would find the omission material. "When the financial import of alleged

9

misstatements is *de minimis*, those alleged misstatements are immaterial as a matter of law." *In re Hansen Nat. Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1161 (C.D. Cal. 2007).

Nos. 9 & 17. Plaintiffs challenge statements that Daisy's effect on revenue was not a "deciding factor" in its launch (No. 9), which Meta was "willing" to do "even if it proved detrimental to [its] business interests" (No. 17), as misleading because Defendants "███████████████████ ███████████████████████." Opp. 13 (citing ¶¶ 257, 261). But the SAC also alleges that Meta chose not to launch ██████ for reasons *unrelated* to revenue. Mot. 17–18; ¶¶ 255, 698, 709. In any case, allegations that hiding likes ██████████████████, ¶ 261, or that one person thought Daisy might "██████████████████," ¶ 257, do not mean that the impact on revenue was a "*deciding*" factor for not launching Daisy, Mot. 17–18; Opp. 13.

No. 12. Plaintiffs argue that the statement (Daisy had "some impact on *user behavior*," but "not enough to be concerning") was misleading because the *revenue* impact of ██████ was "██████," Opp. 13; Mot. 17–18. But No. 12 refers to the impact on "user behavior," not revenue.

No. 15. Plaintiffs do not dispute that the decision to launch Daisy was based on user feedback, consistent with Mosseri's statement that it "reflects the feedback we've gotten." Mot. 18; ¶ 718. They argue it was misleading because Meta disregarded "██████." Opp. 13. But Mosseri did not claim otherwise, and, in context—an Instagram post stating, "*You might've seen* that we've been testing different options for a while and this update reflects the feedback we've gotten," ¶ 718—No. 15 clearly referred to feedback from *users*, not experts. And again, Plaintiffs do not allege that investors would find this difference material. *See Hansen*, 527 F. Supp. 2d at 1161.

No. 18. Plaintiffs argue Mosseri falsely stated that "Instagram expects a double-digit percentage of users to end up hiding likes" when, in fact, he "explicitly approved" opt-in Daisy based on projections that "██████████████████████. Opp. 14; Mot. 18. But Plaintiffs fail to plead why investors would find this difference material, when Mosseri's public statement would have had the effect of *overstating* revenue impact, given Plaintiffs' theory that more users hiding likes would decrease revenue. Mot. 18. Plaintiffs' failure to plead materiality is not a fact issue, Opp. 14, and ignores cases dismissing statements as immaterial at the pleading stage, Mot. 18.

***No Scienter.*** Plaintiffs abandon their allegations that Mosseri had any motive to defraud

10

investors. Mot. 19. Plaintiffs instead rely on allegations that he "had access to" and "received reports" contradicting his statements, including because he served as the "primary" Daisy spokesperson, and "personally decided not to launch ███████ because ████████████████ ███████████████████████████████████████████." Opp. 14. These assertions are contradicted by the SAC, which alleges that Meta decided to launch opt-in Daisy for other reasons, including based on user feedback, ¶¶ 255, 698, 709, 718, and that Mosseri received information *consistent* with his statements, *supra* 9–10. Plaintiffs argue that Mosseri touted Meta's launch of Daisy to "'make them look good by appearing to address' well-being concerns." Opp. 15. But if Mosseri wanted to convince investors that Meta was addressing wellbeing concerns by adopting Daisy, he would not have publicly stated hiding Like counts had *no impact* on wellbeing. *See Sneed*, 147 F.4th at 1131. A nonfraudulent inference is more compelling. Mot. 19.

*No Loss Causation.* Plaintiffs allege no corrective disclosure for the Daisy-related statements. Plaintiffs argue that the September 14 *WSJ* article revealed that Meta made Daisy opt-in (rather than default) because "it 'could make them look good by appearing to address' well-being concerns." Opp. 15 (quoting Ex. 13 at 14). Far from "correcting" any alleged misstatements, the article is *consistent* with them, reporting that hiding likes by default did *not* "move[] overall well-being measures," Ex. 13 at 14; Mot. 19, precisely as Mosseri disclosed (Nos. 8, 13). Plaintiffs also cite Haugen's October 4 statement to Congress purportedly revealing that Meta "refused" to make its platforms "safer" in pursuit of profit. Opp. 15. But her statement does not mention Daisy or hiding likes, and, again, is not alleged to be a corrective disclosure or followed by a stock price drop.

**B.      Claims About Research (4, 16) and Policies (25) Should Be Dismissed**

*No. 4 Should Be Dismissed Again.* Mosseri's statement that there was "little existing research" regarding social media's impact on U13s was true. Mot. 20. Plaintiffs claim there were *four* pieces of such "research," Opp. 16, but that *is* "little." Regardless, "little" is not objectively verifiable. Mot. 20. Plaintiffs also fail to plead scienter. Mot. 21–22; Order 30–31. Allegations that Mosseri had "access to" the "research," Opp. 18, do not show he knew of it, *supra* 6. But even if he did, the more compelling inference is that he believed it *was* "little." Mot. 22. Plaintiffs also fail to plead a corrective disclosure. They cite the September 28 *WSJ* article, Opp. 19–20, but it only

11

reported that Meta "*formed a team* to study" youth, ¶ 550; Opp. 19.  It said nothing about *existing* research, much less wellbeing research.  Plaintiffs' conclusory assertion that the article "revealed new information" does not show it "corrected" No. 4.  Opp. 20; *BofI*, 977 F.3d at 790; *supra* 4.

**No. 16 Should Be Dismissed Again.**  *First*, Mosseri's opinion that "concerns about Facebook's overall impact on [] wellbeing are likely overblown" is nonactionable. Mot. 21.  Contrary to Plaintiffs' assertion, Opp. 17, whether something is "*likely* overblown" "convey[s] uncertainty," not fact, *see Omnicare*, 575 U.S. 175 at 190.  Plaintiffs argue that the opinion did not "fairly align" with the information Mosseri had, Opp. 17, but allege virtually no contemporaneous facts about *Facebook*'s effect on wellbeing, and none that undermine Mosseri's belief that any "*concerns*" were "likely overblown." Mot. 20; Order 20.  Plaintiffs speculate that Mosseri meant *Instagram*, Opp. 16, but ignore his words, this Court's prior finding, Order 20, and the rest of the article, which distinguished between the two platforms in its title, ¶ 721.  Even if the statement referred to Instagram, the SAC and incorporated documents reflect research findings supporting the opinion, Mot. 21, 26 (citing Exs. 17, 18).  That other findings may "cut[] the other way" does not render the opinion misleading.  *Omnicare*, 575 U.S. at 189.  This is not a "factual dispute," Opp. 17, but a pleading stage argument that the Court must consider under *Omnicare*.  575 U.S. at 196.

*Second*, Mosseri's statement that "Instagram was *committed* to studying" wellbeing is a nonactionable "vague and generalized corporate commitment[]."  Mot. 21.  It does not imply that Meta had *not* "studied well-being," Opp. 17, especially since No. 7 disclosed that Meta "*tried to measure*" wellbeing, Mot. 16.  Nor did Mosseri have a duty to disclose "adverse information," Opp. 16–17, because a statement of commitment does not compel disclosure of the "entire universe of information available." *Barnes v. Edison Int'l*, 2021 WL 2325060, at *11 (C.D. Cal. 2021).  Contrary to Plaintiffs' suggestion, Opp. 17, safety statements *can* be nonactionable, *see, e.g.*, *Lamontagne v. Tesla, Inc.*, 2024 WL 4353010, at *9 (N.D. Cal. 2024) ("Tesla cars are '*absurdly safe*'" nonactionable).  And *In re Quality Systems*, *Inc. Sec. Litig.*, Opp. 17, is inapposite, as it involved a concrete statement.  865 F.3d 1130, 1137 (9th Cir. 2017) (the "pipeline has grown every quarter").

*Third*, the statement that "[w]e're going to continue to try and work with [experts]" is a nonactionable commitment, Mot. 20, which Plaintiffs do not dispute.  It is also not false or

12

misleading.  Mot. 20–21.  That Meta "rejected" some experts' advice, Opp. 16, is consistent with stating that Meta would "*try*" to "work" with them, Mot. 21.  Nor, as Plaintiffs contend, does the statement suggest that "the problem was not that bad and Meta was working to fix it."  Opp. 16.

Plaintiffs also fail to plead scienter.  Mot. 21–22.  There are no allegations that Mosseri did not believe that concerns about Facebook's impact on wellbeing were "likely overblown."  *Id.* Contrary to Plaintiffs' argument, Opp. 18, subjective belief is *highly* relevant to scienter, which requires pleading "*intentional[]*" conduct or "*deliberate* recklessness," *Zucco*, 552 F.3d at 991; *SEC v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1093–95 (9th Cir. 2010) (scienter "includes a subjective inquiry" into a "defendant's actual state of mind.").  Allegations that Mosseri "received" contradictory information are, again, insufficient.  *Supra* 6.  Plaintiffs do not dispute that Mosseri lacked scienter with respect to his statement that Instagram was "committed" to studying well-being. Mot. 22; Opp. 18.  And allegations that Mosseri "knew that Meta rejected expert recommendations," Opp. 18, are irrelevant because, as discussed, they do not contradict anything in No. 16.  Plaintiffs' generalized motive allegations, Opp. 19, fail for the reasons discussed, *supra* 4.  And Plaintiffs' assertion that certain individuals "altered" research fails, as there are no allegations that *Mosseri* was involved in those alleged efforts.  Opp. 19 (citing ¶¶ 882–95, 897–908).

Plaintiffs also fail to plead loss causation.  Mot. 22.  They identify no corrective disclosures for the second and third portions of No. 16.  They claim the September 14 *WSJ* article corrected the "overblown" statement, but it only discussed *Instagram*'s impact on wellbeing, not *Facebook*'s. Opp. 20.  Plaintiffs' assertion that Mosseri admitted that the impact of "Meta's platforms" on teen mental health "may be huge," Opp. 20 (citing ¶ 506), misquotes the SAC, which alleges that Mosseri was responding to a question about the research discussed in the September 14 article, which concerned *Instagram*, not "Meta's platforms," ¶ 506.  And Plaintiffs' argument that the "corrective" disclosure need *only* "relate back," Opp. 20, again misstates the law, *supra* 6–7.

***New Statement No. 25 Should Be Dismissed.***  *First*, Mosseri's statement that Instagram did not "allow[] anyone to promote or encourage suicide or self-harm (SSI)" is a nonactionable statement of corporate policy.  Mot. 22.  That it was about Meta's "past and present practices," Opp. 17–18, does not show otherwise.  *See Barnes*, 2021 WL 2325060, at *9 (assessment of past conduct

13

nonactionable).  Even if actionable, a statement of policy is not misleading merely because, as Plaintiffs contend, Opp. 18, Meta lacked "effective" systems to implement it, *supra* 5; *Barnes*, 2021 WL 2325060, at *10.  Regardless, Plaintiffs fail to explain what "systems" were ineffective or why, while ignoring that Meta removed "millions" of pieces of SSI.  Mot. 22.

*Second*, Plaintiffs fail to allege scienter.  Allegations that Mosseri "received or had access" to information, Opp. 19 (citing ¶ 834), are insufficient.  *Supra* 6.  And the cited information is not about Meta's SSI policy *enforcement*, and predates No. 25 by at least a year.  ¶ 834; *supra* 3.  This is not a "relevance argument," Opp. 19, but a pleading failure.  Allegations that Mosseri was "involved" with or had "conversations about" SSI issues do not create an inference that he "knew what [other] Meta[] teams knew" about those issues.  Opp. 19; *Baker v. Twitter, Inc.*, 2024 WL 1178168, at *10 (C.D. Cal. 2024) ("Scienter cannot be established . . . by lumping management and executives together.").

*Third*, no alleged corrective disclosure concerns Meta's SSI policy.  Mot. 23; Opp. 20.  Plaintiffs cite the September 14 *WSJ* article and alleged disclosures on October 3, 4, and 5, Opp. 20, but none mentions the SSI policy.  Whether the algorithm could "send users deep into content that can be harmful" or "Meta knew it could make its platforms safer but refused," Opp. 20, is irrelevant.

## V.      Previously Allowed Claims Should Be Dismissed

Plaintiffs replead 16 statements that should be dismissed.  Plaintiffs concede that arguments "based on the new matter in the amended complaint" are allowed, Opp. 20, and Defendants' arguments herein are based primarily on the SAC's *new* allegations and *newly* incorporated documents, Mot. 23–25, 30.  To the extent not, they raise arguments that the Court previously declined to consider on procedural grounds that are now properly before the Court.  Mot. 23, 25.  Unlike in *Pascal v. Concentra, Inc.*, Defendants have not waived these arguments because they previously asserted them.  2020 WL 4923974, at *2 (N.D. Cal. 2020).  Plaintiffs' appeal to the law of the case doctrine is also misplaced, Opp. 20, and inconsistent with their request that the Court ignore its prior decision dismissing certain statements.  An amended complaint supersedes the original pleading, "leav[ing] the district court free to correct any . . . misunderstandings without having to find that its prior decision was 'clearly erroneous.'"  *Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1043 (9th Cir. 2018).  The Court can "revisit prior decisions of its own . . . in

any circumstance." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988).

**A.      Allowed Claims on Youth Safety and Wellbeing Should Be Dismissed**

***Nos. 3, 6, 10, and 19–21 Are Nonactionable Affirmations and Goals.***  Mot. 24–25.  Plaintiffs respond that they are "objective representations of fact," Opp. 23, ignoring that the Court dismissed similar statements, Order 9.  And Plaintiffs misquote their sole example (No. 6 says, "We *remove* content that encourages [SSI]," not "We *remove[d]* content")—a statement of policy similar to statements Judge Breyer dismissed.  Mot. 24–25; *Eisner*, 2024 WL 3228089, at *3 (that Meta's "policies prohibit harmful content" was nonactionable "policy affirmation[] or aspiration[]").  Contrary to Plaintiffs' assertion, the Court did not "sustain[] all of these statements," Opp. 23, but rather "decline[d] to engage" with whether the statements were nonactionable.  Order 21 n.9.

***Nos. 3, 6, 10, 11, 19–21, 24, 26–30, and 31 Are Not False or Misleading.***  The SAC's new allegations and incorporated documents confirm that the statements were not false or misleading.

Nos. 3, 6, 19–20.  Plaintiffs concede that new allegations show that Meta had "policies to help protect against child exploitation" (No. 3) and "remove[s] content that encourages [SSI]" (No. 6).  Mot. 24–25.  Alleged deficiencies in the policies' enforcement, Opp. 21, do not render them false or misleading under well-established law, which Plaintiffs do not address.  Mot. 25; *Eisner*, 2024 WL 3228089, at *4; *supra* 5.  *Wells Fargo* is inapposite, as it involved a "sham" policy, *see supra* 8.  Plaintiffs also do not dispute that Meta implemented certain safety mechanisms per expert advice, *e.g.*, ¶ 305, consistent with statements that it "want[s] young people to enjoy using Instagram while making sure we never compromise on their privacy and safety" (Nos. 19–20).  Plaintiffs' conclusory assertion that the statements are "belied" by the SAC, Opp. 21, fails.  At most, the SAC alleges that Meta did not adopt certain safety features.  But it does not follow that those decisions reflected a "compromise" on safety, especially given that Meta *did* concededly implement other safety features.

Nos. 10, 21.  Plaintiffs concede that Meta was "working with experts," consistent with Nos. 10 and 21, Mot. 25–26, but argue the statements were misleading because they "conceal[ed] the significant extent to which Meta rejected experts' advice."  Opp. 21.  But the statements do not claim that Meta followed *all* expert safety recommendations.  *See Rigel*, 697 F.3d at 882 (falsity not pleaded absent "alleg[ation] that Defendants falsely represented their actual [ ] plans").  And Plaintiffs do not

15

dispute that Meta had safety features, so claims it rejected *additional* "safety recommendations," Opp. 21, are mere criticisms that Meta could have done more, Mot. 25–26.

No. 11.  Plaintiffs do not dispute that incorporated documents show positive findings from Meta's research on teen wellbeing, but repeat there were negative findings too.  Mot. 26; Opp. 22.  That is what "bi-directional" means (No. 11).  Plaintiffs argue it was misleading for Mosseri to describe Instagram's impact on teens as "quite small" because a research deck called "social comparison" a "severe" and "high reach, high intensity" issue.  Opp. 22.  But as shown in connection with Daisy, social comparison is one of many wellbeing drivers, and Instagram can impact social comparison, but not wellbeing overall.  *Supra* 9.  Indeed, the deck also stated that teens "generally thought that IG made things better *or had no impact*," Ex. 18 at -174, consistent with No. 11.

No. 24.  Plaintiffs concede the SAC makes no allegations showing any "consensus among studies of experts about how much screen time is too much" (No. 24).  Mot. 26; Opp. 22.  Plaintiffs argue No. 24 was misleading because it was in response to a question about whether *Meta* had found its platforms could have negative effects on mental health or wellbeing and Meta did not disclose alleged negative wellbeing findings from its "internal research."  Opp. 22.  But the response warned that "some research shows" that social media usage "can be linked with negative outcomes."  Ex. 20 at 3.  Whether Haidt's notes "███████████████████████████████ █████," Opp. 22, is irrelevant.  The "█████" Haidt presented did not reflect Meta's research, but his views of external research, which Haidt noted Zuckerberg disagreed with.  *See* Mot. 26, 29.

Nos. 26–30.  Plaintiffs do not dispute that Nos. 26–30 discussed research findings that were previously publicly disclosed (or, for No. 26, shortly thereafter), including the exact findings disclosed in the statements *and* the allegedly omitted negative findings quoted in the Opposition.  Mot. 26–27; Opp. 22–23.  Plaintiffs now argue that *other* information was not disclosed, such as purported acknowledgements that "████████████████████████████████████████."  Opp. 23 (citing ¶ 759).  But having disclosed the allegedly negative research findings, Defendants had no duty to disclose *all* information on wellbeing, *Weston*, 29 F.4th at 615.  And any investor could have reviewed the disclosed research and determined whether Instagram harmed teens.  Mot. 26–27.

No. 31.  Davis's statement, "*I disagree* with calling our product addictive," is a nonactionable

16

opinion. Mot. 27. Plaintiffs concede it was not subjectively false, but argue that it did not "fairly align" with the information Davis had because she was aware of "internal research that *contradicted* what she said." *Id.*; Opp. 23. There is no contradiction: That others think Instagram is "addictive," or that "███████████████████████████████," Opp. 23, does not contradict Davis's statement that *she "disagreed with calling"* it that. As Plaintiffs do not dispute, there is "████████████" on addiction, meaning Davis could "fairly" "disagree" with others' characterizations. Mot. 27.

**No Scienter.** The SAC's new allegations and incorporated documents *negate* scienter.

Diwanji (No. 21) & ██████████ (No. 26). Plaintiffs have not alleged scienter as to Diwanji (who was previously dismissed, Order 31) or ███████████ (who is neither a defendant nor addressed in the Order). Mot. 28. Allegations they had "access to" contradictory information, Opp. 25, are insufficient, *supra* 6. Because they lack scienter, Nos. 21 and 26 must be dismissed.

Mosseri (Nos. 10–11). Mosseri should again be dismissed for lack of scienter, Mot. 28; Order 31 n.11. As to No. 10, Plaintiffs allege, *at most*, that he knew "Meta reject[ed] experts' recommendations," Opp. 25, which does not contradict his statement that Meta was "working closely with third-party experts." As to No. 11, Plaintiffs offer no allegations that Mosseri did not believe his interpretation of the incorporated research, and a nonfraudulent inference is equally compelling given the SAC's allegations that users reported "bi-directional" impacts from Instagram. *Supra* 16.

Rosen, Newton (No. 6). Although No. 6 was previously not attributed to them, FAC ¶ 473, the SAC now attributes it to Rosen and Newton, ¶ 685, but fails to plead scienter as to either. Plaintiffs argue that Newton "acknowledged" that Meta "██████████████" SSI content, Opp. 24, but the cited document is from *January 2019*, ¶ 287. It does not "*strongly imply*" Newton's "*contemporaneous* knowledge" of falsity in May 2021. *Berson*, 527 F.3d at 989. By then, Meta had undisputedly removed *millions* of pieces of SSI content. Ex. 15 at 64. As for Rosen, allegations that he knew that some "█████████████████" saw a "█████" amount of SSI or that some teens said Instagram "made thoughts of SSI worse," Opp. 24, do not contradict Meta's policy of "remov[ing] content that encourages [SSI]" (No. 6). A nonfraudulent inference is more compelling, as Meta *did* enforce its policy by removing SSI. *Supra* 15. Rosen should be dismissed again. Order 31 n.11.

Newton (Nos. 19–20). New allegations and newly incorporated documents negate Newton's

scienter as to Nos. 19 and 20. Mot. 28–29. As Plaintiffs do not dispute, now-incorporated research contains findings *supporting* Newton's statements. *Id.* Plaintiffs argue Newton received *other* information that Meta's safety tools were "deficient" and that Meta "failed to start youth safety initiatives." Opp. 24. But allegations that Meta could have done better do not render Newton's statements false or misleading and therefore cannot raise any inference of scienter. *See supra* 15. And again, receipt of information is insufficient to raise a strong inference of scienter. *See supra* 6.

Davis (Nos. 3, 27–31). Contrary to Plaintiffs' assertion, the Court did not find that Davis acted with scienter as to No. 3, Opp. 26, because the FAC did not attribute it to her, FAC ¶ 484. That aside, allegations that Davis "received or had access" to information contradicting No. 3, Opp. 26, are insufficient, *supra* 6. With respect to Nos. 27–30, Plaintiffs do not dispute that Meta had *publicly disclosed* the allegedly omitted information before the statements were made, Mot. 26–27, 29, which negates scienter, *Sneed*, 147 F.4th at 1134. And as discussed, there are no factual allegations that Davis did not believe her opinion disagreeing with calling Meta' platforms "addictive."

Zuckerberg (Nos. 3, 24). New documents confirm that Zuckerberg believed his statements. Mot. 29. Plaintiffs claim Exhibit 14 "confirms that Haidt ███████████████████████," Opp. 26, but omit that Haidt acknowledged that Zuckerberg *was* "███████████████████████," Ex. 14 at -006. As above, this does not raise a "jury" issue, Opp. 26, but a nonfraudulent inference that the Court *must* consider. *Tellabs*, 551 U.S. at 322.

Regardless, Zuckerberg cannot be personally liable for No. 24, which was made in an unsigned letter, because he did not "make" the statement under *Janus*. Mot. 27. Plaintiffs speculate that he had "final authority" over the letter because it responded to questions directed at him. Opp. 24–25. But it is implausible to expect the CEO of a large company to be involved in responding to every letter addressed to him. This argument is not waived. *Rumble, Inc. v. Google LLC*, 2022 WL 3018062, at *3 (N.D. Cal. 2022). Nor can Zuckerberg's scienter be imputed to Meta because the SAC does not allege he "participated in" making the statement. *SEC v. City of Victorville*, 2018 WL 3201676, at *5 (C.D. Cal. 2018).

***No Loss Causation.*** Plaintiffs fail to plead loss causation as to Nos. 11, 24, and 26–31 because they were first made, or made public, after the alleged September 14 corrective disclosure.

18

Mot. 29–30; Order 20 n.8. Plaintiffs contend that disclosure was "partial," with further disclosures on September 28 and October 3. Opp. 26–27. But the September 28 article's allegation that Meta "formed a team to study pre-teens" for business purposes, ¶ 550, does not invalidate the challenged statements, which are about teen health. Nor did the October 3 interview reveal anything new, as Haugen only opined on public information and revealing her identity does not affect the truth of any statements. Opp. 26–27. Repackaged public information is not a corrective disclosure. *Supra* 4. Plaintiffs also do not dispute that Nos. 11 and 24 were not disclosed *publicly* until after the September 14 disclosure, Mot. 30, even if there was no "expectation of privacy" when made, Opp. 27.

**B.      Allowed Claims on X-Check and Newsworthiness Should Be Dismissed**

*No. 38.* Plaintiffs concede they make *no* factual allegations about the newsworthiness policy—the subject of No. 38—thereby defeating their claim. No. 38 states that the newsworthiness policy applies to a "small" number of posts, which Plaintiffs allege was false because *X-Check* exempted "millions" of users from review. Mot. 30–31. But now-incorporated Exhibit 3 shows that X-Check is distinct from newsworthiness. *Id.* Plaintiffs assert the two things are "interconnected" because "whether content fell under the 'newsworthiness' exemption was based on whether the user was part of X-Check." Opp. 31–32. No factual allegations support that assertion, and incorporated documents confirm the opposite: newsworthiness is an exception to Community Standards enforcement; X-Check is not. *See* Mot. 30–31 (citing Ex. 3 at 11). The Court should not credit conclusory assertions "contradicted by documents referred to in the complaint." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Mot. 31. Plaintiffs also fail to plead scienter. Allegations that Clegg was involved in X-Check, Opp. 31–32, do not support scienter with respect to newsworthiness, and Plaintiffs abandon their scienter allegations as to Zuckerberg, Mot. 31–32. Plaintiffs also fail to plead loss causation. They do not dispute that the only alleged disclosure (the September 13 article) did not mention the newsworthiness policy. Mot. 32.

*No. 39.* Plaintiffs fail to plead falsity with respect to Meta's statement that there are a "small number of decisions" made through X-Check. Mot. 32. The now-incorporated Transparency Report confirms No. 39's accuracy, reporting that there were only "*10,000* cross-check reviews" per day, out of "millions of content decisions." Ex. 4 at 13–14; Mot. 32. Plaintiffs do not dispute that figure

19

is "small" (<1%) relative to the total number of decisions, or that allegations about the number of *users* subject to X-Check are irrelevant. Mot. 32. That the Report was published after No. 39, Opp. 32, is also irrelevant, as it discusses the number of X-Check decisions *when No. 39 was made*. Ex. 4 at 3 (covering Oct. 22, 2020–June 30, 2021). Defendants do not raise a "premature factual dispute" by showing that incorporated facts contradict Plaintiffs' conclusory assertions. *See Tellabs*, 551 U.S. at 322. Plaintiffs assert that "Meta admitted that it should not have said that X-Check applied to a 'small number of decisions,'" Opp. 32, but ignore Meta's explanation that for teams making "millions of content decisions a day, *the numbers involved with cross-check seem relatively small*." Ex. 4 at 8.

Plaintiffs also fail to plead scienter as to No. 39. Clegg cannot be personally liable under *Janus* because he did not "make" the statement, as Plaintiffs do not dispute. Mot. 31. Nor can his scienter be imputed to Meta, Opp. 32, because the SAC does not allege he "participated in" making the statement. *Victorville*, 2018 WL 3201676, at *3. It only alleges that he posted an article *linking to* No. 39, ¶ 788, which does not show participation (and the Motion does not concede otherwise, Opp. 32). Plaintiffs do not allege anyone else's scienter for No. 39. Regardless of who made No. 39, a nonfraudulent inference is more compelling, because for teams making "millions of content decisions a day, *the numbers involved with cross-check seem relatively small*." Ex. 4 at 8.

**VI.    Plaintiffs' Scheme Liability Claim Should Be Dismissed**

Contrary to Plaintiffs' assertion, Opp. 32, Defendants moved to dismiss *all* Section 10(b) claims, including "scheme liability." Mot. 6. The Motion explained why the SAC fails to allege *any* fraud, as required under Rule 10b-5(a) and (c), and specifically addressed allegations that Defendants engaged in a "██████████████████, launch[ed] and tout[ed] ineffective features, conceal[ed] and destroy[ed] research, and disseminat[ed] misrepresentations." Mot. 3–4, 9; Opp. 32. Where a "scheme consists entirely of failed section 10(b) statements, a plaintiff likewise fails to adequately plead a scheme." *In re Stem, Inc. Sec. Litig.*, 2025 WL 3675114, at *11 (N.D. Cal. 2025).

**VII.   The SAC Does Not Adequately Allege a Section 20(a) Claim**

Plaintiffs fail to state a Section 20(a) claim because they have not shown a primary violation.

**CONCLUSION**

Defendants respectfully request that the Court dismiss the SAC with prejudice.

20

Dated:   June 8, 2026                    DAVIS POLK & WARDWELL LLP


                                         By:   */s/ Rory A. Leraris*
                                         _____

                                              James P. Rouhandeh (admitted *pro hac vice*)
                                              Charles S. Duggan (admitted *pro hac vice*)
                                              Rory A. Leraris (admitted *pro hac vice*)
                                              Nikolaus J. Williams (admitted *pro hac vice*)
                                              Esther C. Townes (admitted *pro hac vice*)
                                              Paulina Perlin (admitted *pro hac vice*)
                                              450 Lexington Avenue
                                              New York, New York 10017
                                              Telephone: (212) 450-4000
                                              Facsimile: (212) 701-5800
                                              Email: rouhandeh@davispolk.com
                                                    charles.duggan@davispolk.com
                                                    rory.leraris@davispolk.com
                                                    nikolaus.williams@davispolk.com
                                                    esther.townes@davispolk.com
                                                    paulina.perlin@davispolk.com

                                              Neal A. Potischman (SBN 254862)
                                              Julia Leff (SBN 356813)
                                              900 Middlefield Road
                                              Redwood City, CA 94063
                                              Telephone: (650) 752-2000
                                              Facsimile: (650) 752-2111
                                              Email: neal.potischman@davispolk.com
                                                    julia.leff@davispolk.com

                                              *Attorneys for Defendants Meta Platforms, Inc.,*
                                              *Mark Zuckerberg, Nick Clegg, Adam Mosseri,*
                                              *Guy Rosen, Antigone Davis, Karina Newton,*
                                              *and Pavni Diwanji*

DEFS.' REPLY ISO MOT. TO DISMISS CONSOLIDATED SECOND AM. CLASS ACTION COMPL.
CASE NO. 4:21-cv-08812-AMO